BUCHALTER
A Professional Corporation
VINCENT R. WHITTAKER (SBN: 214007)
MICHELLE K. MEEK (SBN: 259993)
SKYE L. DALEY (SBN: 284592)
655 West Broadway, Suite 1600
San Diego, CA 92101
Telephone: 619.219.5335
Email: vwhittaker@buchalter.com

Attorneys for Plaintiffs
Sarah Gagan, Claire Gagan and Halo's Heart, LLC,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH GAGAN, an individual, CLAIRE GAGAN, an individual, and HALO'S HEART, LLC, a California Limited Liability Company<br><br>Plaintiffs,<br><br>vs.<br><br>MARC ANTOINE GAGNON, an individual, MEGGIE ROY, an individual, MARIEVE SIMARD, an individual, ALAIN POIRIER, an individual, and DOES 1-280, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br>**1. EJECTMENT**<br>**2. TRESPASS**<br>**3. CONSPIRACY TO COMMIT FRAUD**<br>**4. FRAUD – INTENTIONAL MISREPRESENTATION**<br>**5. FRAUD – NEGLIGENT MISREPRESENTATION**<br>**6. CONVERSION**<br>**7. BREACH OF CONTRACT**<br>**8. BREACH OF CONTRACT**<br>**9. BREACH OF CONTRACT**<br>**10. PROMISSORY ESTOPPEL**<br>**11. FINANCIAL ELDER ABUSE**<br>**12. ACCOUNTING**<br>**13. RESCISSION & RESTITUTION**<br>**14. UNJUST ENRICHMENT**<br>**15. DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs SARAH GAGAN (hereafter "Sarah"), an individual, CLAIRE GAGAN (hereafter "Claire"), an individual, and HALO'S HEART, LLC, a California Limited Liability Company (hereafter "Halo's"), (Sarah, Claire and Halo's shall sometimes hereafter be collectively referred to as "Plaintiffs") allege as follows:

**JURISDICTION AND VENUE**

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of a State and citizens of a foreign state.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and the events giving rise to the claims occurred here.

**NATURE OF THE ACTION**

3. This is an action for (1) ejectment, (2) trespass, (3) conspiracy to commit fraud, (4) fraud - intentional misrepresentation, (5) fraud - negligent misrepresentation, (6) conversion, (7) breach of contract, (8) breach of contract (9) breach of contract, (10) promissory estoppel, (11) financial elder abuse, (12) accounting, (13) rescission and restitution, (14) unjust enrichment and (15) declaratory relief, as set forth more specifically below, against Defendants MARC ANTOINE GAGNON, MEGGIE ROY, MARIEVE SIMARD, ALAIN POIRIER and DOES 1 through 280 (collectively, the "Defendants"). By the claims asserted herein, Plaintiffs seek monetary damages, including punitive damages and restitution for the wrongful acts of Defendants. Plaintiffs also seek recovery of all of its costs incurred in bringing and prosecuting this suit, including its attorneys' fees where applicable.

**THE PARTIES**

4. Plaintiffs Sarah and Claire are individuals over the age of 18 and are citizens of the State of Indiana.

5. The sole member of Plaintiff Halo's is Sarah. Plaintiff Halo's is a limited liability company, organized in California and doing business in Riverside County, California. For purposes of diversity jurisdiction, Halo's is a citizen of Indiana. *See* Johnson v. Columbia Properties, Anchorage, L.P., 437 F.3d 894, 899 (9th Cir. 2006)).

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**COMPLAINT**
BN 70004612v1

6.     Upon information and belief, Defendants Marc Antoine Gagnon (hereafter "Marc") is an individual over the age of 18, a citizen of Canada and is currently residing in Palm Desert, California.

7.     Upon information and belief, Defendant Meggie Roy (hereafter "Meggie") is an individual over the age of 18, a citizen of Canada and is currently residing in Palm Desert, California.

8.     Upon information and belief, Defendant Marieve Simard (hereafter "Marieve") is an individual over the age of 18, a citizen of Canada and is currently residing in Palm Desert, California.

9.     Upon information and belief, Defendant Alain Poirier (hereafter "Alain") is an individual over the age of 18, a citizen of Canada and is currently residing in Palm Desert, California.

10.     Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 280, inclusive, and therefore sue DOES 1 through 280 under fictitious names. Plaintiffs are informed and believe, and thereon allege that each of the fictitiously named DOES 1 through 280 are responsible in some manner for the occurrences alleged herein, and that Plaintiffs' damages alleged herein were proximately caused by those Defendants. Plaintiffs will seek leave of court as necessary to amend this Complaint to allege the true names and capacities of DOES 1 through 280 when ascertained.

11.     Plaintiffs are informed and believe and thereon allege, that at all material times herein Defendants, including DOES 1 through 280, and each of them, were joint and contributing tortfeasors who either acted in concert to accomplish a common purpose, agreement or plan, and were the agents, servants, principals, employees, co-conspirators or alter egos of one or more of the other Defendants, and acted with the other Defendants' knowledge, consent, and approval and within the course and scope of that agency, employment or conspiracy. As such, each of the Defendants is responsible for the liabilities of the other Defendants, as alleged herein.

## FACTUAL BACKGROUND

12.    Defendants Marc and Meggie, a married pair of grifters, con artists, and swindlers, ingratiated themselves with Plaintiffs Sarah and Claire for the main purpose of obtaining through deceit and undue influence money and possessions from daughter and mother Plaintiffs, Sarah and Claire, respectively. After realizing Sarah's and Claire's considerable wealth, Defendants began a calculated campaign to gain Sarah's and Claire's trust and confidence. Based upon information and belief, upon achieving a special relationship of trust and confidence with the Plaintiffs Sarah and Claire, Defendants stole hundreds of thousands of dollars from Plaintiffs Sara and Claire via an undue enrichment conspiracy to commit fraud and embezzlement.

### The Conspiracy to Obtain Plaintiffs Sarah's and Claire's Trust

13.    Sarah met Defendant Marc while visiting Berkeley, California in 2016. Sarah was staying in a hotel while attending a culinary course and Marc was a bartender at the hotel's bar. Over several conversations, Sarah mentioned to Marc that she was returning to her residence in Palm Desert on her private plane. After learning of Sarah's wealth, Marc began making efforts to ingratiate himself with Sarah, including claiming to be moving to Palm Desert and introducing Sarah to his wife, Defendant Meggie.  Marc and Meggie worked together to form a friendship with Sarah, for the future purpose of engaging in a conspiracy to defraud and embezzle from Sarah and her family.

### Defendants Follow Sarah to Palm Desert

14.    After Sarah completed her culinary course, she returned to her Palm Desert residence in California, which is located in the same development as her parents, Claire and her husband, Jim Gagan (now deceased). Shortly after Sarah returned to Palm Desert, Defendants advised Sarah that they were relocating to Palm Desert as well, and they moved into a small apartment near Sarah and her family.

15.    Next, Defendants befriended Sarah's parents and strengthened their friendship with Sarah in furtherance of their plan to obtain, through deceit and undue

influence, Sarah's and Claire's money and other items of value. Defendants spent substantial time together with the Gagan family at their Palm Desert residences (among other Gagan residences) and at their country club. During these times, the Defendants purposefully complained to the Gagan family about the small size of their apartment and their inability to purchase a home in Palm Desert. Defendants continued this course of action until Sarah, in a weakened and vulnerable state of mind due to her father's grave health, was swayed to purchase a home in Palm Desert through her company Halo's, in which Defendants would lease for an affordable, below-market rent, as well as an option to purchase the home, which was also well below the anticipated fair market value.

**The Bel Air Home Lease Agreement and Option Agreement**

16.     Halo's is the record title owner of the Bel Air Home, located at 72646 Bel Air Road, Palm Desert, California 92260 ("the Bel Air Home").

17.     On or about February 14, 2020, Plaintiff Halo's, through Plaintiff Sarah, orally[1] agreed to lease to Defendants the Bel Air Home in exchange for the payment of $1,847.50 on the first of every month (the "Bel Air Home Lease").

18.     On April 1, 2020, Halo's (through Sarah) entered into an Option Agreement (hereafter "Option Agreement") with Defendants, which granted Defendants an option to purchase the Bel Air Home at the end of the Bel Air Home Lease term.  A true and correct copy of the Option Agreement is attached hereto as Exhibit "A" and incorporated by reference.

19.     Defendants have occupied the Bel Air Home since approximately February 14, 2020, and still reside in the Bel Air Home to date. To date however, Defendants have not made a single payment to Halo's pursuant to the oral lease agreement.

---

[1] While a draft written lease agreement appears to have been prepared, Plaintiffs Sarah and Halo's are informed and believe, and thereon allege, that neither party executed a written lease agreement.

20.     Plaintiff Sarah, on behalf of Halo's, has demanded that the Defendants vacate the Bel Air Home, but Defendants refuse to leave.

21.     Additionally, Defendants failed to pay the "Initial Option Payment" of $100 within 5 days of execution of the Option Agreement per the Option Agreement's express terms.

## The Passing of Mr. Gagan

22.     On May 8, 2020 Jim Gagan passed away. Plaintiffs Sarah and Claire were devastated when Mr. Gagan passed. Claire and Sarah both felt lonely and were emotionally vulnerable during this difficult time.

23.     Defendants continued to take advantage of Plaintiffs Sarah and Claire in their grief stricken state prior to and after the death of Jim Gagan. Specifically, Defendants continued to strengthen their "friendship" with Sarah and Claire, while isolating Plaintiffs (Sarah and Claire), in an already weakened and vulnerable state, from their other friends and acquaintances in furtherance of their plan to obtain, through deceit and undue influence, Plaintiffs' money and other assets. As a result, Defendants further gained the confidence and trust of Plaintiffs (Sarah and Claire), including access to Plaintiff Sarah's finances. Because of Defendants' concerted efforts, Plaintiffs considered Defendants their trusted advisors and confidantes.

## The Jaguar and Mercedes Benz

24.     Defendants repeatedly complained about their old and unreliable vehicle, and their inability to purchase a new car, for the purpose of swaying Sarah to purchase a car for Defendant Marc.

25.     Marc convinced Sarah to purchase a Jaguar for the Defendants, for the purchase price of $51,500. Defendants verbally agreed to repay Sarah for the cost of the Jaguar.

26.     Thereafter, Marc claimed that the Jaguar was a lemon and returned the Jaguar to the dealership for a refund in the amount of $50,000, which Defendants were to return to Sarah to reimburse her for the purchase of the Jaguar. Despite the

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

COMPLAINT
BN 70004612v1

agreement to return the $50,000 to Sarah, to date, Defendants have kept the $50,000.00.

27.     Marc further convinced Sarah to purchase a Mercedes Benz for Defendants for the purchase price of $70,000. Defendants verbally agreed to repay Sarah for the cost of the Mercedes Benz. Despite this agreement, to date, Defendants are still in possession of the Mercedes Benz, but have made no payments to Sarah to reimburse her for the cost of the Mercedes Benz.

**The Montecito Renovation Agreement**

28.     Plaintiffs Sarah and Claire discussed with Defendants Sarah's intention to build a home in Utah. Defendant Meggie claimed to be a skilled interior decorator, and Defendants convinced Plaintiff Sarah to hire Meggie to design and decorate the home in Utah.

29.     Ultimately, Sarah chose to buy a home in Montecito, California, instead. As before, Defendants campaigned to convince Plaintiff Sarah to hire Meggie to remodel the Montecito house. Defendants caused Plaintiff Sarah to believe in Meggie's skills and judgment in regards to interior design.

30.     In 2021, Plaintiff Sarah entered into an oral contract with Meggie whereby she would design, remodel, furnish, and decorate Plaintiffs' home in Montecito, California ("Montecito Renovation Agreement"). Meggie agreed to design the Montecito home to the standards and preferences of Plaintiff Sarah, which was to be completed on or before June 1, 2021. In return, Plaintiff Sarah was to compensate Meggie in the total amount of $300,000. Plaintiff Sarah did not agree that Marc would perform any work under the Montecito Renovation Agreement.

31.     In May 2021, Defendants moved into the Montecito guesthouse and purportedly proceeded with the renovation and re-design of the main house, including requesting that Sarah issue payment of $100,000 to a general contractor. Sarah disbursed $100,000 as requested by Defendants.

32.     During the renovation, Meggie made or directed multiple mistakes, which led Plaintiff Sarah to believe that Meggie was not an expert in renovation or interior design, despite the representations made by Defendants to Plaintiffs Sarah and Claire. Mistakes made by Meggie, or at her direction, significantly increased the time and cost of the renovation.

33.     During the renovation, Defendants removed fixtures from the house, such as expensive chandeliers, and sold them without the express permission or consent of Plaintiff Sarah, and for their own personal financial gain. Plaintiff Sarah did not receive the proceeds from the sale of any fixtures removed from the Montecito house by Defendants.

34.     During the renovation, Defendants used Plaintiff Sarah's credit card to purchase numerous items from Wayfair and Amazon, among others, without the express permission or consent of Plaintiff Sarah. In addition, Defendants used Plaintiff Sarah's credit card to purchase various other items from vendors such as Burke Décor, Rove, and Wayfair in an amount exceeding $100,000 without the express permission or consent of Plaintiff Sarah; the items purchased by Defendants are not in the Montecito house and are unaccounted for to date.

35.     During the renovation, Defendants allegedly hired their cousins Alain and Marieve, to assist with the renovation without the express permission or consent of Plaintiff Sarah, and demanded that they be paid $15,000 for their labor. In addition, Defendants allowed Alain and Marieve to live at the Montecito house without the express permission or consent of Plaintiff Sarah.

36.     During the renovation, Defendants Marc and Meggie threw a lavish party (allegedly for Sarah's birthday), and used Plaintiff Sarah's credit card to purchase numerous items for the party without the express permission or consent of Plaintiff Sarah.

37.     Alas, Meggie failed to complete the renovation and redesign of the Montecito House by June 1, 2021. Indeed, Meggie failed to complete the renovation

and redesign of the Montecito House in total. The Montecito House was left uninhabitable and unfurnished.

## Marc Designs a Website for Sarah,
## But Fails to Transfer Ownership Rights to Sarah

38.     Sarah has a business in which she sells specially embellished guitars, and for which she was desirous of creating a website to sell her products online. Marc held himself out to be an experienced and knowledgeable website designer and convinced Sarah to allow Marc to create said website for Sarah.

39.     Marc subsequently created the website (www.glitterguitars.com) for Sarah, yet has failed to transfer ownership and administrative access to Sarah. Despite repeated demands that Marc turn over ownership and access to Sarah's website to Sarah, Marc continues to this day to maintain control over Sarah's business website, its content and her intellectual property.

## Theft of Money from Plaintiff Sarah and Claire, Respectively

40.     Upon information and belief, over the course of their relationship with Plaintiffs Sarah and Claire, Defendants worked together to take tens of thousands of dollars from the safes of Sarah and Claire, respectively, without their knowledge or consent, by virtue of Defendants' position as trusted advisors and family friends.

## Conspiracy Allegations

41.     At this time, Plaintiffs do not know the full magnitude of the Defendants' wrongful conduct. However, Defendants, and each of them, knowingly and willfully conspired together and agreed among themselves, or in the alternative, later joined the ongoing conspiracy, and fully ratified all past actions and the purpose of the conspiracy, and agreed to undertake the wrongful acts as alleged herein, resulting in injury and damage to Plaintiffs.

42.     Defendants, and each of them, did the acts and things herein alleged pursuant to, and in furtherance of the conspiracy and above-alleged agreement. Upon information and belief, Defendants, and each of them, shared in the wrongfully-taken

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

assets. As a proximate result of the wrongful acts herein alleged, Plaintiffs have been generally damaged in an amount in excess of $75,000 dollars, and each of the Defendants who participated in the conspiracy are jointly and severally liable to Plaintiffs for damages.

43.    Defendants, with the intent to permanently deprive Plaintiffs of their respective personal and real property, fraudulently appropriated the assets of Plaintiffs, all as alleged herein. Defendants knowingly and designedly, by false or fraudulent representations or pretenses, defrauded Plaintiffs of personal and real property.

44.    Further, on information and belief, Defendants and DOES 1 through 280, and each of them, knew of the wrongful nature of the fraudulent acts as alleged herein, and defrauded Plaintiff Halo's (through Sarah) into gaining access to the Bel Air Home for the personal use of the Defendants as alleged herein.

45.    Upon information and belief, Defendants and certain of DOES 1 through 280, and each of them, knew that Plaintiffs Sarah's and Claire's assets were obtained in a manner constituting theft, and nevertheless agreed to share in portions thereof without informing Plaintiffs Sarah and Claire, thereby, aiding in the concealment or withholding the said assets from Plaintiffs Sarah and Claire.

46.    Some of the sums converted by the Defendants are capable of being identified from Plaintiff Sarah's records. While investigation is ongoing, Plaintiffs Sarah and Claire believe that the Defendants wrongfully took hundreds of thousands of dollars in cash or property from Plaintiffs Sarah and Claire.

47.    In doing the things herein alleged, Defendants, and each of them, acted willfully, oppressively, fraudulently, and maliciously, and with a conscious disregard for the rights of Plaintiffs' and, accordingly, Plaintiffs are entitled to recovery of punitive damages in an amount to be determined at trial.

48.    Through this action, Plaintiffs seek to recover all of the money and property Defendants improperly took.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**COMPLAINT**
BN 70004612v1

**FIRST CAUSE OF ACTION**

**(Ejectment By Halo's Against All Defendants and DOES 1 through 20)**

49.     Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

50.     Halo's is, and at all relevant times mentioned herein was, the record title owner of that certain real property located in Riverside County, California, and commonly known as 72646 Bel Air Road, Palm Desert, California 92260, (the Bel Air Home).

51.     Upon information and belief, Defendants are now in possession of the Bel Air Home and have been in possession of the property since approximately February 14, 2020.

52.     Plaintiff Halo's has demanded that Defendants, and each of them, on numerous occasions to vacate the premises, but Defendants have ignored those demands, have refused to pay rent, and still unlawfully hold physical possession of the Bel Air Home.

53.     The reasonable value of the rents and profits of the premises is, and was, at least $1,847.50 per month. Plaintiff Halo's has been damaged in this sum since February 14, 2020 and will continue to be damaged as long as defendants withhold physical possession of the premises from Plaintiff Halo's.

**SECOND CAUSE OF ACTION**

**(Trespass By Halo's Against All Defendants and DOES 1 Through 20)**

54.     Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

55.     Halo's is, and at all relevant times mentioned herein was, the record title owner, entitled to possession of that certain real property located in Riverside County, California, and commonly known as 72646 Bel Air Road, Palm Desert, California 92260, (the Bel Air Home).

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**COMPLAINT**
BN 70004612v1

56.     On or about February 14, 2020, Defendants took possession of the Bel Air Home, in exchange for the promise to pay $1,847.50 per month. Defendants have never made a single payment to Plaintiff Halo's.

57.     Upon information and belief, Defendants are now in possession of the Bel Air Home and have been in possession of the property since approximately February 14, 2020.

58.     Plaintiff Halo's has since revoked its consent to Defendants' presence at the Bel Air Home.

59.     Plaintiff Halo's has demanded that Defendants, and each of them, on numerous occasions to vacate the premises, but Defendants have ignored those demands, have refused to pay rent, and still unlawfully hold physical possession of the premises.

60.     As a result of Defendants actions, Plaintiff Halo's has been damaged in an amount to be proven at trial.

61.     Defendants' actions were done with oppression, fraud, or malice within the meaning of Civil Code § 3294 and as a consequence Plaintiff Halo's is entitled to an award of punitive damages against Defendants.

### THIRD CAUSE OF ACTION

**(Conspiracy to Commit Fraud By all Plaintiffs Against all Defendants and DOES 21 through 40)**

62.     Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

63.     Plaintiffs are informed and believe and thereon allege, that at all material times alleged herein that Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to ingratiate themselves with the Gagan family to gain the Gagans' trust and confidence in order to unlawfully take advantage of the Gagans' assets.

64.     Each of the Defendants agreed, expressly or tacitly, to a common design to commit fraud against the Plaintiffs through their plan to obtain through deceit and undue influence Plaintiffs' assets and other property. Each of the Defendants did so solely for their own financial profit and with concise disregard for the risk, liability and losses that would be sustained by the Plaintiffs.

65.     Each of the Defendants had knowledge of the wrongful purpose of their common design. In furtherance of this scheme, Defendants made and engaged in the false, fraudulent, deceptive and wrongful representations, acts and practices alleged herein alleged. The conspiracy continues by and until Defendants account for and turn over to the Plaintiffs all property and other assets Defendants wrongfully obtained.

66.     Plaintiffs were ignorant of the true facts and ignorant of the existence of the false, fraudulent, deceptive and wrongful representations, acts and practices, the truth about which was deliberately omitted, or was actively and deceptively concealed from Plaintiffs, by Defendants by means of non-disclosure or by means of the deceitful practices including undue influence, all as alleged herein. Had Plaintiffs been aware of the facts not disclosed, or aware of the facts concealed by means of Defendants false, fraudulent, deceptive and wrongful representations, acts and practices, Plaintiffs would not have entered into any oral or written agreements with Defendants nor allowed Defendants access to their finances, assets and real property.

67.     As a result Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial.

68.     Defendants' actions were done with oppression, fraud, or malice within the meaning of Civil Code § 3294 and as a consequence Plaintiffs are entitled to an award of punitive damages against Defendants.

69.     Plaintiffs are entitled to treble damages pursuant to Civil Code § 3345.

**FOURTH CAUSE OF ACTION**

**(Fraud – Intentional Misrepresentation By all Plaintiffs Against Defendants Marc and Meggie and DOES 41 through 60)**

70.     Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

71.     Defendants, on behalf of themselves and others, represented to Plaintiffs that they could be trusted as close confidantes with access to Plaintiffs' assets and financial information, and represented that they would act as the Plaintiffs' representatives, and would faithfully and honestly represent and assist them and ensure that their financial interests and real property would be well managed throughout the course of their relationship.

72.     Over the course of the next ensuing years, on multiple occasions, Defendants represented, both verbally and in writing, that they were honestly dealing with Plaintiffs' related to the real property, personal property and Plaintiffs' other assets.

73.     The above representations were false. The true facts were that the Defendants intended to (and in fact did) steal large sums of money, other property and assets belonging to the Plaintiffs, and never intended to perform any Defendants' obligations as alleged herein. Instead,  Defendants embezzled and/or diverted funds from Plaintiffs Sarah and Claire, took possession of the Bel Air Home from Plaintiff Halo's, as well as absconded other assets without any intention of paying Plaintiffs despite Defendants' representations that they would.

74.     When Defendants made the representations, they knew them to be false, and they made the representations with the intent to deceive and defraud the Plaintiffs and to induce the Plaintiffs to act in reliance on these representations in the manner alleged herein.

75.     Plaintiffs, at the time the representations were made, were ignorant of the falsity of the representations and believed them to be true.

76.    In Defendants' gaining the trust and confidence of Plaintiffs, Plaintiffs' relied upon the representations of Defendants by permitting Defendants to take control of, and permitting Defendants to manage, Plaintiff Sarah's real property and other assets, including, *inter alia*, obtaining physical possession of the Bel Air Home, obtaining the Option Agreement, the Montecito Renovation Agreement, and car purchases, as well as gaining access to Claire's property and assets.

77.    The Plaintiffs' reliance was justified as there was no reason to suspect the Defendants' fraudulent intent or to know that the representations were lies due to their close relationship.

78.    Defendants failed to faithfully perform as promised and took money and other items of value that belonged to the Plaintiffs, in a sum that is not yet fully known but believed to be in excess of hundreds of thousands of dollars.  As a result of Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial.

79.    The acts of Defendants were willful, oppressive, and malicious. Plaintiffs are therefore entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Fraud – Negligent Misrepresentation By all Plaintiffs Against Defendants Marc and Meggie and DOES 41 through 60)

80.    Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

81.    Defendants, on behalf of themselves and others, represented to Plaintiffs that they could be trusted as close confidantes with access to Plaintiffs' assets and financial information, and represented that they would act as the Plaintiffs' representatives, and would faithfully and honestly represent and assist them and ensure that their financial interests and real property would be well managed throughout the course of their relationship.

82.     Over the course of the next ensuing years, on multiple occasions, Defendants represented, both verbally and in writing, that they were honestly dealing with Plaintiffs' related to the real property, personal property and Plaintiffs' other assets.

83.     The above representations were false. The true facts were that the Defendants intended to (and in fact did) steal large sums of money, other property and assets belonging to the Plaintiffs, and never intended to perform any Defendants' obligations as alleged herein. Instead,  Defendants embezzled and/or diverted funds from Plaintiffs Sarah and Claire, took possession of the Bel Air Home from Plaintiff Halo's, as well as  absconded other assets without any intention of paying Plaintiffs despite Defendants' representations that they would.

84.     When Defendants made the representations, they had no reasonable grounds for believing the representations to be true, and they failed to exercise due care in ascertaining the accuracy of the representations made to Plaintiffs. They made the representations with the intent to deceive and defraud the Plaintiffs and to induce Plaintiffs to act in reliance on these representations in the manner alleged herein.

85.     Plaintiffs, at the time the representations were made, were ignorant of the falsity of the representations and believed them to be true.

86.     In Defendants' gaining the trust and confidence of Plaintiffs, Plaintiffs' relied upon the representations of Defendants by permitting Defendants to take control of, and permitting Defendants to manage, Plaintiff Sarah's/Halo's real property and other assets, including, *inter alia*, obtaining physical possession of the Bel Air Home, obtaining the Option Agreement, the Montecito Renovation Agreement, and car purchases, as well as gaining access to Claire's property and assets.

87.     The Plaintiffs' reliance was justified as there was no reason to suspect the Defendants' fraudulent intent or to know that the representations were lies due to their close relationship.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

COMPLAINT
BN 70004612v1

88.     Defendants failed to faithfully perform as promised.  As a result of Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial.

89.     The acts of Defendants were willful, oppressive, and malicious. Plaintiffs are therefore entitled to punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Conversion by Plaintiffs Sarah and Claire Against all Defendants and DOES 61 through 80)

90.     Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

91.     Defendants wrongfully acquired personal and real property belonging to Plaintiffs though a series of false, fraudulent, deceptive and wrongful representations, acts and practices as alleged herein, and other means yet to be discovered, including among other wrongful acts, taking monies, personal property and real property from Plaintiffs, as herein alleged, for their own unjust monetary enrichment.

92.     Despite Plaintiffs' demand, Defendants have failed and refused, and continue to fail and refuse, to turn over the property and assets in question.

93.     As a proximate and foreseeable result of Defendants' wrongful conduct as herein alleged, Plaintiffs have suffered damages in an amount to be proven at trial.

94.     The acts of Defendants were willful, oppressive, and malicious. Plaintiffs are therefore entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract- Bel Air- By Plaintiff Halo's Against Defendants Marc and Meggie and DOES 81 through 100)

95.     Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

96.     On or about February 14, 2020, Plaintiff Halo's, through Plaintiff Sarah, orally agreed to lease to Defendants the Bel Air Home in exchange for the payment of $1,847.50 on the first of every month (the "Bel Air Home Lease").

97.     Plaintiff Halo's has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the oral agreement.

98.     Despite being in physical possession of the Bel Air Home since February 14, 2020, Defendants have breached the Bel Air Home Lease by never making a single payment to Plaintiff Halo's.

99.     As a result of Defendants' breach, Plaintiff Halo's have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

**(Breach of Contract- Jaguar and Mercedes Benz- By Plaintiff Sarah Against Defendants Marc and Meggie and DOES 101-120)**

100.    Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

101.    In or about 2020, Plaintiff Sarah purchased the Jaguar and Mercedes Benz with the promise by Defendants that they would pay Plaintiff Sarah back.

102.    Plaintiff Sarah has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the oral agreement.

103.    Defendants have breached the oral agreements by never making a single payment to Plaintiff Sarah.

104.    As a result of Defendants' breach, Plaintiff Sarah has suffered damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

**(Breach of Contract- Option Agreement- By Halo's Against Defendants Marc and Meggie and DOES 121 through 140)**

105. Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

106. On April 1, 2020, Halo's (through Sarah) entered into an Option Agreement (hereafter "Option Agreement") with Defendants, which granted Defendants an option to purchase the Bel Air Home at the end of the Bel Air Home Lease term.

107. Plaintiff Halo's has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Option Agreement.

108. Defendants failed to pay the "Initial Option Payment" of $100 within 5 days of execution of the Option Agreement per the Option Agreement's express terms.

109. Plaintiff requested that Defendants perform their obligations under the Option Agreement.

110. As a result of Defendants' breach, Plaintiff has suffered damages and seeks to have the Option Agreement declared null and void *ab initio*.

## TENTH CAUSE OF ACTION

**(Promissory Estoppel By all Plaintiffs Against all Defendants and DOES 141 through 160)**

111. Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 48 of this Complaint, as though fully set forth herein.

112. Defendants made promises to Plaintiffs as alleged herein.

113. In making these promises, which Defendants knew were false and had no reasonable basis to believe were true, Defendants intended for Plaintiffs to rely on them.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

COMPLAINT
BN 70004612v1

114.    Plaintiffs in fact placed trust and confidence in Defendants and relied on them to Plaintiffs' own detriment.

115.    As a direct and proximate result of Plaintiff's reliance on Defendant's promises, Plaintiffs have been harmed and damaged according to proof at time of trial.

116.    Injustice can be avoided by, *inter alia*, (1) enforcing Defendants' promises related to the Jaguar and Mercedes Benz, (2) declaring the Montecito Renovation Agreement null and void *ab initio*, (3) declaring the Option Agreement null and void *ab initio*, (4) returning physical possession of the Bel Air Home to Plaintiff Halo's and (5) an accounting and the return of ill-gotten gains by Defendants, and each of them.

## ELEVENTH CAUSE OF ACTION

### (Financial Elder Abuse By Plaintiff Claire Against Defendants Marc and Meggie and DOES 161 through 180)

117.    Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 48 of this Complaint, as though fully set forth herein.

118.    This cause of action is brought pursuant to California Welfare & Institutions Code Sections 15600, et. seq, (the "Elder Abuse Act").

119.    At the time of Defendants wrongful actions as alleged herein, Plaintiff Claire was over 65 years old. She is an "elder" as defined by Welfare & Institutions Code Section 15610.27 and are, therefore, entitled to the statutory protections of the Elder Abuse Act. Further, at all times relevant to this Complaint, Defendants knew Plaintiff Claire was an elder.

120.    Defendants took and retained the property of the elder Plaintiff Claire for wrongful use or with the intent to defraud, in that the Defendants failed to inform her of the Defendants' actions and the Defendants had no legitimate grounds to take her assets.

121.   By their actions, Defendants have committed elder abuse, because their treatment of Plaintiff Claire, as alleged, resulted in the taking and misappropriation of monies and other items of value from Plaintiff Claire, the total amount of which Plaintiff Claire is still in the process of quantifying, for a wrongful use and/or with the intent to defraud Plaintiff Claire.

122.   Further, as alleged herein, Defendants' utilizing their position of influence, made misrepresentations as to their true intentions regarding the taking and/or misappropriation of Plaintiff Claire's assets, combined with Plaintiff Claire's age, amount to undue influence and elder abuse.

123.   As a result of Defendants' actions, Plaintiff Claire was deprived of her monies and other items of value, the total amount of which Plaintiff Claire is still in the process of quantifying. Defendants knew or should have known that their alleged wrongful actions were likely to be harmful to Plaintiff Claire.

124.   As a proximate and foreseeable result, Plaintiff Claire suffered damages and other compensatory and consequential damages, in an amount according to proof at trial.

125.   For the foregoing reasons, Plaintiff Claire is entitled to the remedies provided by the Elder Abuse Act.

126.   Further, Plaintiff Claire has incurred, and will continue to incur, attorney's fees and costs in this litigation. In addition to compensatory damages and all other remedies otherwise provided by law, Plaintiff Claire is entitled to recover attorney's fees and costs from Defendants, pursuant to Welfare & Institutions Code Section 1-5657.5(a).

127.   In committing the actions and conduct described above, Defendants, and each of them, acted with recklessness, oppression, fraud, and malice, and Plaintiff Claire is therefore entitled to an award of exemplary or punitive damages, pursuant to Welfare & Institutions Code Section 15657.5 and Civil Code Section 3294, and treble damages pursuant to Civil Code Section 3345.

**TWELFTH CAUSE OF ACTION**

**(Accounting by all Plaintiffs Against all Defendants and DOES 181 through 200)**

128.   Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 48 of this Complaint, as though fully set forth herein.

129.   The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be fully ascertained without an accounting of receipts and disbursements of the transactions entered into by Defendants with third parties.

130.   Plaintiffs are unable to fully account for the assets received by Defendants or their agents and assigns which were and continue to be wrongfully taken from Plaintiffs.

131.   Plaintiffs have demanded the Defendants account for and deliver to Plaintiffs receipts and disbursements with third parties, but Defendants have failed and refused, and continue to fail and refuse, to render an accounting.

**THIRTEENTH CAUSE OF ACTION**

**(Rescission and Restitution by Halo's and Sarah Against Defendants Marc and Meggie and DOES 201 through 240)**

132.   Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 48 of this Complaint, as though fully set forth herein.

133.   By virtue of the acts of Defendants, all as alleged herein, the Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement, were all obtained by fraud, duress and undue influence, and Plaintiffs' Halo's and Sarah received no consideration of any kind from any Defendants.

134.   The apparent consent of Plaintiffs Halo's and Sarah, respectively, to leasing the Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement was not real, mutual, or free in that it was obtained through undue influence, and  Plaintiff's Halo's and Sarah, respectively, would not have given their consent but for the undue influence.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

COMPLAINT
BN 70004612v1

135.   Plaintiffs intend service of the summons and complaint in this action to serve as notice of rescission of the Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement.

136.   Plaintiffs' Halo's and Sarah seek rescission of Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement because Plaintiffs' Halo's and Sarah have no other adequate remedy at law. If the agreements are not rescinded, Plaintiffs Halo's and Sarah will suffer irreparable harm and injury because Plaintiffs Halo's and Sarah would not have entered into the aforementioned agreements had that they not had been bamboozled in placing trust and confidence in Defendants.

## FOURTEENTH CAUSE OF ACTION

### (Unjust Enrichment By all Plaintiffs Against all Defendants and DOES 241 through 260)

137.   Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

138.   In the above unlawful transactions, Defendants received benefits from Plaintiffs, valued in excess of hundreds of thousands of dollars in the form of monies, personal property, real property and other assets. Defendants voluntarily accepted and retained the benefit conferred, to Plaintiffs' detriment.

139.   Although demand has been made, Defendants, and each of them, have failed, refused, and neglected to pay the monies due and owing to Plaintiffs.

140.   As a result of Defendants' actions, Plaintiff Sarah has suffered damages in an amount to be proven at trial.

## FIFTEENTH CAUSE OF ACTION

### (Declaratory Relief By all Plaintiffs Halo's and Sarah Against Defendants Marc and Meggie and DOES 261 through 280)

141.   Plaintiffs incorporate the allegations in paragraphs 1 through 48 of this Complaint as though set forth fully herein.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

COMPLAINT
BN 70004612v1

142.    An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that Plaintiffs contend that the Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement are invalid and unenforceable in all respects, whereas defendant contends that the Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement are valid. Plaintiffs dispute Defendants' contentions for the reasons recited herein above.

143.    Plaintiffs desire a judicial determination of their rights and duties, and a declaration as to whether the Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement are invalid and unenforceable *ab initio*.

144.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties under the Bel Air Home Lease, the Montecito Renovation Agreement and the Option Agreement. Declaratory relief would inform the parties' future conduct and lessen financial or other burdens being caused to Plaintiffs by the unsettled state of affairs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as follows:

**AS TO THE FIRST AND SECOND CAUSES OF ACTION:**

1.    For restitution of the Bel Air Home;

2.    For damages of Defendants unlawful detention at the rate of at least $1,847.50 per month from and after February 14, 2020;

**AS TO THE THIRD, FOURTH, FIFTH AND SIXTH CAUSES OF ACTION:**

1.    For general damages in an amount according to proof at trial;

2.    For incidental and consequential damages in an amount according to proof at trial;

3.    For exemplary and punitive damages;

4.    For treble damages, pursuant to Civil Code Section 3345;

**AS TO THE SEVENTH AND EIGHTH CAUSES OF ACTION:**

    1. For compensatory damages in a sum according to proof;

**AS TO THE NINTH CAUSE OF ACTION:**

    1. That the Option Agreement be declared null and void *ab initio*.

**AS TO THE TENTH CAUSE OF ACTION:**

    1. For compensatory damages in a sum according to proof;

    2. For enforcement of Defendants' promises related to the Jaguar and Mercedes Benz, (2) that the Montecito Renovation Agreement be declared null and void *ab initio*, (3) that the Option Agreement be declared null and void *ab initio* (4) returning physical possession of the Bel Air Home to Plaintiff Halo's and (5) an accounting and the return of ill-gotten gains by Defendants, and each of them.

**AS TO THE ELEVENTH CAUSE OF ACTION:**

    1. For compensatory damages pursuant to Welfare and Institutions Code Section 15657.5(a), awarded based on Plaintiff's elder financial abuse claim as defined by Welfare and Institutions Code Section 15610.30, in a sum of according to proof, and other damages in an amount to be determined by the Court;

    2. For punitive damages pursuant to Welfare and Institutions Code Section 15657.5 and Civil Code Section 3294;

    3. For reasonable attorney's fees pursuant to Welfare and Institutions Code Section 15657.5(a), in an amount to be determined by the Court;

**AS TO THE TWELFTH CAUSE OF ACTION:**

    1. For an accounting between Plaintiffs and Defendants;

    2. For payment over to Plaintiffs as a result of the accounting according to proof;

**AS TO THE THIRTEENTH AND FOURTEENTH CAUSES OF ACTION:**

    1. That this Court declare the Bel Air Home Lease, the Montecito Renovation

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

**COMPLAINT**
BN 70004612v1

1  Agreement and the Option Agreement have been rescinded;

2  2. That Defendants be ordered to pay Plaintiffs' in sums according to proof;

3  3. For general and special damages according to proof;

4  4. For exemplary and punitive damages;

5  **AS TO THE FIFTEENTH CAUSE OF ACTION:**

6  1. For a declaration that the Bel Air Home Lease, the Montecito Renovation

7  Agreement and the Option Agreements are void and of no force or effect;

8  2. For general and special damages according to proof;

9  3. For issuance of a temporary restraining order, preliminary injunction and

10  permanent restraining order enjoining defendants from use of the Bel Air

11  Home;

12  **AS TO ALL CAUSES OF ACTION:**

13  1. For costs of suit incurred herein;

14  2. For such other and further relief as the Court deems just and proper.

15

16

17  DATED:  April 20, 2022

BUCHALTER
A Professional Corporation

By: _____
    VINCENT R. WHITTAKER
    MICHELLE K. MEEK
    SKYE L. DALEY
    Attorneys for Plaintiffs HALO'S
    HEART, LLC, a California Limited
    Liability Company, SARAH GAGAN, an
    individual, and CLAIRE GAGAN, an
    individual

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiffs HALO'S HEART LLC, SARAH GAGAN, and CLAIRE GAGAN demand a trial by jury of all issues properly triable by jury in this action.


DATED:  April 20, 2022

BUCHALTER
A Professional Corporation


By: _____
        VINCENT R. WHITTAKER
        MICHELLE K. MEEK
        SKYE L. DALEY
     Attorneys for Plaintiffs HALO'S
     HEART, LLC, a California Limited
     Liability Company, SARAH GAGAN, an
     individual, and CLAIRE GAGAN, an
     individual

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

COMPLAINT
BN 70004612v1