1   BRIAN S. HARNIK, ESQ.  (SBN 135724)
    MARY E. GILSTRAP, ESQ. (SBN 150941)
2   ANDREW G. MONTEZ, ESQ. (SBN 324188)
    **ROEMER & HARNIK LLP**
3   45-025 Manitou Drive
    Indian Wells, California 92210
4   Telephone (760) 360-2400
    Facsimile (760) 360-1211
5   email: bharnik@rhlawfirm.com

6   ATTORNEYS FOR:
    Marc Antoine Gagnon and Meggie Roy
7

8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

12   SARAH GAGAN, an individual, CLAIRE      )   **Case No.:** 5:22-cv-00680-SSS-SP
     GAGAN, an individual, HALO'S HEART,     )
13   LLC, a California Limited Liability Company )
                                             )   **DEFENDANTS MARC ANTOINE**
14              Plaintiff,                    )   **GAGNON AND MEGGIE ROY'S**
                                             )   **ANSWER TO PLAINTIFF'S**
15        v.                                  )   **FIRST AMENDED COMPLAINT**
                                             )   **AND COUNTER-CLAIM FOR:**
16                                           )
     MARC ANTOINE GAGNON, an individual,    )   **1. DECLARATORY**
17   MEGGIE ROY, an individual, MARIEVE     )      **RELIEF;**
     SIMARD, an individual, ALAIN POIRIER, an )   **2. UNJUST**
18   individual, and DOES 1-280, inclusive,  )      **ENRICHMENT/**
                                             )      **RESTITUTION**
19              Defendants.                   )   **3. BREACH OF ORAL**
                                             )      **CONTRACT; AND**
20   MARC ANTOINE GAGNON, an               )   **4. DEFAMATION AND**
     individual; MEGGIE ROY, an            )   **5. CONVERSION**
21   individual and Roes 1-10, inclusive,   )
                                             )
22              Cross-Complainants          )
                                             )
23        v.                                  )
     SARAH GAGAN, an individual;           )
24   CLAIRE GAGAN, an individual,          )
     HALO'S HEART, LLC, a California       )
25   limited liability company, and Roes 1-  )
     10, inclusive,                          )
26              Cross-Defendants.           )
                                             )
27   ─────────────────────────────── )

28

Defendants Marc Antoine Gagnon (hereinafter "Marc") and Meggie Roy (hereinafter "Meggie") (collectively referred to as "Defendants"), by and through their counsel, Roemer & Harnik, LLP, for their answer to Plaintiff Sarah Gagan, Claire Gagan and Halo's Heart, LLC's First Amended Complaint (collectively "Plaintiffs"), deny all factual allegations contained in the headings and hereby admit, deny and allege as follows:

## JURISDICTION AND VENUE

1.      Defendants lack sufficient information to admit or deny the allegation in Paragraph 1 that diversity jurisdiction exists because it is unclear whether Plaintiffs are legal citizens of the State of Indiana, and on that basis, deny the allegation.  The remaining portion of the paragraph contains conclusions of law to which no response is required.

2.      Denied in part; admitted in part.  Paragraph 2 contains conclusions of law to which no response is required.  Defendants admit, however, that they reside in this district and the events giving rise to the claims occurred in this district.

## NATURE OF THE ACTION

3.      Admitted in part; denied in part. Defendants admit that Plaintiff's Complaint does contain the allegations and relief stated in Paragraph 3.  Defendants deny the veracity of these claims, and deny that Plaintiffs are entitled to any relief whatsoever.

## THE PARTIES

4.      Admitted in part; denied in part.  Paragraph 4 contains conclusions of law as to the term "citizens" to which no response is required.  Defendants admit, however, that Plaintiffs are over the age of 18. Defendants lack sufficient information to admit or deny whether Sarah and Claire Gagan are citizens of the State of Indiana for diversity jurisdiction purposes, and therefore deny the allegation on that basis.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

5.      Admitted in part; denied in part.  Defendants admit that Plaintiff Sarah Gagan is the sole member of Plaintiff Halo's Heart, and that Halo's Heart is organized under the laws of the State of California, doing business in Riverside County, California.  Paragraph 5 contains conclusions of law as to the term "citizen" to which no response is required.  Defendants lack sufficient information to admit or deny whether Sarah and Claire Gagan are citizens of the State of Indiana for diversity jurisdiction purposes, and therefore deny the allegation on that basis.

6.      Admit.

7.      Admit.

8.      Defendants admit they are married. The remaining allegations are denied.

9.      Defendants admit that they met Plaintiff Sarah Gagan in Berkeley California in 2016. The remaining allegations of the paragraph are denied.

10.      Admitted only to the extent that Plaintiff Sarah Gagan returned to the desert.  The remainder of the allegation is denied.

11.      Denied.

12.      Admitted only to the extent that the real property was purchased on or about February 11, 2020.  The remainder of the allegation is denied.

13.      Admitted in part and denied in part.  Admit that Defendants entered into a written lease with Halo's Heart; deny that it was dated February 1, 2020; deny that Exhibit A to the First Amended Complaint is the lease that Defendants signed, particularly as it appears to be a draft with questions in the footer, and deny that Halo's Heart, the purported lessor, was in existence as of February 1, 2020 and thus legally able to enter into any contract, as Halo's Heart was formed on or about March 9, 2020.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

14.   As the lease attached to the First Amended Complaint appears to be fraudulent, and which suddenly appeared after Plaintiffs claiming for months that they did not have a copy of a  signed lease, the entire paragraph is denied.

15.   Admit that Exhibit "A" to the First Amended Complaint speaks for itself; denied as to its authenticity or enforceability.

16.   Deny that the option agreement was entered into on April 1, 2020; admit that the option agreement was entered into by Defendants on or about April of 2021, which was back-dated by Plaintiffs Halo's Heart and Sarah Gagan.

17.   Admit to the extent that Defendants have occupied the Palm Desert property since its purchase which closed on February 12, 2020.  The remainder of the paragraph is denied.

18.   Denied.

19.   Admit a demand to leave was made; deny that any such demand was made pursuant to the terms of any lease.

20.   Defendants lack sufficient information to admit or deny this paragraph, so it is denied on that basis.

21.   Denied.

22.   Denied.

23.   Admitted to the extent that Plaintiff Sarah Gagan purchased a jaguar automobile for Defendants and that she put the title into the name of Defendant Marc Gagnon.  Deny the remainder of the paragraph.

24.   Denied.

25.   Admitted in part; denied in part.  Defendants admit that Sarah purchased a Mercedes Benz for Defendant Marc Gagnon, who is still in possession of the vehicle. The remaining allegations are denied.

26.   Denied.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

27.     Admitted part; denied in part.  Defendants admit that Plaintiff Sarah Gagan spoke with them about her intention to build a home in Utah.  Defendants deny the remaining allegations in the paragraph.

28.     Admitted in part; denied in part. Defendants admit that Sarah ultimately decided against building a house in Utah; deny the remainder of the paragraph.

29.     Admit that Plaintiff Sarah Gagan as trustee of her trust purchased the Montecito property.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Deny all allegations in the paragraph other than the fact that Defendant Meggie Roy assisted contractors by cutting tiles and that she is not licensed as a contractor by the State of California.

37.     Denied to the extent that claimed facts are incomplete.

38.     Denied.

39.     Admit only to the extent that Defendant Marc Gagnon told Plaintiff Sarah Gagan that he had experience with designing websites within the time frame referenced.  Deny the remainder of the paragraph.

40.     Admitted, other than the statement that Plaintiff Sarah Gagan stated she wanted to hire both Defendants in connection with designing a website and logo; Defendants lack sufficient information to admit or deny the statement that Plaintiff Sarah Gagan offered to hire both Defendants on the basis of their representations, and on that basis, the allegation is denied.

41.     Admit.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

- 5 -

42.   Admit.

43.   Denied.

44.   Denied.

45.   Denied.

46.   Denied.

47.   Denied.

48.   Denied.

49.   Denied.

50.   Denied.

51.   Denied.

52.   Denied.

53.   Denied.

54.   Denied.

## FIRST CLAIM FOR RELIEF

55.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

56.   Admitted in part; denied in part.  Defendants admit that Halo's is the current record title owner of the Bel Air Home.  Defendants deny that Halos' was the record title owner of the Bel Air Home at all relevant times.

57.   Admitted to the extent that Defendants are in possession of the Bel Air Property; deny that they took possession on February 14, 2020.

58.   Denied.

59.   Denied.

60.   Denied.

61.   Admit that the First Amended Complaint speaks for itself as to what relief Plaintiff Halo's Heart is seeking.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

62.     Denied. No such relief appears to be sought in the First Amended Complaint.

63.     In response to this paragraph, Defendants incorporate by reference and re-allege their responses to each of the above-paragraphs as if full set forth herein.

64.     Denied.

65.     Denied.

66.     Denied as to the date of possession. The remainder of the allegation is admitted.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

## THIRD CLAIM FOR RELIEF

71.     Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied, and Exhibit E contradicts this allegation.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

## FOURTH CLAIM FOR RELIEF

96.     Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied,

*ROEMER & HARNIK LLP*
*45-025 Manitou Drive*
*Indian Wells, California 92210*

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
Gagan v. Gagnon

109.   Denied,

110.   Denied.

111.   Denied.

112.   Denied,

113.   Denied.

## FIFTH CLAIM FOR RELIEF

114.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

115.   Denied.

116.   Denied.

117.   Denied.

118.   Denied.

119.   Denied.

120.   Denied.

121.   Admit only to the extent that the First Amended Complaint speaks for itself as to the relief sought by Plaintiffs.

122.   Denied.

## SIXTH CLAIM FOR RELIEF

123.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

124.   Denied.

125.   Denied.

126.   Admit only to the extent that the alleged lease attached as Exhibit "A" speaks for itself.  Deny that Defendants entered into that lease or that the lease is legitimate.

127.   Denied.

128.   Denied.

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

129. Denied.

130. Denied.

131. Denied.

132. Admit.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

138. Denied.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

146. Denied.

147. Denied.

148. Denied.

149. Denied.

150. Denied.

151. Denied.

152. Admit that Plaintiff Sarah Gagan has a small business selling embellished guitars and wanted Defendant Marc Gagnon to create a website; deny that Defendant Marc Gagnon "convinced" her to hire him.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

153.   Deny with the exception that Defendant Marc Gagnon did construct a website and provided other services to Sarah Gagan at her request.

154.   Denied.

155.   Denied.

156.   Denied.

157.   Admit only to the extent that the First Amended Complaint speaks for itself.

158.   Denied.

## SEVENTH CLAIM FOR RELIEF

159.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

160.   Denied.

161.   Denied.

162.   Denied.

163.   Denied.

164.   Denied.

## EIGHTH CLAIM FOR RELIEF

165.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

166.   Paragraph 166 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 166 are denied.

167.   Deny all allegations other than Plaintiff Claire Gagan is over the age of 65.

168.   Denied. The First Amended Complaint is devoid of any facts surrounding any property of Plaintiff Claire Gagan that was taken by Defendants;

169.   Denied.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON
AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

170.   Denied.

171.   Denied.

172.   Denied.

173.   Denied.

174.   Denied,

175.   Denied.

## NINTH CLAIM FOR RELIEF

176.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

177.   Denied.

178.   Denied.

179.   Denied.

180.   Denied.

## TENTH CLAIM FOR RELIEF

181.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

182.   Admit.

183.   Denied to the extent that Defendant Marc Gagnon was not a party to any agreement reached between Plaintiff Sarah Gagan and Defendant Meggie Roy regarding Roy's compensation.

184.   Paragraph 184 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 184 are denied.

185.   Paragraph 185 states conclusions of law to which no responsive pleading is required. To the extent a responsive pleading is required, the allegations in Paragraph 185 are denied.

## ELEVENTH CLAIM FOR RELIEF

186.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

187.   Denied.

188.   Denied.

189.   Denied.

190.   Denied.

191.   Denied.

192.   Paragraph 192 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 192 are denied.

193.   Paragraph 193 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 193 are denied.

## TWELFTH CLAIM FOR RELIEF

194.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

195.   Denied.

196.   Denied with the exception of the statement that Defendants coordinated and oversaw contractors.

197.   Denied.

198.   Denied.

199.   Denied.

200.   Paragraph 200 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 200 are denied.

*ROEMER & HARNIK LLP*
*45-025 MANITOU DRIVE*
*INDIAN WELLS, CALIFORNIA 92210*

201. Paragraph 201 states conclusions of law to which no responsive pleading is required. To the extent a responsive pleading is required, the allegations in Paragraph 201 are denied.

## THIRTEENTH CLAIM FOR RELIEF

202. Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

203. Denied.

204. Denied.

205. Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to the relief requested in the First Amended Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

206. The First Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

207. Plaintiffs' claims are barred, in whole or part, by the doctrines of waiver, laches and/or unclean hands.

### Third Affirmative Defense

208. Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation.

### Fourth Affirmative Defense

209. Plaintiffs' claims are barred in whole or in part because they have not sustained any legally cognizable injury or damage as a result of Defendants' purported actions or omissions.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

## Fifth Affirmative Defense

210.   The First Amended Complaint fails to state facts entitling Plaintiffs to injunctive relief because there is no threat of immediate or continuing harm.

## Sixth Affirmative Defense

211.   Plaintiffs have failed to mitigate any damages that they have suffered.

## Seventh Affirmative Defense

212.   Plaintiffs are barred from recovery under the purported causes of action in the First Amended Complaint because Plaintiffs consented to and acquiesced in the complained-about conduct.

## Eight Affirmative Defense

213.   Defendants allege that any injuries suffered by Plaintiffs as alleged were caused in whole or in part by acts or omissions of a third party over which Defendants had no control.

## Ninth Affirmative Defense

214.   If Plaintiffs suffered any losses, which Defendants deny, then said damage or losses were solely caused by Plaintiffs' own actions.

## Tenth Affirmative Defense

215.   Plaintiff Claire Gagan's financial elder abuse claim is barred by her failure to plead any facts with particularity.

## Eleventh Affirmative Defense

216.   Plaintiffs' claims were brought in bad faith and without any cognizable legal foundation.

## Twelfth Affirmative Defense

217.   Defendants allege that, at all times and places alleged in the First Amended Complaint, Plaintiffs failed to exercise ordinary and reasonable care, and such negligence and carelessness was a proximate cause of some portion, up to and including the whole, of the alleged injuries and damages, if any, and Plaintiffs'

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

recovery therefore should be barred or reduced according to law, up to and including the whole thereof.

### Thirteenth Affirmative Defense

218. Defendants allege that the causes of action in the First Amended Complaint, and each of them, are uncertain and ambiguous as to the facts upon which Plaintiffs base their claims.

### Fourteenth Affirmative Defense

219. Defendants allege that Plaintiffs have not fully and fairly performed all of the conditions precedent to any alleged obligation of Defendants.

### Fifteenth Affirmative Defense

220. Defendants allege that Plaintiffs have not yet incurred damages or losses with respect to this action and that the First Amended Complaint is not ripe for adjudication.

### Sixteenth Affirmative Defense

221. Plaintiff Sarah Gagan and Halo's Heart have failed to comply with the applicable terms and conditions of contracts which governed the relationship between Plaintiffs and Defendants.

### Seventeenth Affirmative Defense

222. Defendants allege that this court lacks diversity jurisdiction over the parties.

### Eighteenth Affirmative Defense

223. Defendants allege that this action cannot proceed because Plaintiff has failed to join one or more indispensable parties.

### Nineteenth Affirmative Defense

224. Defendants allege that Plaintiffs have not suffered any damage or injury that was actually or proximately caused by any act or omission of Defendants.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

## Twentieth Affirmative Defense

225.   Plaintiffs are barred from recovery on their First Amended Complaint based on their failure to disclose all material facts to Defendants, who were justified in relying on information and promises made by Plaintiffs.

## Twenty First Affirmative Defense

226.   Defendants acted reasonably and in good faith at all times material hereto based on the relevant facts and circumstances known by them.  Accordingly, Plaintiffs are barred from any recovery in this action.

## Twenty Second Affirmative Defense

227.   Any statements of fact or opinion made by Defendants to Plaintiffs were true, or if not true, were reasonably believed to be true at the time they were made.

## Twenty Third Affirmative Defense

228.   Any misrepresentation or omission alleged in the First Amended Complaint was not material and not actually or reasonably relied upon by Plaintiffs.

## Twenty Fourth Affirmative Defense

229.   Any reliance by Plaintiffs on any purported misrepresentations alleged in the First Amended Complaint was both unreasonable and/or without justification.

## Twenty Fifth Affirmative Defense

230.   Defendants had no duty to disclose any purported facts as alleged in the First Amended Complaint.

## Twenty Sixth Affirmative Defense

231.    Defendants allege that, at all times mentioned herein, there was, has been, and continues to be a material failure of consideration on the part of Plaintiffs Sarah Gagan and Halo's Heart, as a consequence of which Defendants' duty of performance has been discharged.

## Twenty Seventh Affirmative Defense

232.   The First Amended Complaint was brought without reasonable care and

without a good faith belief that there was a justifiable controversy under the facts and the law which warranted the filing of the First Amended Complaint against Defendants.

### Twenty Eighth Affirmative Defense

233.   Plaintiffs' claims are precluded to the extent that Defendants's conduct caused no damages to Plaintiff.

### Twenty Ninth Affirmative Defense

234.   Any recovery by Plaintiffs against Defendants under the First Amended Complaint would constitute unjust enrichment of Plaintiffs and is therefore barred.

### Thirtieth First Affirmative Defense

235.   Plaintiffs have ratified the acts of Defendants and are barred from obtaining any relief in this action due to that ratification.

### Thirty First Affirmative Defense

236.   Defendants allege that they are entitled to an offset for amount that Plaintiffs continue to owe for services provided, and any damages paid to Plaintiff which would result in a double recovery.

### Thirty Second Affirmative Defense

237.   Plaintiffs' claims are barred by the doctrines of equitable and judicial estoppel.

### Thirty Third Affirmative Defense

238.   Defendants were excused from performing the terms of any contract alleged in the complaint due to Plaintiffs' failure to act.

### Thirty Fourth Affirmative Defense

239.   Defendants were ready, willing and able to perform the terms of agreements reached with Plaintiffs, and Plaintiffs prevented and frustrated such performance.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

### Thirty Fifth Affirmative Defense

240.   Plaintiffs have failed to plead fraud and acts of elder abuse with specificity.

### Thirty Sixth Affirmative Defense

241.   Plaintiffs' claims are barred as a matter of law as the First Amended Complaint makes numerous false claims.

### Thirty Seventh Affirmative Defense

242.   The equities of the case do not preponderate in favor of Plaintiffs.

### Thirty Eighth Affirmative Defense

243.   Plaintiffs have failed to give proper notice of breach of contract.

### Thirty Ninth Affirmative Defense

244.   Plaintiffs' claims are barred by the parol evidence rule.

### Fortieth Affirmative Defense

245.   Any damages suffered by Plaintiffs are completely speculative in nature.

### Forty First Affirmative Defense

246.   Defendants' conduct is justified due to Plaintiffs' default in their obligations to Defendants.

### Forty Second Affirmative Defense

247.   Plaintiffs have failed to plead fraud with the requisite particularity.

### Forty Third Affirmative Defense

248.   Plaintiffs have failed to allege any specific facts as to any property taken from Plaintiff Claire Gagan.

### Forty Fourth Affirmative Defense

249.   The Bel Air property was intended to be a gift to Defendants by Plaintiffs Sarah Gagan and Halo's Heart LLC.

### Forty Fifth Affirmative Defense

250.   Defendants allege that they may have additional defenses that cannot be

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

articulated due to Plaintiff's failure to particularize her claims, due to the fact that Defendants do not have copies of certain documents bearing on Plaintiff's claims and due to Plaintiffs' failure to provide more specific information concerning the nature of the damage claims and claims for certain costs which Plaintiffs allege that Defendants may share some responsibility.  Defendants therefore reserve the right to assert additional defenses upon further particularization of Plaintiff's claims, upon examination of the documents provided, upon discovery of further information concerning the alleged damage claims and claims for costs, and upon the development of other pertinent information.

## COUNTER-CLAIM

Defendants and Cross-Complainants Marc Gagnon and Meggie Roy, for their counter-claims against Cross-Defendants Claire Gagan, Sarah Gagan and Halo's Heart LLC, hereby allege as follows:

## PARTIES

251.   Cross-Complainant Marc Antoine Gagnon ("Marc") was and is an individual residing in the City of Palm Desert, County of Riverside, State of California;

252.   Cross-Complainant Meggie Roy ("Meggie") was and is an individual residing in the City of Palm Desert, County of Riverside, State of California;

253.   Cross-Defendant Claire Gagan ("Claire") is an individual residing in Palm Desert, County of Riverside, State of California, who claims that the state of Indiana is her residence state for diversity jurisdiction purposes in her First Amended Complaint filed in this action;

254.   Cross-Defendant Sarah Gagan ("Sarah") is an individual residing in Palm Desert, County of Riverside, State of California, who claims that the state of Indiana is her residence state for diversity jurisdiction purposes in her First Amended Complaint filed in this action;

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

255.   Cross-Defendant Halo's Heart LLC ("Halo's") is a limited liability company organized under the laws of the State of California, whose principal place of business is located in Palm Desert, California, but which claims diversity jurisdiction due to Cross-Defendant Sarah Gagan's claimed residence in the State of Indiana in the First Amended Complaint on file in this action, as Cross-Defendant Sarah Gagan is the only member.

256.   Cross-Complainants are ignorant of the true names and capacities of the Cross-Defendants sued as Roes 1-10, inclusive, and therefore sues such Cross-Defendants by these fictitious names.  All Cross-Defendants are collectively referred to as Cross-Defendants.  Cross-Complainants will amend this Cross-Complaint to allege the true names and capacities when ascertained.  Cross-Complainants are informed and believe and on that basis allege that each Roe Cross-Defendant is responsible for Cross-Defendants' damages as alleged in this Cross-Complaint and should be held liable to Cross-Complainants with respect to the matters alleged in the Cross-Complaint in some or all of the subject matters to be adjudicated in this Cross-Complaint.

257.   Cross-Complainants are informed and believe and thereon allege that at all times relevant hereto, each Cross-Defendant acted as the agent, servant and/or employee or representative of the others, and that each acted within the scope of such agency, representation or employment.

## JURISDICTION AND VENUE

258.   It appears that this Court has diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) because the matters in controversy exceed the sum or value of $75,000.00, exclusive of interests and costs, and the matter appears to be between citizens of the State of Indiana and Canadian citizens residing in California, based upon Plaintiffs' representations.

259.   Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

because Cross-Defendants both reside in this District and have asserted that venue is appropriate in this District by virtue of their First Amended Complaint and because the events giving rise to the claims asserted herein arose here.

## NATURE OF THE CROSS-COMPLAINT

260.    This cross-complaint is being brought for declaratory relief, unjust enrichment, breach of contract and defamation as set forth more specifically below against Claire Gagan, Sarah and Halo's Heart.  By these claims, Cross-Defendants seek recovery of all damages, including consequential, special, presumed and punitive, recovery of all of their costs and attorneys fees as allowed by law, as well as prejudgment interest.

## FACTUAL ALLEGATIONS

261.    Claire and Sarah, mother and daughter respectively, are extremely wealthy individuals who reside for extended periods of time at their homes in the Big Horn community in Palm Desert.  Both of them own multiple properties around the United States, and both of them have claimed in this proceeding that Indiana is their state of residence.

262.    Meggie is a Canadian citizen from the province of Quebec, and at all times herein mentioned, had the legal right to reside in California. Meggie is a multi-disciplinary artist, with an honors degree in Applied Arts, and a bachelor's degree in graphic design, during which time she did a specialization in European Design in Aix-en-Provence in France.  Meggie also received instruction in jewelry design and fabrication, having taken design and fabrication classes in both Montreal, Canada and San Francisco.  Meggie has also taken multiple classes in interior design and architectural design and still takes classes in those areas.

263.    Following her obtaining her degree in graphic design in 2009, Meggie started her own graphic design business in Quebec which offered services such as web design and publishing, marketing, promotional items, packaging, visual brand

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

1   identity and photography.  Meggie's native tongue is French, although she speaks

2   English fluently.

3        264.   Marc is a Canadian citizen from the province of Quebec, and all times

4   mentioned herein, had the legal right to reside in California. Marc's native tongue

5   also is French, but he speaks English fluently as well.  Marc has a bachelor's degree

6   in business administration and multiple certifications in online marketing and web

7   development. Marc worked for years for the Fairmont Hotel and Resort company at

8   the Queen Elizabeth Hotel in Montreal. In 2016, the Queen Elizabeth Hotel was

9   closed for extensive renovations expected to last for more than a year, and Marc was

10  given the opportunity to do an intra-company transfer and work for other hotels

11  owned by the Fairmont Hotel company.  He accepted an offer to be the food and

12  beverage outlets manager at the Claremont Hotel in Berkeley, where he managed the

13  lobby bar, pool club snack bar, in-room dining and food and beverage operations of

14  the casual dining restaurant at the hotel.

15       265.   In or about 2016, Marc met Sarah at the Claremont Hotel, where she was

16  staying  as she completed a culinary course in Berkeley.  Sarah spent her evenings in

17  the bar of the hotel, and Marc got to know her as he accommodated special requests

18  that Sarah made, such as asking that the hotel carry certain beverages that she liked

19  to drink, and making special food and beverage requests for in-room dining.

20       266.   Marc and Sarah became acquaintances.  When Sarah learned that

21  Meggie had a degree in graphic design, she asked if she could hire Meggie to

22  prepare a culinary school presentation for her as part of her course work.  Sarah was

23  delighted with Meggie's work, and Sarah, Marc and Meggie developed a friendship.

24  Additionally, Marc and Meggie developed a friendship with two friends of Sarah,

25  who were staying at the hotel with her to both keep her company and to keep an eye

26  on her as Sarah had shown a propensity for abuse of alcohol and prescription drugs.

27

28

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

- 23 -

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON
AND MEGGIE ROY**
GAGAN V. GAGNON

267.   As the friendship developed, Sarah invited both Marc and Meggie to multiple social outings with her along with the two friends staying with her in Berkeley.

268.   Following Sarah's departure from the Claremont Hotel, Marc began looking for other job opportunities in his industry and both he and Meggie were exploring moving to the San Diego area due to better weather and a cheaper cost of living.  Sarah returned to the Claremont Hotel a few weeks later to pick up some personal items and invited Marc and Meggie to fly on her private jet to the desert and spend time with her at her home at Big Horn.  Meggie and Marc accepted the invitation and flew to the desert with Sarah and two other friends of her.  Meggie and Marc stayed with Sarah at her home and attended another graduation party for Sarah being thrown at Claire's home at Big Horn.  During the two weeks Marc and Meggie vacationed in the desert, Sarah repeatedly told both of them that they should move to the desert rather than San Diego.

269.   In June of 2017, Sarah invited both Marc and Meggie to spend some time with her at her home in Indiana and continued to push the idea that Marc and Meggie should move to the desert.

270.   Marc and Meggie liked the desert and moved to the Coachella Valley in October of 2017.  They rented an apartment in Rancho Mirage where they lived for a year, which was later renewed for another year.   They saw Sarah at her family's Thanksgiving and Christmas dinners but spent relatively little time with her.

271.   In early 2018, Marc and Meggie opened their own graphic design business, FrogFrenchie LLC, in Palm Springs.

272.   During the year 2019, Sarah, Marc, Meggie and Claire began socializing more together, to the point that they saw each other nearly every day and became very close.  Sarah had been in the process of upgrading her desert home but had gotten into a dispute with her designer, whom she accused of stealing from her,

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

similar to the accusations she is now making against Marc and Meggie.  Because Sarah had fired the designer, Meggie assisted Sarah in purchasing furniture and accessories for the house and even created some custom art pieces for the house.

273.   The friendship between the parties continued.  Marc and Meggie flew to Indiana to surprise Sarah on her birthday and she was overjoyed to see them, so much so that she invited them to come back to Indiana to stay with her as a vacation, which Marc and Meggie did.  Additionally, Marc and Meggie flew back to Indiana to support Sarah as her brother was dying of a terminal illness.  During their stay there, her brother passed and Marc was asked to be a pallbearer at his funeral.

274.   Meggie and Marc continued to spend significant amounts of time with both Sarah, Claire and Claire's husband Jim Gagan, who was in ill health.  In November of 2019, Sarah decided that she wanted to buy a new car for Marc and Meggie as she felt that their current vehicle at that time (a Fiat) was unsafe as it was so small.  Sarah insisted that they get a new vehicle and took them car shopping at a luxury vehicle sales showroom in the desert.   She bought them a Jaguar sports utility vehicle and had it titled in Marc's name.  When Meggie and Marc asked her how she wanted to be repaid, she told them not to worry about it.

275.   The Jaguar began having mechanical problems shortly after it was purchased.  Claire and Sarah thought the vehicle was unsafe.  Marc hired counsel to represent him with a lemon law claim, which was successful in that a settlement amount of approximately $50,000  for the Jaguar was ultimately remitted to Marc. Sarah had in the meantime had purchased Marc a replacement Mercedes SUV titled in his name.  When Marc received the settlement check for the Jaguar, he intended that the amount would be offset by the out-of-pocket expenses that he and Meggie were incurring with respect to the work they were performing for Sarah and/or Claire, and such offset would be in lieu of repayment of the $50,000.00.  However, Sarah never expressed any desire to be repaid for the vehicle, never asked to be

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
*Gagan v. Gagnon*

repaid and simply refused to talk about it.

276.   On information and belief, the Gagans had previously engaged in the practice of gifting cars to employees on a regular basis.

277.   In November of 2019, Sarah rented a beach property in Malibu and invited Marc and Meggie to stay there with her.   Meggie and Marc were frequently tasked with small jobs to perform for Sarah while there and willingly did so; Sarah told them that she was happy that for a change people were taking care of her.

278.   Meggie and Marc began to spend more and more time with Sarah and Claire and were in a sense "adopted" by the Gagan family.

279.   On or about December of 2019, the news about the Covid pandemic broke. It was of great concern to the Gagan family as Jim Gagan's health was declining, leaving him particularly at risk due to the virus.  The Gagan family were very worried and anxious and wanted Meggie and Marc to be close at hand to assist them if needed.

280.   Meggie and Marc had been talking about buying a house and were looking at houses in Cathedral City.  Sarah felt that Cathedral City was too far away from Big Horn and expressed fears about Meggie and Marc living near Mexican families that she considered dangerous.  Sarah instead on her own volition found a property on 72646 Bel Air in Palm Desert ("Bel Air property"), just a few blocks away from Big Horn, that she thought would be an appropriate house for them.  She told both Meggie and Marc that she would buy them the house and transfer title once the property had closed

281.   In February of 2020, Sarah personally purchased the property on Bel Air. Marc received the keys immediately after the closing, and he and Meggie moved in. Marc and Meggie were assured that this was their house and title would be transferred to them.  Sarah made those representations orally and in writing.  There was no discussion between them about Meggie and Marc leasing the house or

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

purchasing the house from Sarah or reimbursing her for the purchase amount.

282.   Marc and Meggie believed that the purchase of the house by Sarah for them was because she wanted both of them to be close by to help her and Claire and Jim Gagan, Claire's husband, as the Gagans' need for Meggie and Marc's time and support was rapidly growing.  Sarah expressed to Marc and Meggie that she was concerned about her father's declining health and Claire's age during the Covid pandemic, and that they needed Marc to be the "man" around the house; that they needed Meggie to assist Claire due to Claire's age and to assist Sarah as well, particularly as Sarah has no children, Marc and Meggie were younger than her and presumably had better health and were stronger.  The Gagans had released their staff due to their wanting to quarantine themselves, and for a significant amount of time, Marc and Meggie were the only ones allowed at their house, and they performed without recompense many of the duties formerly performed by staff, such as housekeeping, shopping and food preparation, home organization, seeing after pets, helping with personal tasks such as bill paying and correspondence and generally acting as a house manager.

283.   In May of 2020, Marc and Meggie visited Sarah and Claire at their property they had newly acquired in Utah, and helped them decorate and furnish the house.  Cosmetic changes were personally done by Meggie and Marc themselves as the Covid pandemic was in full swing and no one was allowed at the property by Sarah and Claire other than Marc and Meggie as the Gagans were very fearful of the virus.  Sarah said on multiple occasions she loved working with Meggie and she was delighted with the end results. Neither Meggie nor Marc were paid for this work.

284.   Upon Meggie and Marc's return to California, Sarah asked them to find her a beach house in California.  Marc and Meggie spent many hours researching properties up and down the entire California coast and selected properties to visit on

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

1    Sarah's behalf.  Meggie and Marc were not paid for this work.  Sarah agreed to buy

2    a property in Laguna Beach that Meggie found, and bought it sight unseen (other

3    than photographs and videos) in July of 2020.  Marc and Meggie were tasked to

4    help with the transaction and to facilitate various upgrades being requested by both

5    Sarah and Claire.  Meggie was also tasked with furnishing, decorating and

6    accessorizing the property.  Sarah and Claire came to the Laguna Beach house after

7    the work had been completed and were delighted with it. Neither Marc nor Meggie

8    were paid for such work.

9        285.   In the fall of 2020, Sarah and Claire decided to have Meggie work with

10   them in designing a house to be built on a lot in Utah.  Meggie told Sarah that she

11   was taking online classes at the Interior Design Institute and that she had never had

12   such a big project before, but was excited to work on it with Sarah.   Sarah orally

13   offered Meggie $300,000 for the interior design of the house as well as designing

14   the architectural layout draft for the architect in Utah. Meggie worked with the

15   architect and builder until the spring of 2021, when Sarah abandoned the project and

16   decided that she wanted another house at the beach in California instead.  She told

17   Meggie that her $300,000.00 compensation would not be affected by the change in

18   plans, but that Meggie would be paid the same amount for designing the new beach

19   property Sarah wanted to buy.

20       286.   During this time period, Sarah suddenly approached Meggie and Marc

21   and said that she needed to have them sign a lease for the Bel Air property that they

22   had been living in since February of 2020, as Sarah's lawyer had advised her it was

23   necessary for legal reasons.  Sarah represented to Marc and Meggie that they needed

24   to sign a lease for the property, that the start date hadn't been filled in and that she

25   was not looking to collect from them. She went on to say that she was fine with

26   giving Marc and Meggie a "year to get settled and relax" and that they needed to

27   sign the lease which she represented was just "legally filing the deeds" and that

28

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON
AND MEGGIE ROY**
Gagan v. Gagnon

Marc and Meggie needed to sign so because Sarah had to "file these papers." Feeling that they had no choice, Meggie and Marc signed a lease prepared by Sarah's lawyers in October of 2020.  They signed the lease at Sarah's house at Big Horn with her housekeeper present.  The lease had no start date, as represented by Sarah, but was back-dated to March 1, 2020 in handwriting.  The lease was between Halo's Heart (Sarah's limited liability company) and Meggie and Marc, despite the fact that Halo's Heart was not in existence  as of March 1, 2020.  This lease was the only lease ever signed by Marc or Meggie.

287.   The First Amended Complaint includes, for the very first time, a copy of a lease purportedly signed by Meggie and Marc and back-dated  to February 1, 2020, which was prior to the date that Sarah even acquired the Bel Air property and also prior to the formation of Halo's Heart.  Meggie and Marc did not sign this lease and have never seen it before.

288.   The only persons who have ever taken possession of the Bel Air property are Meggie and Marc.  They have paid property taxes, homeowners insurance premiums, have spent over $100,000 in improvements to the property and have paid for all maintenance and upkeep since they took possession in February of 2020.

289.   After the lease was signed, it was discussed between Sarah and Meggie that the bulk of the $300,000 compensation amount owed to Meggie would be used to make improvements on the Bel Air property, and a portion – approximately $50,000 –  would be applied to rent purportedly owed under the lease.  To that end, Sarah directly paid Meggie and Marc's contractor $100,000 (intended to be part of Meggie's $300,000 compensation) as a deposit to begin the improvements on the Bel Air property.

290.   Following the signing of the lease, the first page of which refers to an option agreement, Meggie and Marc realized that they hadn't seen any option agreement and nervous about finalizing their ownership of the property, asked Sarah

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

about it.  This resulted in a phone call with the Gagan family's lawyer, Brian Custy, about the issue. Sarah represented during the call that she was not collecting monthly rental payments, that there was no revenue, that the house was Marc and Meggie's, and she asked Custy how an option agreement would work if there were no monthly rent payments.  Custy responded that when the parties were ready, Sarah could simply convey title to Maggie and Marc. Meggie and Marc relied upon these statements and signed the option agreement, which was also back-dated to a date prior to the date it was signed.  It calls for a 10-year option to purchase the Bel Air property for $635,000, and the option period would begin 60 days prior to the end of the lease, which was March 1, 2030.  Marc paid to Sarah in cash the $100 option payment called for in the agreement.

291.   In April of 2021, Sarah through her trust bought a house in Montecito after looking at a number of different properties with Meggie, and tasked Meggie to redesign its interior, find contractors to perform the work and assist in working with the contractors during the remodel for the remainder of the compensation owed to Meggie. Both Meggie and Marc spent many hours working on the Montecito project without compensation.

292.   Meggie completed the design of the Montecito house.  Following completion of the remodel of the Montecito property, however, Claire and Sarah inexplicably severed their relationship with Meggie and Marc without warning and without Sarah paying Meggie the remaining amount owed of $150,000 under their compensation agreement.  Such sum is still due and owing.

293.   Following the severance of the relationship, Meggie and Marc are informed and believe and on that basis allege that both Claire and Sarah have defamed them as follows: at a dinner party in the fall of 2021 in which mutual friends of Sarah and Claire and Marc and Meggie were present, Claire told everyone at the table that Meggie and Marc were grifters and con artists.  These statements are

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON
AND MEGGIE ROY**
GAGAN V. GAGNON

false and defamatory on their face and have resulted in smears to Meggie and Marc's good names and reputations.  Marc and Meggie are further informed and believe and on that basis allege that Claire has further orally defamed them by telling persons that they stole money from Sarah's safe, and further orally defamed Marc by telling a joint friend in 2021 that he should change all of the passwords on his accounts because Marc was an expert computer hacker who would hack into the friend's accounts.

294.   Meggie and Marc are informed and believe and on that basis allege that Sarah also orally defamed both of them when trying to obtain access to a FrogFrenchie account with a vendor in 2021, claiming to the vendor, Burke Decor, that Marc and Meggie were disgruntled employees who had been "fired."  These statements were false and defamatory on multiple levels: Marc and Meggie were never employees, they were not "fired," and they were not disgruntled.  However, such statements denigrated Marc and Meggie with a vendor that they did business with and was intended by Sarah to interrupt that business relationship and to persuade Burke Decor to allow Sarah illegal access to the FrogFrenchie LLC account.

## First Claim for Relief

(Declaratory Relief by Cross-Complainants against Cross-Defendants Sarah Gagan and Halo's Heart LLC)

295.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

296.   An actual controversy has arisen and now exists relating to the rights and duties of the parties herein, in that Marc and Meggie contend that they have not breached the lease they signed in October of 2020; that the lease attached to the First Amended Complaint is a forgery and that no rent is due and owing under the lease that they signed nor are any actions due with respect to the option agreement.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

297.   On the other hand, Sarah and Halo's Heart contend that Marc and Meggie are in breach of the lease they have attached to the First Amended Complaint as well as the option agreement, or in the alternative, that both the option agreement and the purported lease be rescinded.

298.   Further, an actual controversy exists with respect to Sarah's failure to pay the remainder of the compensation as identified herein to Meggie, as Sarah contends that Marc and Meggie have breached the oral compensation agreement reached with Meggie and that said agreement should be rescinded, and Meggie and Marc contend that Sarah has repeatedly confirmed the terms of the oral compensation agreement, that Marc was not a party to such agreement and that Sarah has breached said agreement.

299.   Further, an actual controversy exists with respect the existence of an agreement to repay Sarah for the vehicles she purchased for Marc, and what the terms of such an agreement are, as none have ever been specified, and Sarah denies such allegations.

300.   Meggie and Marc desire a judicial determination of their rights and duties and a declaration as to the existence and terms of a lease for the Bel Air property; whether they are in breach of the lease they signed, whether the lease attached to the First Amended Complaint is a forgery; the validity of the option agreement and whether the option payment has been paid; the existence of an agreement regarding repayment by Marc for the vehicles purchased for him by Sarah and the terms of any such agreement, and any offsets to be applied by Marc incurring expenses on behalf of Sarah that he paid.

301.   As Halo's Heart is claiming that Marc and Meggie have no ownership or other rights with respect to the Bel Air property, it would be unconscionable and against fundamental principles of justice, equity and good conscience to allow Halo's Heart to retain the benefits of work performed on the Bel Air property by

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

Meggie and Marc, which has added to its desirability and value.  Halo's Heart would be unjustly enriched by the addition of these improvements and Meggie and Marc seek the return of those funds to them.

302.   A judicial declaration is necessary and appropriate at this time so that Marc and Meggie may ascertain their rights and duties under the lease agreement, the option agreement, the agreement to pay compensation to Meggie and any alleged agreement regarding payment for vehicles.  Declaratory relief would shape the parties' future conduct.

## Second Claim for Relief

(Unjust Enrichment by Cross-Complainants Meggie Roy and Marc Gagnon against Cross-Defendant Halo's Heart LLC).

303.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

304.   In 2021, $100,000 of the compensation promised to Meggie by Sarah was paid directly as a deposit to the contractor hired by Meggie and Marc to begin work on improvements to the Bel Air property, at Meggie's direction and request. That $100,000 was used directly for improvements to the Bel Air property. Additionally, Meggie and Marc have spent approximately $55,000.00 on additional improvements to the Bel Air property.

305.   As Halo's Heart is claiming that Marc and Meggie have no ownership or other rights with respect to the Bel Air property, it would be unconscionable and against fundamental principles of justice, equity and good conscience to allow Halo's Heart to retain the benefits of work performed on the Bel Air property by Meggie and Marc, which has added to its desirability and value.  Halo's Heart would be unjustly enriched by the addition of these improvements and Meggie and Marc seek the return of those funds to them under the theory of unjust enrichment and/or restitution.

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

## **Third Claim for Relief**

(Breach of Oral Contract by Cross-Complainant Meggie Roy against Cross-Defendant Sarah Gagan)

306.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

307.   In the fall of 2020, Sarah offered to pay Meggie $300,000 to design and decorate a house to be built on a lot Sarah owned in Utah, which was accepted by Meggie.  Meggie immediately began to perform work for Sarah in connection with their oral agreement and worked on the project until the spring of 2021, when Sarah changed her mind and decided to buy another house in California.  Sarah told Meggie orally that the compensation amount would not change, but that her scope of duties would simply change from the Utah project to the Montecito property. Meggie agreed to the change and acted upon it, working at the Montecito property for months with respect to its design and remodel, and even living at the Montecito property on occasion to perform her work for the project.

308.   Meggie performed all of the obligations and conditions with respect to decorating and designing the Montecito property and fulfilled all of her obligations with respect to the project.

309.   Sarah paid a portion of Meggie's compensation by wiring the sum of $100,000 to the contractor chosen by Meggie and Marc to perform a remodel and upgrades on the Bel Air property.

310.   Other than this payment, Sarah has failed to and continues to refuse to pay Meggie the remainder of her compensation.

311.   In good faith, Meggie offered to Sarah that approximately $50,000 of her compensation could be kept by Sarah towards any "rent" due under the purported lease for the Bel Air property.  This left the sum of $150,000.00 due and owing to

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

1  Meggie upon completion of the Montecito project, which remains unpaid despite

2  demand.

3      312.   Meggie seeks payment of $150,000 for monies she earned pursuant to an

4  oral agreement, which was later confirmed in writing by Sarah.

5      313.   Meggie has fulfilled all obligations with respect to designing the Utah

6  and Montecito properties for which she was to be paid.

7                              **Fourth Claim for Relief**

8      (For Conversion by Cross-Complainants against Cross-Defendant Sarah Gagnon)

9      314.   Cross-Complainants incorporate herein each and every allegation set

10  forth above as though fully set forth herein.

11      315.   While performing services for Sarah with respect to her beach house in

12  Laguna Beach, Marc and Meggie kept their possessions in a room they used

13  regularly there.  Upon severance of the relationship, they were required to remove

14  their property from the house.

15      316.   Upon arriving at the property to remove their belongings, their hard

16  drive for their computer was sitting on the desk.  When they tried to pick it up to add

17  to the other things they were removing, Sarah said that they couldn't have it.

18      317.   The hard drive contained sensitive and confidential information of both

19  Meggie and Marc as well as their business.  Despite the fact that they have asked

20  that it be turned over to them, Sarah refused and continues to refuse to allow them

21  possession of their property.

22      318.   Meggie and Marc did not consent to Sarah taking and retaining their

23  personal property.

24      319.   As a result of the conversion of this asset, Meggie and Marc have been

25  damaged in an amount to be proven at trial.

26      320.   The aforementioned conduct was specifically done by Sarah out of

27  maliciousness and with an intent to harm both Meggie and Marc and prevent them

28

*ROEMER & HARNIK LLP*
*45-025 MANITOU DRIVE*
*INDIAN WELLS, CALIFORNIA 92210*

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

from accessing their confidential and proprietary information to cause them harm, and was despicable conduct, particularly considering the fact that Sarah knew the hard drive was not hers, knew that it was Meggie and Marc's, and had no legal right to keep such property and prevent Marc and Meggie from access to their property for no reason other than malice. This conduct was despicable conduct, and intend to subject Plaintiffs to cruel and unjust hardship in disregard of their rights so as to justify an award of exemplary damages.

## Fifth Claim for Relief

(For Defamation by Cross-Complainants against Cross-Defendants Sarah Gagan and Claire Gagan)

321. Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

322. On information and belief, Marc and Meggie allege as follows: In the fall of 2021, at a dinner party where friends of Marc and Meggie were present including Jim Hummer and Judy Allen, Claire wrongfully made the following statements about Meggie and Marc which were false and defamatory on their face and not privileged: she said that Marc and Meggie were grifters and con artists. She also said that they were refugees from Canada, implying that Marc and Meggie had fled Canada to the United States due to criminal or other unsavory matters.

323. Also in 2021, Claire verbally told a mutual friend, Jim Hummer, that he should change all of the passwords on his accounts as Marc was an expert computer hacker.

324. Also in 2021, Claire told third persons that Marc and Meggie had stolen cash from Sarah's safe.

325. Also In 2021, Sarah, in an attempt to illegally access the account of FrogFrenchie LLC with a vendor, Burke Decor, orally told a representative there that Marc and Meggie were disgruntled employees who had been fired.

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

1   326.   All such representations were false.

2   327.   Such false and unprivileged representations by Claire and Sarah were

3   done intentionally to smear the reputations of Marc and Meggie, to interfere with

4   their social and business relationships by stating directly that Marc and Meggie were

5   dishonest and thieves, and by implying that Marc and Meggie had fled Canada due

6   to improprieties there.

7   328.   The aforementioned conduct was specifically done by Sarah and Claire

8   out of maliciousness and spite,  and with an intent to harm both Meggie and Marc

9   by smearing their reputations, subjecting them to ridicule and interfering with their

10  business and social relationships by stating that they were dishonest and had

11  committed crimes.  Such conduct was despicable, as Sarah and Claire knew that

12  their statements were false and unsupported.  They simply intended to smear Marc

13  and Meggie publicly, to shame and humiliate them, to cause them emotional

14  distress, and to subject Meggie and Marc to cruel and unjust hardship, in disregard

15  of their rights, so as to justify an award of exemplary damages.

### PRAYER FOR RELIEF

**As to the First Claim for Relief for Declaratory Relief**:

1.   For a declaration as to the existence and terms of any lease between the
     Halo's Heart, Meggie and Marc in connection with the Bel Air Property;

2.   For a declaration as to the legitimacy and validity of the lease Plaintiffs
     have attached as an exhibit to their First Amended Complaint;

3.   For a declaration as to the validity of the option agreement concerning
     the Bel Air property;

4.   For a declaration as to any monies owed as rent by Meggie and Marc to
     Halo's Heart;

5.   For a declaration as to whether the option payment has been made;

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON
AND MEGGIE ROY**
GAGAN V. GAGNON

6.     For a determination as to general and special damages according to proof.

**As to the Second Claim for Relief for Unjust Enrichment/Restitution:**

1.     For a determination that Halo's Heart would be unjustly enriched if allowed to benefit from the monies expended by Marc and Meggie on the Bel Air property;

2.     For restitution of all amounts, according to proof, that Meggie and Marc have expended on the Bel Air property.

**As to the Third Claim for Relief for Breach of Oral Contract:**

1.     For compensatory damages according to proof; and

2.     For general and special damages according to proof.

**As to the Fourth Claim of Relief for Defamation:**

1.     For compensatory damages according to proof; and

2.     For general and special damages according to proof; and

3.     For exemplary and punitive damages.

**As to the Fifth Claim of Relief for Conversion:**

1.     For general damages according to proof;

2.     For exemplary and punitive damages; and

3.     For treble damages.

**As to all Claims for Relief:**

1.     For costs of suit herein;

2.     For prejudgment interest; and

3.     For attorneys fees as allowed by law.

Dated: November 1, 2022        ROEMER & HARNIK LLP

By: *Mary C. Gilstrap*
Mary E. Gilstrap
Attorneys for Defendants and Cross-Complainants Meggie Roy and Marc Antoine Gagnon

ROEMER & HARNIK LLP
45-025 Manitou Drive
Indian Wells, California 92210

**ANSWER AND COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
Gagan v. Gagnon