BUCHALTER
A Professional Corporation
VINCENT R. WHITTAKER (SBN: 214007)
SKYE L. DALEY (SBN: 284592)
MARISSA C. MARXEN (SBN: 300095)
655 West Broadway, Suite 1600
San Diego, CA  92101
Telephone: 619.219.5335
Email:  vwhittaker@buchalter.com
Email:  sdaley@buchalter.com
Email:  mgiacomelli@buchalter.com

Attorneys for Plaintiffs
Sarah Gagan, Claire Gagan and Halo's Heart, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH GAGAN, an individual, CLAIRE GAGAN, an individual, and HALO'S HEART, LLC, a California Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>MARC ANTOINE GAGNON, an individual; MEGGIE ROY, an individual,<br><br>Defendants. | Case No. 5:22-cv-00680-SSS-SP<br>Hon. Sunshine S. Sykes<br><br>**PLAINTIFF HALO'S HEART, LLC'S NOTICE OF MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>**[Filed Concurrently with Declarations in Support Thereof; and [Proposed] Order]**<br><br>Date:    January 13, 2023<br>Time:    2:00 PM<br>Dept:    2 |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 13, 2023 at 2:00 p.m. in Courtroom 2 of the United States District Court located at 3470 Twelfth Street, Riverside, California 92501, Plaintiff HALO'S HEART, LLC ("Plaintiff" or "Halo's Heart") will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure, Rule 65, for an injunction enjoining Defendants MARC ANTOINE GAGNON and MEGGIE ROY (collectively, "Defendants") from continuing or

performing any building or construction work upon the real property located at 72646 Bel Air Road, Palm Desert, California 92260, Riverside County Assessor's Parcel Number 628-181-002-0 (the "Palm Desert Property") during the pendency of this matter.

Plaintiff Halo's Heart is the recorded owner of the Palm Desert Property. Defendants have been living rent free in the Palm Desert Property, in violation of the terms of a written lease agreement, for two years. Defendants refuse to leave the premises, despite being asked, and refuse to pay rent. It was recently discovered during a site inspection that the Defendants have begun constructing a casita and renovating the main house at the Palm Desert Property, without the written authorization of the owner of the property, Halo's Heart. Upon further investigation, it has been determined that Defendants have not obtained permits for said construction from the City of Palm Desert. By way of this Application, Plaintiff Halo's Heart simply seeks an Order from this Court maintaining the status quo and enjoining the Defendants from conducting any further construction on the Palm Desert Property, pending the resolution of this matter

This motion is made on the grounds set forth in the accompanied Memorandum of Points and Authorities, the Declarations filed in support thereof, any Exhibits attached thereto, all pleadings and papers filed in this action, the arguments of counsel and further evidence as the Court may consider at or before a hearing regarding this motion.

DATED:  November 21, 2022

BUCHALTER
A Professional Corporation

By: _____
VINCENT R. WHITTAKER
SKYE L. DALEY
MARISSA C. MARXEN
Attorneys for Plaintiffs HALO'S HEART, LLC; SARAH GAGAN; and CLAIRE GAGAN, an individual

BN 73038082v1

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

-2-

APPLICATION FOR PRELIMINARY INJUNCTION

BN 73038082v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Halo's Heart, LLC ("Halo's Heart") moves for an Order enjoining Defendants MARC ANTOINE GAGNON ("Gagnon") and MEGGIE ROY ("Roy") (collectively, "Defendants"), from continuing to conduct, or conducting any building or construction activities at the property located at 72646 Bel Air Road, Palm Desert, California 92260, Riverside County Assessor's Parcel Number 628-181-002-0 (the "Palm Desert Property"), pending the resolution of this matter.

As part of the underlying lawsuit, Plaintiffs allege that the Defendants entered into a written lease agreement with Halo's Heart, whereby Defendants agreed to pay $1,847.50 per month in rent. The Parties appear to be in agreement that Defendants have not paid a single months' worth of rent.[1] Halo's Heart has alleged that the Defendants are in breach of the lease agreement, are trespassing at the Palm Desert Property and thus Halo's Heart seeks ejectment of the Defendants from the property.

While the underlying lawsuit is rather sprawling, the matter at issue herein is quite simple: Plaintiff Halo's Heart is the recorded owner of the Palm Desert Property. Defendants have been living rent free in the Palm Desert Property, in violation of the terms of a written lease agreement, for two years. Defendants refuse to vacate the premises, despite being asked, and refuse to pay rent. It was recently discovered during a site inspection that the Defendants have begun constructing a casita and renovating the main house of at the Palm Desert Property, without the authorization of the owner of the Palm Desert Property, Halo's Heart. Upon further investigation, it has been determined that Defendants have not obtained permits for said construction from the City of Palm Desert. The question of ownership and possession of the Palm Desert Property are now both being actively litigated in the

---

[1] Defendants claim they are not required to pay rent because their rental payments have been offset as part of an oral modification to the written lease agreement. For the reasons discussed below, an oral modification of an agreement subject to the statute of frauds (like a lease of real property), is also subject to the statute of frauds.

underlying action. By way of this Motion, and in order to preserve the status quo, Plaintiff Halo's Heart simply seeks an Order from this Court, pursuant to Federal Rule of Civil Procedure, Rule 65, enjoining the Defendants from conducting any further construction on the Palm Desert Property, during the pendency of this action.

## II.   FACTUAL BACKGROUND

### A.   Halo's Heart Purchases the Palm Desert Property and Enters into Lease Agreement with Defendants.

On February 11, 2020, Plaintiff Sarah Gagan purchased the Palm Desert Property; a 3 bedroom, 2.5 bathroom, 1,850 square foot home in Palm Desert, California. *Gagan Declaration* ("Gagan Decl."), ¶ 2; Grant Deed, attached as Exhibit "A" to the Gagan Decl. Following the purchase of the Palm Desert Property, Defendants and Halo's Heart entered into a written lease agreement with an effective date of February 1, 2020, wherein Defendants Marc and Meggie agreed to lease the Palm Desert Property from Halo's Heart (the "Lease Agreement"). *Id.* at ¶ 4. The Lease Agreement is attached as Exhibit "B" to the Gagan Decl.

Pursuant to the terms of the Lease Agreement, Marc and Meggie agreed to pay $1,847.50 per month to their landlord, Halo's Heart. Lease Agreement, ¶ 7. Because Marc and Meggie's then-current lease was in effect until October 1, 2020, the Lease Agreement provides that no rent needed be paid until October 1, 2020. *Id.* In addition, Marc and Meggie agreed to pay a security deposit of $1,847.50, due immediately upon execution of the Lease Agreement. *Id.* at ¶ 11. Last, Marc and Meggie further agreed to pay the property taxes on the property as well (in addition to the utilities). *Id.* at ¶ 7.  The term of the lease is 10 years from the Execution Date (February 1, 2020). *Id.* at ¶ 6.

Critically, the Lease Agreement also states: "**Tenants may not make any alterations to the Premises without the consent in writing of Landlord**." *Id.* at ¶ Section 20 (emphasis added).

The Lease Agreement contains a waiver provision at Section 33, which states

that "[n]o provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment and executed by Tenants and Landlord." *Id.* at ¶ 33. Moreover, Section 50, titled "Entire Agreement," states that the Lease Agreement is a fully integrated agreement which "contains all the terms agreed to by the parties relating to its subject matter. . ." and that the "Agreement replaces all previous discussions, understandings and oral agreements." *Id.* at ¶ 50.

### B.   Halo's Heart Enters into Option Agreement with Gagnon & Roy.

On April 1, 2020, Halo's Heart entered into an option agreement (the "Option Agreement") with Marc and Meggie, as optionees, which granted them an option to purchase the Palm Desert Property at the end of their lease term. Option Agreement, attached hereto as Exhibit "C" to the Gagan Decl. In consideration of this option, Marc and Meggie were required to pay $100 to Halo's Heart within 5 days of the execution of the Option Agreement. *Id.* at ¶ 1. The $100 consideration was never paid. Gagan Decl., ¶ 6.

Critically, Section 4 of the Option Agreement states that "[i]n the event Optionee (Marc and Meggie) . . . defaults under any terms of the Lease, the Option will be void and all monies will be retained by Optioner (Halo's Heart)." *Option Agreement.* at ¶ 4.

### C.   Marc Gagnon Acknowledges, in Writing, that they Owe Plaintiffs for the Palm Desert Property.

In a long handwritten note produced by Defendants themselves as part of the initial disclosure process, Marc Gagnon acknowledges that they do not own the Palm Desert Property and that they are indebted to Plaintiffs. *Handwritten Note*, attached as Exhibit "H" to the *Daley Decl.* In the note Defendant Gagnon writes:

"I will eternally be grateful to your husband for suggesting the **loan** for the [Palm Desert] house . . . **But to be clear, never did we expect that the house was given to us, and we fully intend to pay you back to**

1    **the last penny**." PLTF00021-22

2    **D.**    <u>**Gagnon & Roy Move into the Palm Desert Property, Never Pay**</u>

3         <u>**Rent or Security Deposit.**</u>

4    Marc Gagnon and Meggie Roy have been residing at the Palm Desert Property

5 since early 2020, and have never paid a single month's worth of rent, nor have they

6 paid the Security Deposit, or paid the $100 consideration for the Option Agreement.

7 Gagan Decl., ¶ 8.

8    **E.**    <u>**Defendants Prevent Sarah Gagan and Halo's Heart from**</u>

9         <u>**Inspecting Property until August 2022.**</u>

10    Between November of 2021 and January of 2022, Plaintiffs, through counsel,

11 requested, on multiple occasions, that Halo's Heart be allowed to inspect the Palm

12 Desert Property. *See e.g.,* Letter from Gibbs to Harnick, attached as Exhibit "A" to

13 the Declaration of Skye L. Daley ("Daley Decl."); Gagan Decl., ¶ 10. The right of

14 Halo's Heart to inspect the property is set forth in the Lease Agreement at Section

15 18. *See* Lease Agreement, ¶ 18. Despite this, Defendants refused to allow Ms. Gagan

16 to inspect her own home. Gagan Decl., ¶ 10. In fact, even after this lawsuit was filed,

17 Defendants continued to delay an inspection of the Premises; in one instance, defense

18 counsel called off an inspection which was already scheduled, only to reschedule the

19 inspection weeks later. Daley Decl., ¶¶ 9-11.

20    Eventually, after threatening to seek court intervention, Defendants relented

21 and allowed Halo's Heart to inspect the property on August 31, 2022. *Id.*

22    **F.**    <u>**Inspection Reveals Defendants Renovating, Remodeling and**</u>

23         <u>**Building new Structures on the Palm Desert Property.**</u>

24    During the August 31, 2022 site inspection, it was discovered that the

25 Defendants had begun renovating and remodeling the main house in addition to

26 building a new casita at the Palm Desert Property in the backyard. *Id.* Photos of the

27 construction are attached as Exhibit "E" to the Daley Decl.

28 ///

**G.** **Defendants Have not Obtained Permits for the work Performed at the Palm Desert Property.**

Following the August 31, 2022 site inspection, counsel for Plaintiffs reached out to the City of Palm Desert through a Public Records Act Request, seeking information related to the construction taking place at the Palm Desert Property. *Id*. at ¶¶ 13-17. Having reviewed all records related to the Palm Desert Property, and having discussed the matter with representatives from the City of Palm Desert, it has been discovered that Defendants have not obtained permits for said construction by the City of Palm Desert. *Id*.

**III.** **ARGUMENT**

"The purpose of preliminary injunction is merely to preserve the relative position of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).To succeed on a motion for preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. NRDC, Inc*., 555 U.S. 7, (2008)). A plaintiff is required "to make a showing on all four prongs." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The Ninth Circuit employs a "'sliding scale test,' which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success. *Id.* ("In evaluating a request for a preliminary injunction, the Court may weigh the moving party's request on a sliding-scale approach.") Thus, when plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 860 (9th Cir. 2022) (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 2022 U.S. App.

LEXIS 10349, *13 (9th Cir. 2022) (finding **"[The Ninth Circuit] use[s] a 'sliding scale' approach to these factors, according to which 'a stronger showing of one element may offset a weaker showing of another**.'"**).

### A. Plaintiffs are Likely to Succeed on the Merits

Plaintiffs are likely to succeed on the merits of their claims insofar as they are related to the Palm Desert Property; or, at the very least, the Plaintiffs can demonstrate a "serious question" on the merits of these claims.[2] Plaintiffs have brought several causes of action against Defendants in relation to the Palm Desert Property: (1) Breach of Contract, (2) Ejectment and (3) Trespass. Each of these will be addressed in turn.

### 1. Halo's Heart's Breach of Contract Claim

"The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). Here, all elements are easily met.

Halo's Heart entered into a written lease agreement with an effective date of February 1, 2020. *See* Lease Agreement attached as Exhibit "B" to Gagan Decl. The Lease Agreement requires that rent be paid on the first of the month from October 1, 2020 until February 1, 2030. *Id.* The Lease Agreement further requires that a security deposit of $1,847.50 be paid upon execution of the agreement. *Id.* The Lease Agreement contains a waiver provision at Section 33, which states that "[n]o provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment and executed by Tenants and Landlord." *Id.* Moreover, Section 50, titled "Entire Agreement," states that the Lease

---

[2] "The Supreme Court has explained that plaintiffs seeking a preliminary injunction must establish that they are likely to succeed on the merits. Our sliding scale test permits plaintiffs to satisfy this requirement with a 'serious question' on the merits when the balance of hardships tips sharply in their favor." *Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 865 (9th Cir. 2022) (internal citations omitted).

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

BN 73038082v1

Agreement is a fully integrated agreement which "contains all the terms agreed to by the parties relating to its subject matter. . ." and that the "Agreement replaces all previous discussions, understandings and oral agreements." *Id.* **There are no written amendments to the Lease Agreement signed by the parties to be bound**.

There is no dispute that Halo's Heart performed as required under the Lease Agreement by providing Marc and Meggie possession of the premises. Indeed, Marc and Meggie have been living at the premises for several years now. Gagan Decl., ¶ 8.

On the contrary, Gagnon and Roy breached the Lease Agreement when they began making alterations to the property without the consent in writing of the Landlord, in violation of Section 20 of the Lease Agreement, which states "Tenants may not make any alterations to the Premises without the consent in writing of Landlord." *Lease Agreement.* at ¶ 20.

Defendants also breached the Lease Agreement by failing to pay rent and failing to pay the security deposit. Gagan Decl., ¶ 8. It does not appear contested that Gagnon and Roy have never made a rental payment to Halo's Heart. Defendants are likely to argue that there was an oral modification of the Lease Agreement. However, this argument is untenable. Under California's version of the Statute of Frauds, "[a]n agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein . . . is invalid, unless the authority of the agent [making the agreement] is in writing, subscribed by the party sought to be charged." Cal. Civ. Code § 1624(a)(3); *see also id*. at § 1091 (providing that an "[a]n estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred … by operation of law, or by an instrument in writing, subscribed by the party disposing of the same").

Critically, "**An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds**." *Reeder v. Specialized Loan Servicing LLC*, 52 Cal.App.5th 795, 801-02 (2020) (emphasis added). To the extent

Defendants argue they modified the written contract, such a modification would have had to be in the form of a signed writing in order to survive the statute of frauds. No such amendment or modification exists.

Finally, Halo's Heart has been damaged in the amount of $44,328.00 in lost base rent alone. Gagan Decl., ¶ 9.

Thus, all four elements are easily established herein, that Defendants are in breach of the Lease Agreement, and Plaintiffs are likely to succeed on the merits. Flowing from this breach are two additional causes of action addressed herein.

## 2.   Ejectment

The elements of a cause of action for ejectment are (1) the plaintiff's ownership of "some interest in real property" and (2) the defendant's possession and withholding of the property. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 634, p. 65; *see Baugh v. Consumers Associates, Limited* 241 Cal.App.2d 672, 675 (1966) (the essential elements of a cause of action in ejectment are: "ownership disclosing a right to possession, the defendant's possession and a withholding thereof from the plaintiff."); *Haggin v. Kelly* 136 Cal. 481, 483 (1902) (the "essential allegations" of a cause of action for ejectment "are the estate of plaintiffs, possession by defendants at the commencement of the action, and their wrongful withholding of the same.").

Simply put, here, Halo's Heart has an ownership interest in the Palm Desert Property and, in light of their breach of the Lease agreement, Defendants are wrongfully in possession thereof and continue to withhold the property. Thus, Halo's Heart is likely to succeed on the merits of this claim.

## 3.   Trespass

"Trespass is an unlawful interference with possession of property." *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC*, (2017) 14 Cal.App. 5th 343, 401 (citing *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406). "It is not necessary that the plaintiff own the property. All plaintiff needed to do was to show a possessory right superior to the right of the trespassers." *Posey v. Leavitt* (1991)

1  229 Cal.App.3d 1236, 1246.

2  Here, Halo's Heart has a superior right to possession of the Palm Desert

3  Property by virtue of its ownership of the same, and Gagnon and Roy have no right

4  to possession, as they are currently in unlawful detainer of the property. Thus, Halo's

5  Heart is likely to succeed on the merits of this claim.

## B.   There is a Concrete Threat of Irreparable Harm

7  "At a minimum, a plaintiff seeking preliminary injunctive relief must

8  demonstrate that it will be exposed to irreparable harm." *Caribbean Marine Servs.*

9  *Co. v. Baldrige*, 844 F.2d 668, 674 (1988).

10  Here, Halo's Heart is not "speculating" about the harm it *may* suffer, **Halo's**

11  **Heart is already being actively irreparably harmed.** It is not a question of whether

12  Defendants *might* begin unpermitted construction on a home that does not belong to

13  them; it is already a reality. The photos attached to the Daley Decl. clearly show

14  significant construction taking place at the Palm Desert Property, including the

15  construction of an entirely new structure in the backyard. This work is all

16  unpermitted. Daley Decl., ¶ 15-17. Every day that unpermitted work takes place at

17  the property exposes Halo's Heart to legal action by the City of Palm Desert,

18  including potential civil and criminal exposure. Moreover, without significant

19  forensic work it remains unknown what sort of irreparable damage is being done to

20  the very structure of the home by the Defendants, in light of the fact that the work is

21  unpermitted, and potentially being done by an unlicensed contractor.

22  The damage to Halo's Heart has already begun. Now, Halo's Heart is merely

23  asking the Court to stop the bleeding, and preserve the status quo pending the

24  litigation.

## C.   The Balance of Equities Tips in Halo's Heart's Favor

26  This Application is the rare instance when the balance of equites does not so

27  much "tip" in Plaintiff's favor, as much as the equities are *entirely* in Plaintiff's favor.

28  The Defendants will not be prejudiced in any way by an order to stop work on a house

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO
BN 73038082v1

they do not own. Defendants are currently living in a home rent free, and will continue to do so regardless of whether this Court enters the requested TRO. Perhaps the only prejudice one can imagine is that the Defendants will have to make do without a casita for some time longer, but that is hardly sufficient to constitute real "prejudice."

On the contrary, Halo's Heart *has already been prejudiced,* and will continue to be prejudiced as more unpermitted construction is performed on a property it owns, without its approval and without its supervision. Every day that unpermitted work takes place at the property exposes Halo's Heart to the threat of action by the City of Palm Desert, including potential legal and criminal exposure.

### D.    An Injunction is in the Public Interest

Local municipalities have a "substantial interest in regulating construction and development projects as a matter of public safety." *Teresi Invs. III v. City of Mountain View*, 2012 U.S. Dist. LEXIS 174150, *12 (citing *Hodel v. Va. Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981) ["Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect the public health and safety is [o]ne of the oldest examples of permissible summary action."]).

Undoubtedly, the public has an interest in ensuring that new buildings constructed, and old buildings renovated, are done so with the proper permits, by licensed contractors and subcontractors. Indeed, the City of Palm Desert would likely have authority to obtain its own injunction to prevent further construction on the Palm Desert Property, should it come to that. Thus, clearly there is a public interest in enjoining this construction.

///
///
///
///

## IV.  **CONCLUSION**

For the reasons set forth above, Plaintiff Halo's Heart respectfully requests that this Court issue a preliminary injunction enjoining Defendants from continuing construction and/or renovations or remodeling of the Palm Desert Property.

DATED:  November 21, 2022

BUCHALTER
A Professional Corporation

By: _____
VINCENT R. WHITTAKER
SKYE L. DALEY
MARISSA C. MARXEN
Attorneys for Plaintiffs HALO'S
HEART, LLC, a California limited
liability company; SARAH GAGAN, an
individual; and CLAIRE GAGAN, an
individual