BUCHALTER
A Professional Corporation
VINCENT R. WHITTAKER (SBN: 214007)
SKYE L. DALEY (SBN: 284592)
MARISSA C. MARXEN (SBN: 300095)
655 West Broadway, Suite 1600
San Diego, CA 92101
Telephone: 619.219.5335
Email: vwhittaker@buchalter.com
Email: sdaley@buchalter.com
Email: mgiacomelli@buchalter.com

Attorneys for Plaintiffs
Sarah Gagan, Claire Gagan and Halo's Heart, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SARAH GAGAN, an individual,
CLAIRE GAGAN, an individual, and
HALO'S HEART, LLC, a California
Limited Liability Company,

Plaintiffs,

v.

MARC ANTOINE GAGNON, an
individual; MEGGIE ROY, an individual,

Defendants.

Case No. 5:22-cv-00680-SSS-SP
Hon. Sunshine S. Sykes

**DECLARATION OF SKYE L. DALEY, ESQ. FILED IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**[Filed Concurrently with Notice of Motion for Preliminary Injunction, Motion, and [Proposed] Order]**

Date: January 13, 2023
Time: 2:00 PM
Dept: 2

## DECLARATION OF SKYE L. DALEY, ESQ.

I, SKYE L. DALEY, am an attorney duly licensed to practice law in the state of California. I am an attorney with Buchalter, counsel of record for Plaintiff HALO'S HEART, LLC. I make this declaration of my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

DALEY DECL. IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
BN 73074490v1

1.     This declaration is submitted in support of HALO'S HEART, LLC'S Motion for a Preliminary Injunction in the above-entitled matter.

2.      This action was initially filed on or about April 20, 2022.

3.     On January 11, 2022, prior counsel for Halo's Heart, LLC sent a letter to counsel for Defendants stating, "We are still requesting a date which allows us to inspect and photograph all areas of the Bel Air residence." A true and correct copy of this letter is attached hereto as Exhibit "A."

4.     On May 3, 2022, counsel for Defendants sent an initial email to counsel for Plaintiffs stating that they would be representing Defendants, and requesting additional time to respond to the Complaint.

5.     On May 5, 2022, counsel for Plaintiffs sent an email in response stating "Brian [Harnik] represented to me that no alterations have been made to the property. I would like an agreement for a visual inspection (sometime in May) and that the inspection can be videotaped." A true and correct copy of that email is attached hereto as Exhibit "B."

6.     Having heard no response, on May 19, 2022, counsel for Plaintiffs sent a letter to counsel for Defendants, again requesting a site inspection. A true and correct copy of that letter is attached hereto as Exhibit "C."

7.     On May 25, 2022, still having heard nothing, counsel for Plaintiffs sent another email seeking a response to the request for a site inspection, among other things. A true and correct copy of that email is attached hereto as Exhibit "D."

8.     On June 3, 2022, during the Rule 26(f) conference, the parties discussed an informal site inspection and counsel for Defendants assured me and Mr. Whittaker that such an inspection could take place, but that a date and time would need to be worked out.

9.     In early August the parties exchange dates and times for the inspection, ultimately agreeing to a date of August 15, 2022.

10.     On August 10, 2022, counsel for Defendants suddenly decided that the Gagans would not be allowed to have their representative there, and that only the attorneys and any "expert," would be allowed to walk the property. This disagreement caused the August 15, 2022 inspection to be cancelled.

11.     Ultimately, after significant back and forth, counsel for Defendants conceded to a site inspection that included the Gagans' representative. The site inspection previously planned for August 15, 2022 was delayed two weeks and ultimately took place on August 31, 2022.

12.     Attached hereto as Exhibit "E" is a true and correct copy of some images taken from the August 31, 2022 site inspection. They depict new-build construction in the backyard and renovations/remodeling work being done on the main house.

13.     Upon completion of the site inspection, on September 2, 2022, my office sent an email inquiry to the Building Department of the City of Palm Desert seeking any records or documents related to the Palm Desert Property, including permits.

14.     On September 13, 2022, my office reached out the City of Palm Desert follow up on our email request, and issued a Public Records Act Request to the City of Palm Desert seeking the same documentation. Attached hereto as Exhibit "F" is a true and correct copy of the Public Records Act Request filed with the City of Palm Desert.

15.     On September 15, 2022, the Building Department of the City of Palm Springs responded to our Public Records Act Request with all documents related to the Palm Desert Property. There we no records indicating permits for work performed at the Palm Desert Property after 2018.

16.     On September 21, 2022, my office emailed the Records Coordinator with the City of Palm Desert and asked to confirm that there are no permits related to the Palm Desert Property from 2020 to the present.

17.     On September 22, 2022, the Records Coordinator responded that while there had been a permit application, the plans were returned for revisions with a due

date of December 10, 2021, and that to-date the City had not received a response to the request for revisions. A true and correct copy of that email exchange is attached hereto as Exhibit "G."

18.   Attached hereto as Exhibit "H" is a true and correct copy of the note Marc Gagnon sent to Sarah and Claire Gagan stating that they "fully intend to pay [Sarah Gagan] back to the last penny" for the use of the Bel Air House and referring to the monies given to them as a "loan."

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Dated: November 21, 2022

_____

Skye L. Daley, Declarant.

# EXHIBIT A



MEMORANDUM

<u>SENT VIA ELECTRONIC MAIL ONLY</u>

TO:          Brian Harnik

FROM:      Joseph A. Gibbs

DATE:       January 11, 2022

RE:          Marc Gagnon/Meggie Roy

---

Brian:

I am attaching a revised preliminary analysis of charges that were made by your clients on Sarah Gagan's Visa Debit/Credit card for the Montecito Home ("Review").

We are requesting that your clients provide written documentation for each expense identified on the Review.

We need to complete a Forensic Accounting on costs incurred on the Bel Air residence. We cannot complete this until we receive all documentation for any expenses incurred on that property. We still are waiting for pictures of the interior/exterior of the Bel Air residence and any documentation of expenses incurred for the remodel (including an itemization of the $100,000 advanced to the contractor). We are still requesting a date which allows us to inspect and photograph all areas of the Bel Air residence. What is the status of your clients signing the Tolling Agreement?

More importantly, I need to discuss with you in person new information that we became aware of, of acts allegedly committed by your clients which resulted in a significant loss to my clients. At this point in time, I do not want to memorialize this information and/or distribute this information to any third-party. I know that you are busy on other matters this week, so just advise me of proposed dates and times of your availability. I only need ten minutes of your time. I can come to your office. Thank you for your cooperation and consideration.

EXHIBIT B

| From: | Whittaker, Vincent |
|---|---|
| To: | Mary Gilstrap |
| Cc: | Andrew Montez; Daley, Skye |
| Subject: | RE: Gagan v. Gagnon [IMAN-BN.FID3888399] |
| Date: | Thursday, May 5, 2022 3:37:55 PM |

Hey Mary,

Sorry, in marathon depos.  I'm inclined to give the extension (we need a stip in federal court), but want responses to the following questions first:

1.  Will you be representing all four defendants?
2.  Will you accept service of subpoenas for Jim and Judy Hummer or do I need to serve those directly?
3.  Brian represented to me that no alterations have been made to the property.  I would like an agreement for a visual inspection  (sometime in May) and that the inspection can be videotaped.

Let us know and thanks,

Vince


**Vincent Whittaker**
**T** (619) 219-8063
**C** (760) 799-2341

**From:** Mary Gilstrap <mgilstrap@rhlawfirm.com>
**Sent:** Tuesday, May 3, 2022 11:50 AM
**To:** Whittaker, Vincent <vwhittaker@buchalter.com>
**Cc:** Andrew Montez <amontez@rhlawfirm.com>
**Subject:** Gagan v. Gagnon

> This message has originated from an **External Email**. mgilstrap@rhlawfirm.com <mgilstrap@rhlawfirm.com>:

Hi Vince:

Long time no see!!  Hope all is well with you and the family.

We are coming in on this case but have not been formally retained, although that is in the works.  May we please get an extension of time to respond to the complaint?  We'd like three weeks.

Looking forward to working with you and Skye!

Thanks so much,
Mary

**Mary E. Gilstrap, Esq.**
Email:  MGilstrap@rhlawfirm.com



45-025 Manitou Drive • Indian Wells, California 92210
Phone  (760) 360-2400  •  Fax  (760) 360-1211
rhlawfirm.com

   Please consider the environment before printing this email.

CONFIDENTIALITY NOTICE. UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW.
This message is being sent by Roemer & Harnik LLP, a law firm.  It is intended exclusively for the individuals and entities to which it is addressed.  This communication, including any attachments, may contain information that is privileged, confidential or otherwise legally exempted from disclosure. If you are not the intended recipient, or believe that you may have received this communication in error, please notify the sender immediately by email, delete all copies of this email, and do not read, print, retain, copy or disseminate this message or any part of it.

EXHIBIT C

# Buchalter

655 W. Broadway
Suite 1600
San Diego, CA 92101
213.891.0700 Phone
213.896.0400 Fax

File Number: H2514-0002
619.219.8063 Direct
vwhittaker@buchalter.com

May 19, 2022

**VIA E-MAIL (MGILSTRAP@RHLAWFIRM.COM; BHARNIK@RHLAWFIRM.COM)**

Brian Harnik & Mary Gilstrap
Roemer & Harnik, LLP
45-025 Manitou Dr.
Indian Wells, CA 92210

      Re:    Gagan et. al. v. Gagnon et. al. - Rule 26(f) Conference

Dear Mary:

Please accept this letter as our formal request to schedule a Rule 26(f) conference, pursuant to the Federal Rules of Civil Procedure, Rule 26. We are available for such a conference on May, 24, 25, 26 (afternoon), 27, 30 or 31.

While we are not sure as to whether or not you intend to file a Motion to Dismiss, should you wish to file such a motion, you will need to schedule a L.R. 7-3 conference in advance of doing so. In the event you do intend to file a Motion to Dismiss, we propose having the L.R. 7-3 conference and the Rule 26 conference on the same call. In the event you do not wish to hold the Rule 26 conference, for whatever reason, this is our attempt to schedule a meet and confer conference pursuant to L.R. 7-3 with regard to a Motion to Compel a Rule 26 conference.

Also, please let us know about proposed dates for a site inspection of the property as well as previously discussed.

buchalter.com

Los Angeles
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

# Buchalter

Brian Harnik & Mary Gilstrap
May 19, 2022
Page 2

We look forward to hearing from you.

Very truly yours,

BUCHALTER
A Professional Corporation

Vincent Whittaker

VW:sd

# EXHIBIT D

| | |
|---|---|
| **From:** | Whittaker, Vincent |
| **To:** | mgilstrap@rhlawfirm.com; bharnik@rhlawfirm.com |
| **Cc:** | Daley, Skye; Roam, Chandra; Elizabeth Lopez; Andrew Montez; Susie Adame; Felix, Lupe |
| **Subject:** | RE: Gagan et. al. v. Gagnon et. al. - Rule 26(f) Conference Letter [IMAN-BN.FID3888399] |
| **Date:** | Wednesday, May 25, 2022 8:13:36 AM |
| **Attachments:** | 2022-05-19 Letter re Rule 26(f) Conference.pdf |

Good morning Mary,

Haven't heard from you regarding the below and attached.  It's imperative we meet and confer and get this matter moving.

Looking forward to hearing from you.

Best,

Vince


**Vincent Whittaker**
**T** (619) 219-8063
**C** (760) 799-2341

---

**From:** Felix, Lupe <lfelix@buchalter.com>
**Sent:** Thursday, May 19, 2022 4:14 PM
**To:** mgilstrap@rhlawfirm.com; bharnik@rhlawfirm.com
**Cc:** Whittaker, Vincent <vwhittaker@buchalter.com>; Daley, Skye <sdaley@buchalter.com>; Roam, Chandra <croam@buchalter.com>
**Subject:** Gagan et. al. v. Gagnon et. al. - Rule 26(f) Conference Letter [IMAN-BN.FID3888399]

Dear Ms. Gilstrap & Mr. Harnik,
        Attached please find important correspondence from attorney Vincent Whittaker regarding Gagan et. al. v. Gagnon et. al.
        If you have any questions or concerns please do not hesitate to reply all to this email.


Sincerely,

Lupe Felix

**Lupe Felix**
**T** (619) 219-6327

EXHIBIT E



Evidence of
new drywall













# EXHIBIT F



**CITY OF PALM DESERT**
73-510 Fred Waring Drive
Palm Desert, California 92260
info@cityofpalmdesert.org
Ph: (760) 346-0611  /  Fax:  (760) 340-0574

# Request for Public Records

*Completion of this document is suggested for all records requests.  In accordance with City Council Resolution No. 08-24, the following fees apply:  15¢ per page for standard reproduction of documents of a size 8½" x 14" or less, 35¢ per page for copying documents from microfilm, $1.00 per page for copying documents of a size 11" x 17" to blueprint-size, actual cost for reproduction of oversize documents or those requiring special processing, actual postage charges, if applicable, and actual cost for third-party retrieval of offsite records, if applicable.   For compilation of electronic data/information extraction, the requester may be required to bear the full and actual clerical costs incurred by the City for this purpose.*

*The City Clerk's Office will make every effort to produce documents immediately upon request; however, there are times when work schedules make it impossible to do so.  A member of the City Clerk's Office will contact you within 10 days of your request to advise when the records will be available.  Your cooperation is very much appreciated.*

**Date of Request:** September 13, 2022          **Time:** 4:00 pm

**Description of Document(s) Requested:**  *(Attach additional sheets if necessary.)*

All permits, drawings, inspection reports, and any other construction or building documents related to the real property located at 72646 Bel Air Road, Palm Desert, CA 92260.

**Requested by:** Chandra Roam
Name

655 West Broadway, Suite 1600, San Diego, CA 92101
Address

(619) 490-9367
Phone Number(s)

| Official Use Only |
|---|
| Documents Produced by: _____ |
| Date: _____    Time: _____ |

EXHIBIT G

| | |
|---|---|
| **From:** | Gloria Sanchez |
| **To:** | Roam, Chandra |
| **Subject:** | RE: PRAR - Chandra Roam (Buchalter) 72646 Bel Air Road, Palm Desert, CA |
| **Date:** | Thursday, September 22, 2022 12:52:12 AM |
| **Importance:** | High |

This message has originated from an **External Email**. Gloria Sanchez <gsanchez@cityofpalmdesert.org>:

**PUBLIC RECORDS ACT REQUEST**

Good morning Chandra,

The Building & Safety Division found a remodel permit application after 2019.  The permit system indicates there is an open plan review.  The plans were returned for revisions with a due date of December 10, 2021; however, to date there has been no response to the request for revisions.

If you have any questions or require additional information, please do not hesitate to contact me.

This concludes the request.

## M. Gloria Sanchez, CMC

Records Coordinator
Ph: 760.346.0611  Direct: 760.776.6354
gsanchez@cityofpalmdesert.org

---

**From:** Roam, Chandra <croam@buchalter.com>
**Sent:** Wednesday, September 21, 2022, 10:25 AM
**To:** Gloria Sanchez <gsanchez@cityofpalmdesert.org>
**Subject:** RE: PRAR - Chandra Roam (Buchalter) 72646 Bel Air Road, Palm Desert, CA

Thank you, Gloria. I noticed the most recent record is from 2019. I just want to confirm there is nothing for 2020 through present? In other words, if there is ongoing construction at the property that requires permits, those current permits would have also been included in the link you sent? Feel free to call to discuss.

Thanks,

# Buchalter

**Chandra Roam**

Attorney
**T** (619) 219-8067
croam@buchalter.com

655 W. Broadway, Suite 1600
San Diego, CA 92101
www.buchalter.com

**From:** Gloria Sanchez <gsanchez@cityofpalmdesert.org>
**Sent:** Thursday, September 15, 2022 5:54 PM
**To:** Roam, Chandra <croam@buchalter.com>
**Subject:** RE: PRAR - Chandra Roam (Buchalter) 72646 Bel Air Road, Palm Desert, CA
**Importance:** High

This message has originated from an **External Email**. Gloria Sanchez <gsanchez@cityofpalmdesert.org>:

**PUBLIC RECORDS ACT REQUEST**

Attached are the records responsive to your request. The Link below expires October 31, 2022.
https://cpdftp.org/link/ZgjuviH5PHyII9Y3Xm44tk

If you have any questions or require additional information, please do not hesitate to contact me.

This concludes the request.

## M. Gloria Sanchez, CMC
Records Coordinator
Ph: 760.346.0611  Direct: 760.776.6354
gsanchez@cityofpalmdesert.org

**From:** Gloria Sanchez
**Sent:** Wednesday, September 14, 2022 7:13 PM
**To:** Roam, Chandra <croam@buchalter.com>
**Subject:** RE: PRAR - Chandra Roam (Buchalter) 72646 Bel Air Road, Palm Desert, CA
**Importance:** High

**PUBLIC RECORDS ACT REQUEST**

The City of Palm Desert is in receipt of your Public Records Act Request and will forward your

request to the Building & Safety Division.

The City of Palm Desert prides itself in providing above excellent service and always strives to minimize the turnaround time for records request. However, if additional time is needed to produce the responsive records, I will notify you as soon as possible with an anticipated date of delivery.

In the meantime, if you have any questions or require additional information, please do not hesitate to contact me.

*NOTE:*
*Per Government Code § 6253(c):*
*(c) Each agency, upon a request for a copy of records, shall, **within 10 days** from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency and shall promptly notify the person making the request of the determination and the reasons therefor.*

*For more information log on to http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=6253.&lawCode=GOV*

## M. Gloria Sanchez, CMC

Records Coordinator
Ph: 760.346.0611 Direct: 760.776.6354
gsanchez@cityofpalmdesert.org



www.cityofpalmdesert.org

Install the **Palm Desert In Touch** app to stay in touch with your community
Android        Apple        Mobile Web

---

**From:** Roam, Chandra <croam@buchalter.com>
**Sent:** Tuesday, September 13, 2022 4:14 PM
**To:** Records Request <recordsrequest@cityofpalmdesert.org>
**Subject:** Records Request - 72646 Bel Air Road, Palm Desert, CA

Mimecast Attachment Protection has deemed this file to be safe, but always exercise caution when opening files.

Hello,

Please see attached records request. I've also requested records from buildingrecords@cityofpalmdesert.org, but have not received a response.

Thanks,

# Buchalter

**Chandra Roam**
Attorney
**T** (619) 219-8067
croam@buchalter.com

655 W. Broadway, Suite 1600
San Diego, CA 92101
www.buchalter.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

# EXHIBIT H

Dearest Claire,

It has been a few weeks that we haven't heard back from you or Sarah, and I am writing in the hope that you will take a few moments to read this letter. Meggie and I are heartbroken. We've had many, many sleepless nights trying to understand what went wrong and praying that the situation will soon get resolved so that we can all be together. You and Sarah are the most important people in our lives. We love you both very deeply and cherish all the time we spent together. And we are looking forward to creating more memories.

Over the past weeks, I thought a lot about how or why this happened - how we went from sipping champagne & laughing in Montecito to this very sad situation. I came up with

two theories and if these are indeed the sources of the issue, I hope my words can bring some clarity.

<u>First theory</u> - Business hardship and my overall attitude

Over the past months, I have cumulated many disappointments, failures, and steps back on a professional level. I feel like I underperformed and that everything I touched did not work. The Sacrement Energy Program that was so promising got pulled from under me and I'm about to lose everything I've invested into. With my own company, I've lost clients with whom I've had long-lasting relationships and lost contracts due to our inability to perform to the client's expectations. This had happened to me very few times in my life and I take each of them with great difficulty because in the end, I am entirely responsible. The employees that I've hired have not been performi...

to the level I hoped for and ultimately, it is my fault for not training them properly.

The thursday we were last together, Sarah had asked Meggie "Why was Marc so quiet the night before at the Club?". I thought this was covered when we all sat down and talked this past July but let me reiterate; I have been having a rough time since Springs and it has nothing to do with you or Sarah. I'm not one that can pretend or put an act around people I care about. Nor I ever thought I needed to. If sadly I'm having a rough day, it may show. If my demeanor was irritating, I am deeply sorry. But on that particular day, I was indeed quiet and in my thoughts. If asked, I could have told you what was on my mind and it had nothing to do with either of you. One of my employees who is replacing Meggie may

an error costing me yet another client. I had no choice but to let her go, however it meant that I needed Meg to come back and work for a while - which I promised her she wouldn't have to do anymore. And since I had no luck hiring in the area, I was torn to break the news to Messie. I'm not perfect but I don't play games. With me, what you see is what you get - it may not be ideal but this is who I am. Messie is obviously very important to me and having to disappoint her was making me sick to my stomach.

I can also admit that I may have been shyer around you and Sarah since we sat down in July because I hate the fact that I've hurted and disappointed you two. This horrible feeling of letting everyone down still lingers and I'm worried that if I made my usual jokes,

it could be misinterpreted and hurt you two even more. To be clear, I am not blaming anyone but myself for this, this is simply how I feel. I am still trying to understand what happened but please trust me when I say that I've never intended for things to be like it is today.

Second theory - Money gets in the way

This interpretation of the situation dawned on Me after she came across a Facebook post by Dean about "Kindness not being reciprocated or much less appreciated". Messie felt that we were the persons in question in that comment and that thought was incredibly heartbreaking. I told Sarah many, many times that I was worried about mixing money into our relationship, that no amount of money was worth tarnishing what

we have. It feels incredibly ___ ___ ___ over 18 months of all of us living together literally every day, this might be how we are now perceived. I know that you both had terrible experiences in the past and now it seems that you feel we did you wrong in some ways. This is why I would like to clarify some financial details, and if money isn't an issue, I still think that transparency is capital no matter what.

With the utmost honesty, we don't expect any money from you. That was never and never will be the reason why we are around because it anything, it makes us uncomfortable. We have been blessed to spend so much time with you and your family and we are deeply fond of you all. We are proud hard-working people who take pride in earning what we get. When we first met, Messie and I didn't have to nickels to rub together.

We worked really hard every day for years to have what little that we own. Being hard workers is the reason why Meggie worked so hard for you over the past months because she wanted to be deserving of her compensation but she mainly wanted to make sure that you would be delighted with the ~~house~~. I, unfortuna believe that things got a little too intertwined. I told Meggie & Sarah that I didn't like the idea of them working on a project of that scope because I was worried it would ruin how close they were and that no amount of money was worth that. I still feel that way.

Regarding our home, I feel like we have not communicated sufficiently how grateful we are I will eternally be grateful to your husband f suggesting the loan for the house - this was for me the biggest gift anyone could ever gi

me. And I don't mean just the opportunity itself, but the trust he showed us is the single best thing I've ever had in my life. I have fond memories of him whole-heartedly laughing that "There was no way" and that "I was dreaming" if I thought that a self-employed immigrant could get a loan? And he was right and this is something that no amount of hard work could have made happen. This was life-changing for us, thanks to him, you, and Sarah. But to be clear, never did we expect that the house was given to us and we fully intend to pay you back to the last penny. For instance the agreement we had with Sarah in regards to Wes's compensation was to pay for our home improvement (roughly $252k) and use the remaining $48k to pay for our rent which is worth about 27 months of rent,

==The same goes with the ??== ?? are extremely grateful to Sarah ==for helping us finance them but in no way did we consider these to be given to us.== Something that may have been overlooked over time is that I've been paying cleanings and gardening invoices for the Beach House and various other expenses in lieu of repayment. For instance Sarah helped by paying for the Jaguar. 15 Months later, when she helped with the Mercedes, I had paid back $22k. Then, we were waiting for the $50k Lemon law check to come in but while in Montecito, Sarah's credit card was blocked for several weeks just before you two moved in and I had to cover quite a bit of expenses from my own pocket to keep the project going, knowing that I would simply write it off the debt. It turns out that I've spent over $49k on the Montecito project. I wish I could have given more but during the time I

16

the Montecito house + ended up working 100+ hours with the sole goal of making this house feel like a home to you two. Unfortunately, it took a toll on my business and it will take me some time to recover from it. That being said, please understand that it is not your fault as neither of you ever asked anything from me. I jumped in with the kindness of my heart because I wanted you to have an easy transition to this new property while making it to your liking. I am not expecting money, I am trying to be as transparent as possible.

Lastly, this last bit of information was never meant to be known, but given the current circumstances... For Sarah's Birthday, Meg & I agreed to put down $8,000 of our own money to cover the agent's fees for the show. We never said anything to either of you because we didn't want anyone to feel uncomfortable...

feel loved by making the $___$ to make it unique like she is. Honestly, this is a lot of money for us but we were more than happy to do it - and still are today. We truly wanted to do something amazing for someone we love. For someone who does so much for us I never thought that we had to advertise that gesture but if our loyalty or intentions are being questionned, maybe knowing this can help reassure yo I think it is important to bring to light our love for Sarah and to demonstrate that we were ne there for money.

To conclude, the goal of this letter is not to be pitied. This is me trying to understand ave difficult situation and I'm sincerely hoping this ca bring light to certain sensitive subjects. I decide to write this to you, with respect to your wish of

"giving Sarah some time to do it, but I would love for you to share this with her whenever you think the time is right. We are truly heartbroken, but still love you dearly and we are extremely sorry if we ever made you think any other way.

And if I have done something to hurt you so bad that you don't love me anymore, that's on me and I'll have to live with it. But I don't believe that Meg deserves any of this. You must know how much she loves and cares for you both. While moving out of Monterra, she found last year's birthday card where you told her that you considered her as a daughter and she broke into thousand of pieces. To this day, she is devastated and can barely sleep at night. I am hoping that we can all meet and talk things through because we don't understand what went wrong

Hopefully, this letter gave you some insights and I am praying that things go back to the way they were because we do love you with all of our hearts.

With all my love, sincerely,

Marc Gagnon