1  BUCHALTER
   A Professional Corporation
2  VINCENT R. WHITTAKER (SBN: 214007)
   SKYE L. DALEY (SBN: 284592)
3  MARISSA C. MARXEN (SBN: 300095)
   655 West Broadway, Suite 1600
4  San Diego, CA  92101
   Telephone: 619.219.5335
5  Email:  vwhittaker@buchalter.com
   Email:  sdaley@buchalter.com
6  Email:  mgiacomelli@buchalter.com

7  Attorneys for Plaintiffs
   Sarah Gagan, Claire Gagan and Halo's Heart, LLC
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12 SARAH GAGAN, an individual,          Case No. 5:22-cv-00680-SSS-SP
   CLAIRE GAGAN, an individual, and     Hon. Sunshine S. Sykes
13 HALO'S HEART, LLC, a California
   Limited Liability Company,           **DECLARATION OF SARAH
14                                       GAGAN FILED IN SUPPORT OF
                Plaintiffs,              MOTION FOR PRELIMINARY
15                                       INJUNCTION**
          v.
16                                       **[Filed Concurrently with Notice of
   MARC ANTOINE GAGNON, an              Application for Preliminary
17 individual; MEGGIE ROY, an individual, Injunction and [Proposed] Order]**

18             Defendants.

19                                       Date:    January 13, 2023
20                                       Time:    2:00 PM
                                         Dept.    2
21

22

23              **DECLARATION OF SARAH GAGAN**

24        I, SARAH GAGAN, am the sole member and manager of HALO'S HEART,

25 LLC. I make this declaration of my own personal knowledge. If called upon to testify,

26 I could and would testify competently to the truth of the matters stated herein.

27

28

BUCHALTER
A Professional Corporation
San Diego

**GAGAN DECL. IN SUPPORT OF APPLICATION FOR
PRELIMINARY INJUNCTION**
BN 73210960v1

1.     This declaration is submitted in support of HALO'S HEART, LLC'S Motion for a Preliminary Injunction in the above-entitled matter.

2.     On February 11, 2020, I purchased a single family residence located at 72646 Bel Air Road, Palm Desert, California 92260, Riverside County Assessor's Parcel Number 628-181-002-0 (the "Palm Desert Property"). The Palm Desert Property is a 3 bedroom, 2.5 bathroom, 1,850 square foot home in Palm Desert, California. I subsequently transferred the Palm Desert Property to my limited liability company, Halo's Heart, LLC.

3.     Attached hereto as Exhibit "A" is a true and correct copy of the Grant Deed for the Palm Desert Property.

4.     Following the purchase of the Palm Desert Property, Halo's Heart, LLC entered into a written lease agreement with Defendants Marc Antoine Gagnon ("Marc") and Meggie Roy ("Meggie") wherein Defendants Marc and Meggie agreed to lease the Palm Desert Property from Halo's Heart (the "Lease Agreement"). The Lease Agreement had an effective date of February 1, 2020.

5.     Attached hereto as Exhibit "B" is a true and correct copy of the Lease Agreement.

6.     Halo's Heart, LLC also caused to be drafted an option agreement with Marc and Meggie, as optionees, which granted them an option to purchase the Palm Desert Property at the end of their lease term (the "Option Agreement"). In consideration of this option, Marc and Meggie were required to pay $100 to Halo's Heart within 5 days of the execution of the Option Agreement. The $100 consideration was never paid.

7.     Attached hereto as Exhibit "C" is a true and correct copy of the Option Agreement referenced in HALO'S HEART, LLC'S Application for a Preliminary Injunction in the above-entitled matter.

8.     Marc Gagnon and Meggie Roy have been residing at the Bel Air Property since early 2020, and have never paid a single month's worth of rent, nor

Property since early 2020, and have never paid a single month's worth of rent, nor have they paid the Security Deposit, or paid the $100 consideration for the Option Agreement.

9.     Halo's Heart, LLC is owed at least $44,328.00 in lost base rent alone.

10.     I, through my counsel, have been attempting to inspect the Palm Desert Property (which I own) since November of 2021. Until August 31, 2022, Marc and Meggie had refused to allow me or my representatives to do so.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Dated: November 21, 2022

*Sarah gagan trustee*

_____

Sarah Gagan, Declarant.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN DIEGO

GAGAN DECL. IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

BN 73210960v1

EXHIBIT A

**RECORDING REQUESTED BY**
**AND WHEN RECORDED RETURN TO:**

Lewis Brisbois Bisgaard & Smith LLP
74-830 Highway 111, Suite 200
Indian Wells, California 92253
Attn: Christopher Gabbard

**2021-0011673**
01/08/2021 09:49 AM Fee: $ 105.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

887

APN: 670-520-044-4                                    (Space Above for Recorder's Use)

**The undersigned grantor(s) declare(s)**
**Documentary transfer tax is $ ___0___**
    [ X ]  computed on full value of property conveyed, or
    [   ]  computed on full value less value of liens or encumbrances remaining at time of sale.
    [   ]  Unincorporated Area       City of Palm Desert

*This transfer is between individuals and a legal entity or partnership, or between legal entities, and does not change the proportional interests held, R&T 11925.

**QUITCLAIM DEED**

4814-2934-8564.1                                                                    Quitclaim Deed

**RECORDING REQUESTED BY**
**AND WHEN RECORDED RETURN TO:**

Lewis Brisbois Bisgaard & Smith LLP
74-830 Highway 111, Suite 200
Indian Wells, California 92253
Attn: Christopher Gabbard

_____

(Space Above for Recorder's Use)

APN: 670-520-044-4

## QUITCLAIM DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **SARAH GAGAN, an unmarried woman,** does hereby REMISE, RELEASE AND FOREVER QUITCLAIM to **HALO'S HEART, LLC, a California limited liability company**, any and all interest it has in the real property situated in the County of Riverside, State of California, commonly known as 72646 Bel Air Road, Palm Desert, CA 92260, as more particularly described as follows:

The real property in the City of Palm Desert, County of Riverside, State of California, described as: Lot 2 if Palms to Pines Estates No. 1 as shown by map on file in Book 26, Pages 93 and 94 of Maps in the office of the County Recorder of Riverside, County, California.

Dated: 11 - 13 - 2020

Sarah Gagan

Quitclaim Deed

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                    )
County of Riverside                                    )


On _November 13, 2020_, before me, Jennifer Hicks, a Notary Public, personally appeared Sarah Gagan, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____

JENNIFER HICKS
Notary Public - California
Riverside County
Commission # 2226091
My Comm Expires Jan 18, 2022

Quitclaim Deed

# EXHIBIT B

# LEASE AGREEMENT

This Lease Agreement (this "**Agreement**"), dated _Feb 1___, 2020 (the "**Execution Date**"), to effective as of February 1, 2020 (the "**Effective Date**") by and between Halo's Heart, LLC, a California limited liability company ("**Landlord**"), and Marc Antione Gagnon and Meggie Roy (each, a "**Tenant**", and collectively, "**Tenants**"), agree to the following:

1. **OFFER TO RENT**:  Landlord hereby rents to Tenants, subject to the following terms and conditions of this Agreement, a single-family home with the address of 72646 Bel Air Road, Palm Desert, CA 92260 (the "**Premises**"). Landlord shall also use the address of the Premises for notices sent to Tenants, unless Tenants request in writing to Landlord that notices be sent to another address.

2. **OCCUPANTS**: The Premises is to be occupied strictly as a residential dwelling by Tenants and any child of either Tenant (collectively "**Occupants**").

3. **PURPOSE**: The Occupants may only use the Premises as a residential dwelling. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.

4. **FURNISHINGS**: The Premises is not furnished.

5. **APPLIANCES**:  Landlord shall provide the following appliances: Dishwasher, hot water heater, oven, stove, washer, dryer, microwave, air conditioning unit, and barbeque. Any damage to the Landlord's appliances shall be the liability of Tenants, with any damage or repairs to be billed directly to the Tenants.

6. **LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning on the Effective Date and ending on February 1, 2030 (the "**Lease Term**"). Tenants shall have the option to purchase the Premises at the end of the Lease Term (the "**Option Agreement**"), which Option Agreement shall be executed as of the date hereof in the form attached hereto as **Exhibit A**. If Tenants do not exercise their option to purchase the Premises, then this Agreement shall terminate as of the end of the Lease Term and Tenants shall vacate the Premises.

7. **RENT**: Tenants shall pay Landlord in equal monthly installments of One Thousand Eight Hundred Forty-Seven Dollars and Fifty Cents ($1,847.50) (U.S. Dollars) (the "**Rent**"). The Rent will be due on the first (1st) day of every month and be paid through an electronic payment to Landlord's account or via check; provided, however, that Rent payments shall be deferred until October 1, 2020. In addition, the Tenants shall be responsible for the prompt payment of all real property taxes associated with the Premises and the real property thereon, *provided* that the Landlord shall cooperate with the filling of any necessary taxation documentation in association therewith.

8. **NON-SUFFICIENT FUNDS (NSF CHECKS)**: If Tenants attempt to pay the Rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be a fee of One Hundred Dollars and No Cents ($100.00) (U.S. Dollars).

9. **LATE FEE**: If the Rent is not paid on the due date, there shall be a late fee assessed by the Landlord in the amount of One Hundred Dollars and No Cents ($100.00) (U.S. Dollars) per occurrence for each month payment that is late after the 5th day the Rent is due.

1

10. **PRE-PAYMENT**: Landlord shall not require any pre-payment of rent from Tenants.

11. **SECURITY DEPOSIT**: Upon execution of this Agreement, Tenants shall pay a security deposit via check in the amount of One Thousand Eight Hundred Forty-Seven Dollars and Fifty Cents ($1,847.50) (U.S. Dollars), which amount may be waived by the Landlord (the "**Security Deposit**"), which shall be held by Landlord in Landlord's bank account. All or any portion of the Security Deposit may be used, as reasonably necessary, to: (i) cure Tenants' default in payment of Rent (which includes late fees, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenants or by a guest or licensee of Tenants; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace or return personal property or appurtenances. SECURITY DEPOSIT SHALL NOT BE USED BY TENANTS IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the security deposit is used during the tenancy, Tenants agrees to reinstate the total security deposit within 5 days after written notice is delivered to Tenants. Within 21 days after Tenants vacates the Premises, Landlord shall: (1) furnish Tenants an itemized statement indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and (2) return any remaining portion of the security deposit to Tenants. Security deposit will not be returned until all Occupants have vacated the Premises and all keys returned. Any Security Deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified. No interest will be paid on security deposit unless required by local law.

12. **POSSESSION**: Tenants have examined the condition of the Premises and by taking possession acknowledge that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Tenants are leasing the Premises in its "as-is with all faults" condition. Failure of Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenants shall terminate this Agreement at the option of the Tenants. Furthermore, under such failure to deliver possession by Landlord, and if Tenants cancel this Agreement, the Security Deposit (if any) shall be returned to Tenants along with any other fees.

13. **ACCESS**: Upon the beginning of the start of the Lease Term, Landlord agrees to give access to the Tenants in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises (collectively, "**Access Devices**"). Duplicate copies of the access provided may only be authorized under the consent of Landlord and, if any replacements are needed, Landlord may provide them for a fee. At the end of this Agreement all Access Devices provided to Tenants shall be returned to Landlord or a fee will be charged to Tenants or subtracted from the Security Deposit, in Landlord's sole discretion, for the replacement cost such Access Devices not returned..

14. **MOVE-IN INSPECTION**: Before, at the time of Tenants accepting possession or shortly thereafter, Landlord and Tenants shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises.

15. **SUBLETTING**: Tenants shall not have the right to sub-let the Premises or any part thereof without the prior written consent of Landlord.  If consent is granted by Landlord, Tenants will be responsible for all actions and liabilities of the sublessee including but not limited to: damage to the Premises, non-payment of Rent, and any eviction process (in the event of an eviction, Tenants shall be responsible for all court filing fee(s), representation, and any other fee(s) associated with removing the sublessee). The consent by Landlord to any sub-let shall not be deemed to be consent to any subsequent subletting.

16. **ABANDONMENT**: If Tenants vacate or abandon the Premises for a time-period that is the minimum set by State law or 7 days, whichever is less, Landlord shall have the right to terminate

2

this Agreement immediately and remove all belongings including any personal property off of the Premises. If Tenants vacate or abandon the Premises, Landlord shall immediately have the right to terminate this Agreement.

17. **ASSIGNMENT**: Tenants shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenants, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenants. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenants of Tenants' obligations under this Agreement.

18. **RIGHT OF ENTRY**:  Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.

19. **UTILITIES AND PROPERTY TAXES**:  All utilities, services, and property taxes shall be the responsibility of Tenants. If Landlord pays for any utilities, services, or property taxes, Tenants shall reimburse Landlord within 30 days of such payment.

20. **MAINTENANCE, REPAIRS, OR ALTERATIONS**:  Tenants shall, at their own expense and at all times, maintain the Premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted.  Tenants may not make any alterations to the Premises without the consent in writing of Landlord.  Landlord shall be responsible for repairs to the interior and exterior of the building. If the Premises includes a washer, dryer, freezer, dehumidifier unit and/or air conditioning unit, the Landlord makes no warranty as to the repair or replacement of units if one or all shall fail to operate.  For any battery operated device on the premises, including smoke detectors, it is the responsibility of Tenants to replace batteries when needed. Tenants shall not deduct from Rent the costs of any repairs, alterations or improvements; and any deduction made by Tenants shall be considered unpaid Rent.

21. **NEIGHBORHOOD CONDITIONS**: Tenants are advised to satisfy him or herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenants.

22. **PETS**:  Unless otherwise provided in California Civil Code § 54.2, Tenants shall be allowed to have 1 pet on the Premises consisting of a dog, with no other types of pets being allowed on the Premises or common areas (hereinafter referred to as the "**Pet**").[1]  Tenants shall not be required to pay a fee for the Pet. Tenants are responsible for any and all damage that any pet causes, regardless

---

[1] Any pets? Should this be increased?

of ownership of said pet and agrees to restore the Premises to its original condition at their expense. There shall be a limit on the weight of any of the individual pets of 40 pounds.

23. **NOISE/WASTE**:  Tenants agree not to commit waste on the Premises, maintain or permit to be maintained, a nuisance thereon, or use or permit the Premises to be used, in any unlawful manner.  Tenants further agree to abide by any and all local, county, and State noise ordinances.

24. **GUESTS**: There shall be no other persons living on the Premises other than Tenants and Occupants.  Guests of Tenants are allowed for periods not lasting more than two (2) weeks unless otherwise approved by Landlord.

25. **SMOKING POLICY**: Smoking on the Premises is prohibited on the entire property, including individual units, common areas, every building and adjoining properties.

26. **COMPLIANCE WITH LAW**:  Tenants agree that, during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the Premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against Tenants, Landlord or both.

27. **DEFAULT**: If Tenants fail to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by Landlord, or materially fail to comply with any duties imposed on Tenants by statute or State laws, within the time period after delivery of written notice by Landlord specifying the non-compliance and indicating the intention of Landlord to terminate the Agreement by reason thereof, Landlord may terminate this Agreement. If Tenants fail to pay the Rent when due and the default continues for 7 days after Tenants' receipt of notice by Landlord, Landlord may, at its option, declare the entire balance (compiling all months applicable to this Agreement) of the Rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Landlord at law or in equity and may immediately terminate this Agreement.

Tenants will be in default if: (a) Tenants do not pay the Rent or other amounts that are owed in accordance with respective State laws; (b) Tenants, their guests or Occupants violate this Agreement, rules or fire, safety, health or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenants abandon the Premises; (d) Tenants give incorrect or false information in the rental application; (e) Any Tenant or any Occupant is arrested, convicted or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture or delivery of a controlled substance, marijuana or drug paraphernalia under State statute; (f) Any illegal drugs or paraphernalia are found in or around the Premises or on the person of Tenants, guests or Occupants while on the Premises and/or; (g) As otherwise allowed by law.

28. **MULTIPLE TENANT(S) OR OCCUPANT(S)**: Each individual that is considered a Tenant is jointly and severally liable for all of this Agreement's obligations, including but not limited to the Rent. If any Tenant, guest or Occupant violates this Agreement, Tenants are considered to have violated this Agreement. Landlord's requests and notices to Tenants or any Occupant of legal age constitutes notice to Tenants. Notices and requests from Tenants or any Occupant (including repair requests and entry permissions) constitutes notice from Tenants. In eviction suits, each Tenant is considered the agent of the Premises for the service of process.

4

29. **DISPUTES**: If a dispute arises during or after the term of this Agreement between a Landlord and a Tenant, they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

30. **SEVERABILITY**: If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

31. **SURRENDER OF PREMISES**: Tenants have surrendered the Premises when: (a) The move-out date has passed and no one is living in the Premises within Landlord's reasonable judgment; or (b) Access to the Premises have been turned over to Landlord – whichever comes first. Upon the expiration of the Lease Term, Tenants shall surrender the Premises in better or equal condition as it was at the commencement of this Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted, and Tenants shall give Landlord all copies of all Access Devices. All alterations/improvements made by or caused to be made by Tenants, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenants for restoration of the Premises to the condition it was in prior to any alterations/improvements.

After giving or receiving notice of termination of a tenancy or before the end of a lease, Tenants have the right to request that an inspection of the Premises take place prior to termination of the lease or rental. If Tenants request such an inspection, Tenants shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. Any repairs or alterations made to the Premises as a result of this inspection (collectively, "**Repairs**") shall be made at Tenants' expense. Repairs may be performed by Tenants or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Tenants shall obtain receipts for Repairs performed by others, prepare a written statement indicating the Repairs performed by Tenants and the date of such Repairs, and provide copies of receipts and statements to Landlord prior to termination. This Section does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3) or (4).

32. **RETALIATION**: Landlord is prohibited from making any type of retaliatory acts against Tenants including, but not limited to, restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures or any other type of act that could be considered unjustified.

33. **WAIVER**: A waiver by Landlord for a breach of any covenant or duty owed by Tenants under this Agreement is not a waiver for a breach of any other covenant or duty owed by Tenants, or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by Tenants and Landlord.

34. **EQUAL HOUSING**: If Tenants possess any mental or physical impairment, Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for Landlord to provide. Any impairment of Tenants are to be provided and presented to

5

Landlord, in writing, in order to seek the most appropriate route for providing the modifications to the Premises.

35. **HAZARDOUS MATERIALS**:  Tenants agree to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought on to or into the Premises, other than for everyday cooking or the need of an appliance, includes, but is not limited to, gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks or any other related content in the form of a liquid, solid or gas.

36. **WATERBEDS**:  Tenants are not permitted to furnish the Premises with waterbeds.

37. **INDEMNIFICATION AND INSURANCE**:  Landlord shall not be liable for any damage or injury to Tenants, Occupants, guests or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and Tenants agree to defend Landlord, hold Landlord harmless, and indemnify Landlord from any and all claims or damages unless caused solely by Landlord's willful misconduct. Tenants' or guest's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenants are advised to carry Tenants' own insurance (renter's insurance) to protect Tenants from any such loss or damage. Tenants shall comply with any requirement imposed on Tenants by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium (or Tenants shall pay for the increase in premium); or (ii) loss of insurance.

38. **COVENANTS**: The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

39. **NOTICES**: Any notice to be sent by Landlord or Tenants shall be to the following mailing addresses:

|  |  |
|---|---|
| **Landlord's Mailing Address** | **Tenants' Mailing Address** |
| 190 Netas Drive | 72646 Bel Air Road |
| Palm Desert, CA 92260 | Palm Desert, CA 92260 |

40. **AGENT/MANAGER**:  Landlord does not have a real estate agent or property manager and all contact in regards to any repair, maintenance or complaint must go through Landlord through the following contact information:

_____ [2]

41. **PREMISES DEEMED UNINHABITABLE**: If, by no fault of Tenants, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenants may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenants' reasonable use of Premises. If damage occurs as a result of an act of Tenants or Tenants' guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made, and Tenants shall be

---

[2] Who is going to be contact? Sarah's secretary? What is her information?

6

liable for the cost of all repairs due to such damage resulting from an act of Tenants or Tenants' guests.

42. **TEMPORARY RELOCATION**:  Subject to local law, Tenants agree, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenants agree to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenants shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenants are required to vacate Premises.

43. **ACCESS BY LANDLORD**:  Landlord must give at least twenty-four (24) hours notice to Tenants prior to entry for maintenance or any non-emergency reason. For any move-out inspection, forty-eight (48) hours notice by Landlord shall be required.

44. **MEGAN'S LAW**: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor any brokers, if any, are required to check this website. If Tenants want further information, Tenants should obtain information directly from this website.)

45. **SERVICEMEMBERS CIVIL RELIEF ACT**: In the event one or more of the Tenants is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing or receives deployment orders, then, in any of these events, Tenants may terminate this Agreement upon giving thirty (30) days written notice to Landlord.  Tenants shall also provide to Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. Tenants will pay the prorated Rent for any days which they occupy the Premises past the beginning of the rental period.

The Security Deposit will be promptly returned to Tenants, provided there are no damage to the Premises.

46. **LEAD PAINT**: The Premises was constructed before 1978 and therefore the Lead-Based Paint Disclosure is attached to this Agreement. In accordance with Federal law, Landlord has given, and Tenants hereby acknowledge, receipt of the disclosure on the attached Lead-Based Paint Disclosure and a federally approved pamphlet, and both are incorporated herein as though fully set forth herein.

47. **GOVERNING LAW**: This Agreement is to be governed under the laws of the State of California. Venue for any action arising out of this Lease shall exclusively be in Riverside County, California.

48. **ATTORNEY FEES**: In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenants shall be entitled to reasonable attorney fees and costs.

49. **COUNTERPARTS**: This Agreement may be executed in several counterparts, each of which shall be deemed an original, and said counterparts shall together constitute but one and the same agreement, binding upon all of the parties hereto, notwithstanding that all of the parties are not signatories to the original or the same counterpart.

50. **ENTIRE AGREEMENT**: This Agreement contains all the terms agreed to by the parties relating to its subject matter including any attachments or addendums. This Agreement replaces all previous discussions, understandings, and oral agreements. Landlord and Tenants agree to the terms and conditions and shall be bound until the end of the Lease Term.

[SIGNATURE PAGE IMMEDIATELY FOLLOWS]

8

The parties have agreed and executed this agreement on the Effective Date.

**LANDLORD:**

HALO'S HEART, LLC

By_____

Name: Sarah Gagan
Title: Managing Member

**TENANTS:**

_____
MARC ANTIONE GAGNON

_____
MEGGIE ROY

**EXHIBIT A**

**OPTION AGREEMENT**

EXHIBIT C

**EXHIBIT A**

**OPTION AGREEMENT**

## OPTION AGREEMENT

This Option Agreement (the "**Option Agreement**") is entered into as of *April 1st*, 2020 (the "**Option Effective Date**"), by and between Marc Antione Gagnon and Meggie Roy (collectively, "**Optionee**") and Halo's Heart, LLC, a California limited liability company ("**Optionor**"), with reference to the following facts:

A.     Optionor is the owner of that certain real property and improvements thereon located at 72646 Bel Air Road, Palm Desert, CA 92260, as legally described in Exhibit 1, attached hereto and made a part hereof (the "**Property**").

B.     Optionee currently leases the Property pursuant tot hat certain Lease Agreement dated *April 1st*, 2020 by and between Optionor and Optionee (the "**Lease**"). Terms capitalized herein and not otherwise defined shall have the meaning set forth in the Lease.

C.     The parties desire by this Option Agreement to provide Optionee with an irrevocable option to purchase from Optionor the Property, upon the terms and conditions set forth in this Option Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.     <u>Initial Option Payment</u>. Within 5 days following the Option Effective Date, Optionee shall deliver to Optionor the sum of $100[1] (the "**Option Payment**"), as non-refundable consideration for the Option.

2.     <u>Grant of Option</u>. Subject to the terms and conditions of this Option Agreement, Optionor hereby grants to Optionee the irrevocable option to purchase the Property for the Purchase Price (as defined below) (the "**Option**").

3.     <u>Purchase Price</u>. The purchase price for the Property shall be $665,100 (the "**Purchase Price**"). In the event Optionee closes escrow and purchases the Property, the Option Payment and all Rent paid under the Lease as of the close of escrow shall be applied against the Purchase Price.

4.     <u>Option Period</u>. The "**Option Period**" shall commence 60 days prior to the end of the Lease Term and shall terminate at the end of the Lease Term. The Option may be exercised by Optionee no later than 5 p.m. local time in Palm Desert, California, on the day of the expiration of the Option Period, by delivering written notice to Optionor of Optionee's intent to exercise the Option. In the event Optionee fails to exercise the Option in the Option Period or

---

[1] We need some sort of consideration for the option to purchase.

1     Initials:

defaults under any terms of the Lease, the Option will be void and all monies will be retained by Optionor.

5.   <u>Escrow</u>. In the event the Option is exercised, the transaction will be escrowed with an escrow agent selected by Optionor in its sole discretion (the "**Escrow Agent**").

6.   <u>Close of Purchase</u>. If Optionee exercises the Option, Optionor and Optionee shall execute such documents as necessary to close the purchase of the Property for the Purchase Price by the expiration of the Option Period, or such later period as Optionor may specify in its sole discretion, but no later than 90 days after the expiration of the Option Period. This Option, closing escrow, and purchasing the Property is not contingent upon Optionee's ability to obtain financing from a lender. If Optionee exercises the Option, Optionee shall deposit the Purchase Price in escrow with the Escrow Agent prior to the expiration of the Option Period. Title shall be taken subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, and any real estate or property taxes not yet due. At the close of escrow, Optionee shall receive a grant deed conveying title, which title shall vest as designated by Optionee in its sole discretion.

7.   <u>Property Taxes and Other Items</u>. If Optionee exercises the Option, the following items shall be paid current and prorated between Optionor and Optionee as of the close of escrow: real estate and property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to the close of escrow, premiums on insurance assumed by Optionee, payments on bonds and assessments assumed by Optionee, and payment on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. All such items arising after close of escrow, including, but not limited to, any supplemental tax bills for any period after close of escrow, shall be paid by Optionee. Prorations shall be made based on a 30-day month. All closing costs are the sole responsibility of Optionee.

8.   <u>Condition of Property</u>. If Optionee exercises its Option, the Property is sold "AS-IS" in its present physical condition as of the Option Effective Date. Prior to the Option Period, Optionee shall have the right, at its sole expense, to conduct inspections, investigations and other studies to satisfy itself of the condition of the Property. **Optionee is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Optionor may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current law, or have had permits issued.**

9.   <u>Disclosures</u>. Attached as Exhibit 2 are the following disclosures:

   a.   Real Estate Transfer Disclosure Statement
   b.   Seller Property Questionnaire
   c.   Statewide Buyer and Seller Advisory
   d.   Water Heater and Smoke Detector Statement of Compliance
   e.   Water Conserving Plumbing Fixtures and Carbon Monoxide Detector Notice

2   Initials:  SPG   ULG   NG

f.   Statutory Natural Hazard Disclosure Statement and Acknowledgment of Receipt

g.   Lead-Based Paint and Lead-Based Paint Hazards Disclosure, Acknowledgement, and Addendum

h.   Square Footage and Acreage Advisory

10.   Miscellaneous.

a.   Notices.  Any notices relating to this Option Agreement, and any notice, request, demand, approval, disapproval, statement or other communication required or permitted hereunder must be in writing and delivered by overnight service (such as FedEx, UPS, etc.), hand delivery, certified U.S. Mail, or to the email address set forth below. Each of the parties shall promptly notify each other of any change of contact information. A notice will be deemed to have been received on (a) the date of delivery, if delivered by hand or email during regular business hours or if delivered via overnight service; or (b) on the third business day following mailing by certified U.S. mail to the address set forth below:

If to Optionor:²                      Halos Heart ~~~~~~~~ LL C
                                      _____
                                      Email: SaSGAGAN I @ Gmail.Con

If to Optionee:³                      72646 Bel Air Road
                                      Palm Desert, CA 92260
                                      Email: marcgagnon 101 @ gmail.com

c.   Commission.  Optionee and Optionor each represent and warrant to the other that it has had no dealing with any person, firm, broker or finder in connection with the negotiation of this Option Agreement and the consummation of the transaction contemplated hereby, and that no broker or other person, firm or entity is entitled to any commission or finder's fee in connection with said transaction. Optionee and Optionor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any broker, finder or other person by reason of any dealing or actions of the indemnifying party, including any costs, expenses, including attorneys' fees, reasonably incurred with respect thereto.

d.   Assignment.  Optionor shall have the right to assign this Option Agreement upon delivering written notice to Optionee, including in connection with an exchange under Section 1031 of the Internal Revenue Code ("**1031 Exchange**"). Optionee shall cooperate and execute any documents necessary in connection with any such 1031 Exchange. Optionee shall have no right to assign its rights or obligations under this Option Agreement, directly or

---

² Need Halos Heart address and email for notices.

³ Need Marc/Meggie email for notices.

3        Initials:   _____   _____   _____

indirectly, by operation of law, or otherwise, without the prior written consent of Optionor, which may be withheld in Optionor's sole and absolute discretion.

e.   Entire Agreement.  This Option Agreement and the Exhibits attached hereto which are incorporated herein and made a part hereof embody the entire agreement of the parties regarding the subject matter hereof.  All prior negotiations, agreements and representations, whether oral or written, are merged herein. This Option Agreement may not be altered or modified, except by an instrument in writing signed by all parties (which may be in counterparts); nor may any provision be waived by a party unless in writing signed by such party.

f.   Benefit of Agreement.  This Option Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

g.   Governing Law.  This Option Agreement shall be governed by and construed in accordance with the internal laws of the State of California.

h.   Business Day.  Unless otherwise specified in this Option Agreement, all references to days in this Option Agreement are references to calendar days, and in computing any time period provided for in this Option Agreement or by law, the day of the act or event from which the period of time runs shall be excluded, and the last day of such period shall be included, unless it is Saturday, Sunday or a federal legal holiday, in which case, shall run until the end of the next day which is not a Saturday, Sunday or federal legal holiday.

i.   Captions.  The captions of the sections and paragraphs of this Option Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of this Option Agreement, or the intent of any provision hereof.

j.   Severability.  In case any one or more of the provisions contained in this Option Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect by a court, arbitrator or administrative agency having jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Option Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

k.   Provisions Negotiated and Independent.  Each and every provision of this Option Agreement has been independently, separately and freely negotiated by the parties as if this Option Agreement were drafted by all parties hereto.  The parties, therefore, waive any statutory or common law presumption which would serve to have this document construed in favor of, or against, any party.

l.   Authority.  Each individual signing this Option Agreement warrants and represents that he or she has the full authority to execute this Option Agreement on behalf of the party on whose behalf he or she so signs, that he or she is acting within the scope of such

4     Initials: _____  _____  _____

.hority, and that this Option Agreement shall be binding upon and enforceable against the
rty on whose behalf he or she so signs by virtue of such signature.

[SIGNATURE PAGE IMMEDIATELY FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Option Agreement as of the Option Effective Date.

**OPTIONOR:**

HALO'S HEART, LLC

By _____

Name: Sarah Gagan

Title: Managing Member

**OPTIONEE:**

_____

MARC ANTIONE GAGNON

_____

MEGGIE ROY

6      Initials: _____ _____ _____

**Exhibit 1**

**Legal Description of Property**

The real property in the City of Palm Desert, County of Riverside, State of California, described as:

Lot 2 of Palms to Pines Estates No. 1 as shown by map on file in Book 26, Pages 93 and 94 of Maps in the office of the County Recorder of Riverside County, California

APN: 628-181-002-0

7        Initials:

**Exhibit 2**
**Disclosures**

8    Initials: