1  BRIAN S. HARNIK, ESQ.  (SBN 135724)
   MARY E. GILSTRAP, ESQ. (SBN 150941)
2  ANDREW G. MONTEZ, ESQ. (SBN 324188)
   **ROEMER & HARNIK LLP**
3  45-025 Manitou Drive
   Indian Wells, California 92210
4  Telephone (760) 360-2400
   Facsimile (760) 360-1211
5  email: bharnik@rhlawfirm.com

6  ATTORNEYS FOR:
   Marc Antoine Gagnon and Meggie Roy
7

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  SARAH GAGAN, an individual, CLAIRE GAGAN, an individual, HALO'S HEART, LLC, a California Limited Liability Company | Case No.: 5:22-cv-00680-SSS-SP |
| 14                Plaintiff, | **DEFENDANTS MARC ANTOINE GAGNON AND MEGGIE ROY'S** |
| 15  v. | **ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND FIRST AMENDED** |
| 16 | **COUNTER CLAIM FOR:** |
| 17  MARC ANTOINE GAGNON, an individual, MEGGIE ROY, an individual, MARIEVE SIMARD, an individual, ALAIN POIRIER, an individual, and DOES 1-280, inclusive, | **1.   DECLARATORY RELIEF;** |
| 18 | **2.   UNJUST ENRICHMENT/ RESTITUTION;** |
| 19                Defendants. | **3.   BREACH OF ORAL CONTRACT;** |
| 20  MARC ANTOINE GAGNON, an individual; MEGGIE ROY, an individual and Roes 1-10, inclusive, | **4.   DEFAMATION;** |
| 21 | **5.   CONVERSION;** |
| 22                Cross-Complainants | **6.   UNJUST ENRICHMENT/ QUANTUM MERUIT;** |
| 23  v. | **7.   ACCOUNTING;** |
| | **8.   BREACH OF CONTRACT;** |
| 24  SARAH GAGAN, an individual; CLAIRE GAGAN, an individual, HALO'S HEART, LLC, a California limited liability company, and Roes 1-10, inclusive, | **9.   BREACH OF FIDUCIARY DUTY;** |
| 25 | **10.  CONSTRUCTIVE TRUST; AND** |
| 26 | **11.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| 27                Cross-Defendants. | |

28

---

- 1 -

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

Defendants Marc Antoine Gagnon (hereinafter "Marc") and Meggie Roy (hereinafter "Meggie") (collectively referred to as "Defendants"), by and through their counsel, Roemer & Harnik, LLP, for their answer to Plaintiff Sarah Gagan, Claire Gagan and Halo's Heart, LLC's First Amended Complaint (collectively "Plaintiffs"), deny all factual allegations contained in the headings and hereby admit, deny and allege as follows:

## JURISDICTION AND VENUE

1.      Defendants lack sufficient information to admit or deny the allegation in Paragraph 1 that diversity jurisdiction exists because it is unclear whether Plaintiffs are legal citizens of the State of Indiana, and on that basis, deny the allegation. The remaining portion of the paragraph contains conclusions of law to which no response is required.

2.      Denied in part; admitted in part. Paragraph 2 contains conclusions of law to which no response is required. Defendants admit, however, that they reside in this district and the events giving rise to the claims occurred in this district.

## NATURE OF THE ACTION

3.      Admitted in part; denied in part. Defendants admit that Plaintiff's Complaint does contain the allegations and relief stated in Paragraph 3. Defendants deny the veracity of these claims, and deny that Plaintiffs are entitled to any relief whatsoever.

## THE PARTIES

4.      Admitted in part; denied in part. Paragraph 4 contains conclusions of law as to the term "citizens" to which no response is required. Defendants admit, however, that Plaintiffs are over the age of 18. Defendants lack sufficient information to admit or deny whether Sarah and Claire Gagan are citizens of the State of Indiana for diversity jurisdiction purposes, and therefore deny the allegation on that basis.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

5.      Admitted in part; denied in part.  Defendants admit that Plaintiff Sarah Gagan is the sole member of Plaintiff Halo's Heart, and that Halo's Heart is organized under the laws of the State of California, doing business in Riverside County, California.  Paragraph 5 contains conclusions of law as to the term "citizen" to which no response is required.  Defendants lack sufficient information to admit or deny whether Sarah and Claire Gagan are citizens of the State of Indiana for diversity jurisdiction purposes, and therefore deny the allegation on that basis.

6.      Admit.

7.      Admit.

8.      Defendants admit they are married. The remaining allegations are denied.

9.      Defendants admit that they met Plaintiff Sarah Gagan in Berkeley California in 2016. The remaining allegations of the paragraph are denied.

10.      Admitted only to the extent that Plaintiff Sarah Gagan returned to the desert.  The remainder of the allegation is denied.

11.      Denied.

12.      Admitted only to the extent that the real property was purchased on or about February 11, 2020.  The remainder of the allegation is denied.

13.      Admitted in part and denied in part.  Admit that Defendants entered into a written lease with Halo's Heart; deny that it was dated February 1, 2020; deny that Exhibit A to the First Amended Complaint is the lease that Defendants signed, particularly as it appears to be a draft with questions in the footer, and deny that Halo's Heart, the purported lessor, was in existence as of February 1, 2020 and thus legally able to enter into any contract, as Halo's Heart was formed on or about March 9, 2020.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

14.     As the lease attached to the First Amended Complaint appears to be fraudulent, and which suddenly appeared after Plaintiffs claiming for months that they did not have a copy of a  signed lease, the entire paragraph is denied.

15.     Admit that Exhibit "A" to the First Amended Complaint speaks for itself; denied as to its authenticity or enforceability.

16.     Deny that the option agreement was entered into on April 1, 2020; admit that the option agreement was entered into by Defendants on or about April of 2021, which was back-dated by Plaintiffs Halo's Heart and Sarah Gagan.

17.     Admit to the extent that Defendants have occupied the Palm Desert property since its purchase which closed on February 12, 2020.  The remainder of the paragraph is denied.

18.     Denied.

19.     Admit a demand to leave was made; deny that any such demand was made pursuant to the terms of any lease.

20.     Defendants lack sufficient information to admit or deny this paragraph, so it is denied on that basis.

21.     Denied.

22.     Denied.

23.     Admitted to the extent that Plaintiff Sarah Gagan purchased a jaguar automobile for Defendants and that she put the title into the name of Defendant Marc Gagnon.  Deny the remainder of the paragraph.

24.     Denied.

25.     Admitted in part; denied in part.  Defendants admit that Sarah purchased a Mercedes Benz for Defendant Marc Gagnon, who is still in possession of the vehicle. The remaining allegations are denied.

26.     Denied.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

- 4 -

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

27. Admitted part; denied in part. Defendants admit that Plaintiff Sarah Gagan spoke with them about her intention to build a home in Utah. Defendants deny the remaining allegations in the paragraph.

28. Admitted in part; denied in part. Defendants admit that Sarah ultimately decided against building a house in Utah; deny the remainder of the paragraph.

29. Admit that Plaintiff Sarah Gagan as trustee of her trust purchased the Montecito property.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Deny all allegations in the paragraph other than the fact that Defendant Meggie Roy assisted contractors by cutting tiles and that she is not licensed as a contractor by the State of California.

37. Denied to the extent that claimed facts are incomplete.

38. Denied.

39. Admit only to the extent that Defendant Marc Gagnon told Plaintiff Sarah Gagan that he had experience with designing websites within the time frame referenced. Deny the remainder of the paragraph.

40. Admitted, other than the statement that Plaintiff Sarah Gagan stated she wanted to hire both Defendants in connection with designing a website and logo; Defendants lack sufficient information to admit or deny the statement that Plaintiff Sarah Gagan offered to hire both Defendants on the basis of their representations, and on that basis, the allegation is denied.

41. Admit.

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

42.   Admit.

43.   Denied.

44.   Denied.

45.   Denied.

46.   Denied.

47.   Denied.

48.   Denied.

49.   Denied.

50.   Denied.

51.   Denied.

52.   Denied.

53.   Denied.

54.   Denied.

## FIRST CLAIM FOR RELIEF

55.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

56.   Admitted in part; denied in part.  Defendants admit that Halo's is the current record title owner of the Bel Air Home.  Defendants deny that Halos' was the record title owner of the Bel Air Home at all relevant times.

57.   Admitted to the extent that Defendants are in possession of the Bel Air Property; deny that they took possession on February 14, 2020.

58.   Denied.

59.   Denied.

60.   Denied.

61.   Admit that the First Amended Complaint speaks for itself as to what relief Plaintiff Halo's Heart is seeking.

- 6 -

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**

GAGAN V. GAGNON

62.     Denied. No such relief appears to be sought in the First Amended Complaint.

63.     In response to this paragraph, Defendants incorporate by reference and re-allege their responses to each of the above-paragraphs as if full set forth herein.

64.     Denied.

65.     Denied.

66.     Denied as to the date of possession. The remainder of the allegation is admitted.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

## THIRD CLAIM FOR RELIEF

71.     Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied, and Exhibit E contradicts this allegation.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

*ROEMER & HARNIK LLP*
*45-025 MANITOU DRIVE*
*INDIAN WELLS, CALIFORNIA 92210*

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

## FOURTH CLAIM FOR RELIEF

96.     Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

97.     Denied.

98.     Denied.

99.     Denied.

100.   Denied.

101.   Denied.

102.   Denied.

103.   Denied.

104.   Denied.

105.   Denied.

106.   Denied.

107.   Denied.

108.   Denied,

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
Gagan v. Gagnon

ROEMER & HARNIK LLP
45-025 Manitou Drive
Indian Wells, California 92210

**ROEMER & HARNIK LLP**
*45-025 Manitou Drive*
*Indian Wells, California 92210*

109.   Denied,

110.   Denied.

111.   Denied.

112.   Denied,

113.   Denied.

## FIFTH CLAIM FOR RELIEF

114.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

115.   Denied.

116.   Denied.

117.   Denied.

118.   Denied.

119.   Denied.

120.   Denied.

121.   Admit only to the extent that the First Amended Complaint speaks for itself as to the relief sought by Plaintiffs.

122.   Denied.

## SIXTH CLAIM FOR RELIEF

123.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

124.   Denied.

125.   Denied.

126.   Admit only to the extent that the alleged lease attached as Exhibit "A" speaks for itself.  Deny that Defendants entered into that lease or that the lease is legitimate.

127.   Denied.

128.   Denied.

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
Gagan v. Gagnon

129.   Denied.

130.   Denied.

131.   Denied.

132.   Admit.

133.   Denied.

134.   Denied.

135.   Denied.

136.   Denied.

137.   Denied.

138.   Denied.

139.   Denied.

140.   Denied.

141.   Denied.

142.   Denied.

143.   Denied.

144.   Denied.

145.   Denied.

146.   Denied.

147.   Denied.

148.   Denied.

149.   Denied.

150.   Denied.

151.   Denied.

152.   Admit that Plaintiff Sarah Gagan has a small business selling embellished guitars and wanted Defendant Marc Gagnon to create a website; deny that Defendant Marc Gagnon "convinced" her to hire him.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

153.   Deny with the exception that Defendant Marc Gagnon did construct a website and provided other services to Sarah Gagan at her request.

154.   Denied.

155.   Denied.

156.   Denied.

157.   Admit only to the extent that the First Amended Complaint speaks for itself.

158.   Denied.

## SEVENTH CLAIM FOR RELIEF

159.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

160.   Denied.

161.   Denied.

162.   Denied.

163.   Denied.

164.   Denied.

## EIGHTH CLAIM FOR RELIEF

165.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

166.   Paragraph 166 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 166 are denied.

167.   Deny all allegations other than Plaintiff Claire Gagan is over the age of 65.

168.   Denied. The First Amended Complaint is devoid of any facts surrounding any property of Plaintiff Claire Gagan that was taken by Defendants;

169.   Denied.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

170.   Denied.

171.   Denied.

172.   Denied.

173.   Denied.

174.   Denied,

175.   Denied.

## NINTH CLAIM FOR RELIEF

176.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

177.   Denied.

178.   Denied.

179.   Denied.

180.   Denied.

## TENTH CLAIM FOR RELIEF

181.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

182.   Admit.

183.   Denied to the extent that Defendant Marc Gagnon was not a party to any agreement reached between Plaintiff Sarah Gagan and Defendant Meggie Roy regarding Roy's compensation.

184.   Paragraph 184 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 184 are denied.

185.   Paragraph 185 states conclusions of law to which no responsive pleading is required. To the extent a responsive pleading is required, the allegations in Paragraph 185 are denied.

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

## ELEVENTH CLAIM FOR RELIEF

186.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

187.   Denied.

188.   Denied.

189.   Denied.

190.   Denied.

191.   Denied.

192.   Paragraph 192 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 192 are denied.

193.   Paragraph 193 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 193 are denied.

## TWELFTH CLAIM FOR RELIEF

194.   Defendants incorporate by reference their answers to the preceding paragraphs as if set forth at length herein.

195.   Denied.

196.   Denied with the exception of the statement that Defendants coordinated and oversaw contractors.

197.   Denied.

198.   Denied.

199.   Denied.

200.   Paragraph 200 states conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, the allegations in Paragraph 200 are denied.

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

_ROEMER & HARNIK LLP_
_45-025 MANITOU DRIVE_
_INDIAN WELLS, CALIFORNIA 92210_

1       201.   Paragraph 201 states conclusions of law to which no responsive

2 pleading is required.  To the extent a responsive pleading is required, the allegations

3 in Paragraph 201 are denied.

### THIRTEENTH CLAIM FOR RELIEF

5       202.   Defendants incorporate by reference their answers to the preceding

6 paragraphs as if set forth at length herein.

7       203.   Denied.

8       204.   Denied.

9       205.   Denied.

### PRAYER FOR RELIEF

11      Defendants deny that Plaintiffs are entitled to the relief requested in the First

12 Amended Complaint.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

15       206.   The First Amended Complaint fails to state a claim upon which relief

16 can be granted.

### Second Affirmative Defense

18       207.   Plaintiffs' claims are barred, in whole or part, by the doctrines of

19 waiver, laches and/or unclean hands.

### Third Affirmative Defense

21       208.   Plaintiffs' claims are barred, in whole or in part, by the applicable

22 statutes of limitation.

### Fourth Affirmative Defense

24       209.   Plaintiffs' claims are barred in whole or in part because they have not

25 sustained any legally cognizable injury or damage as a result of Defendants'

26 purported actions or omissions.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

### Fifth Affirmative Defense

210.   The First Amended Complaint fails to state facts entitling Plaintiffs to injunctive relief because there is no threat of immediate or continuing harm.

### Sixth Affirmative Defense

211.   Plaintiffs have failed to mitigate any damages that they have suffered.

### Seventh Affirmative Defense

212.   Plaintiffs are barred from recovery under the purported causes of action in the First Amended Complaint because Plaintiffs consented to and acquiesced in the complained-about conduct.

### Eight Affirmative Defense

213.   Defendants allege that any injuries suffered by Plaintiffs as alleged were caused in whole or in part by acts or omissions of a third party over which Defendants had no control.

### Ninth Affirmative Defense

214.   If Plaintiffs suffered any losses, which Defendants deny, then said damage or losses were solely caused by Plaintiffs' own actions.

### Tenth Affirmative Defense

215.   Plaintiff Claire Gagan's financial elder abuse claim is barred by her failure to plead any facts with particularity.

### Eleventh Affirmative Defense

216.   Plaintiffs' claims were brought in bad faith and without any cognizable legal foundation.

### Twelfth Affirmative Defense

217.   Defendants allege that, at all times and places alleged in the First Amended Complaint, Plaintiffs failed to exercise ordinary and reasonable care, and such negligence and carelessness was a proximate cause of some portion, up to and including the whole, of the alleged injuries and damages, if any, and Plaintiffs'

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

recovery therefore should be barred or reduced according to law, up to and including the whole thereof.

### Thirteenth Affirmative Defense

218.   Defendants allege that the causes of action in the First Amended Complaint, and each of them, are uncertain and ambiguous as to the facts upon which Plaintiffs base their claims.

### Fourteenth Affirmative Defense

219.   Defendants allege that Plaintiffs have not fully and fairly performed all of the conditions precedent to any alleged obligation of Defendants.

### Fifteenth Affirmative Defense

220.   Defendants allege that Plaintiffs have not yet incurred damages or losses with respect to this action and that the First Amended Complaint is not ripe for adjudication.

### Sixteenth Affirmative Defense

221.   Plaintiff Sarah Gagan and Halo's Heart have failed to comply with the applicable terms and conditions of contracts which governed the relationship between Plaintiffs and Defendants.

### Seventeenth Affirmative Defense

222.   Defendants allege that this court lacks diversity jurisdiction over the parties.

### Eighteenth Affirmative Defense

223.   Defendants allege that this action cannot proceed because Plaintiff has failed to join one or more indispensable parties.

### Nineteenth Affirmative Defense

224.   Defendants allege that Plaintiffs have not suffered any damage or injury that was actually or proximately caused by any act or omission of Defendants.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

### Twentieth Affirmative Defense

225.    Plaintiffs are barred from recovery on their First Amended Complaint based on their failure to disclose all material facts to Defendants, who were justified in relying on information and promises made by Plaintiffs.

### Twenty First Affirmative Defense

226.    Defendants acted reasonably and in good faith at all times material hereto based on the relevant facts and circumstances known by them.  Accordingly, Plaintiffs are barred from any recovery in this action.

### Twenty Second Affirmative Defense

227.    Any statements of fact or opinion made by Defendants to Plaintiffs were true, or if not true, were reasonably believed to be true at the time they were made.

### Twenty Third Affirmative Defense

228.    Any misrepresentation or omission alleged in the First Amended Complaint was not material and not actually or reasonably relied upon by Plaintiffs.

### Twenty Fourth Affirmative Defense

229.    Any reliance by Plaintiffs on any purported misrepresentations alleged in the First Amended Complaint was both unreasonable and/or without justification.

### Twenty Fifth Affirmative Defense

230.    Defendants had no duty to disclose any purported facts as alleged in the First Amended Complaint.

### Twenty Sixth Affirmative Defense

231.    Defendants allege that, at all times mentioned herein, there was, has been, and continues to be a material failure of consideration on the part of Plaintiffs Sarah Gagan and Halo's Heart, as a consequence of which Defendants' duty of performance has been discharged.

### Twenty Seventh Affirmative Defense

232.    The First Amended Complaint was brought without reasonable care and

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

without a good faith belief that there was a justifiable controversy under the facts and the law which warranted the filing of the First Amended Complaint against Defendants.

### Twenty Eighth Affirmative Defense

233.   Plaintiffs' claims are precluded to the extent that Defendants's conduct caused no damages to Plaintiff.

### Twenty Ninth Affirmative Defense

234.   Any recovery by Plaintiffs against Defendants under the First Amended Complaint would constitute unjust enrichment of Plaintiffs and is therefore barred.

### Thirtieth First Affirmative Defense

235.   Plaintiffs have ratified the acts of Defendants and are barred from obtaining any relief in this action due to that ratification.

### Thirty First Affirmative Defense

236.   Defendants allege that they are entitled to an offset for amount that Plaintiffs continue to owe for services provided, and any damages paid to Plaintiff which would result in a double recovery.

### Thirty Second Affirmative Defense

237.   Plaintiffs' claims are barred by the doctrines of equitable and judicial estoppel.

### Thirty Third Affirmative Defense

238.   Defendants were excused from performing the terms of any contract alleged in the complaint due to Plaintiffs' failure to act.

### Thirty Fourth Affirmative Defense

239.   Defendants were ready, willing and able to perform the terms of agreements reached with Plaintiffs, and Plaintiffs prevented and frustrated such performance.

*ROEMER & HARNIK LLP*
*45-025 MANITOU DRIVE*
*INDIAN WELLS, CALIFORNIA 92210*

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

### Thirty Fifth Affirmative Defense

240.    Plaintiffs have failed to plead fraud and acts of elder abuse with specificity.

### Thirty Sixth Affirmative Defense

241.    Plaintiffs' claims are barred as a matter of law as the First Amended Complaint makes numerous false claims.

### Thirty Seventh Affirmative Defense

242.    The equities of the case do not preponderate in favor of Plaintiffs.

### Thirty Eighth Affirmative Defense

243.    Plaintiffs have failed to give proper notice of breach of contract.

### Thirty Ninth Affirmative Defense

244.    Plaintiffs' claims are barred by the parol evidence rule.

### Fortieth Affirmative Defense

245.    Any damages suffered by Plaintiffs are completely speculative in nature.

### Forty First Affirmative Defense

246.    Defendants' conduct is justified due to Plaintiffs' default in their obligations to Defendants.

### Forty Second Affirmative Defense

247.    Plaintiffs have failed to plead fraud with the requisite particularity.

### Forty Third Affirmative Defense

248.    Plaintiffs have failed to allege any specific facts as to any property taken from Plaintiff Claire Gagan.

### Forty Fourth Affirmative Defense

249.    The Bel Air property was intended to be a gift to Defendants by Plaintiffs Sarah Gagan and Halo's Heart LLC.

### Forty Fifth Affirmative Defense

250.    Defendants allege that they may have additional defenses that cannot be

articulated due to Plaintiff's failure to particularize her claims, due to the fact that Defendants do not have copies of certain documents bearing on Plaintiff's claims and due to Plaintiffs' failure to provide more specific information concerning the nature of the damage claims and claims for certain costs which Plaintiffs allege that Defendants may share some responsibility.  Defendants therefore reserve the right to assert additional defenses upon further particularization of Plaintiff's claims, upon examination of the documents provided, upon discovery of further information concerning the alleged damage claims and claims for costs, and upon the development of other pertinent information.

## COUNTER-CLAIM

Defendants and Cross-Complainants Marc Gagnon and Meggie Roy, for their counter-claims against Cross-Defendants Claire Gagan, Sarah Gagan and Halo's Heart LLC, hereby allege as follows:

## PARTIES

251.   Cross-Complainant Marc Antoine Gagnon ("Marc") was and is an individual residing in the City of Palm Desert, County of Riverside, State of California;

252.   Cross-Complainant Meggie Roy ("Meggie") was and is an individual residing in the City of Palm Desert, County of Riverside, State of California;

253.   Cross-Defendant Claire Gagan ("Claire") is an individual residing in Palm Desert, County of Riverside, State of California, who claims that the state of Indiana is her residence state for diversity jurisdiction purposes in her First Amended Complaint filed in this action;

254.   Cross-Defendant Sarah Gagan ("Sarah") is an individual residing in Palm Desert, County of Riverside, State of California, who claims that the state of Indiana is her residence state for diversity jurisdiction purposes in her First Amended Complaint filed in this action;

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
Gagan v. Gagnon

255.   Cross-Defendant Halo's Heart LLC ("Halo's") is a limited liability company organized under the laws of the State of California, whose principal place of business is located in Palm Desert, California, but which claims diversity jurisdiction due to Cross-Defendant Sarah Gagan's claimed residence in the State of Indiana in the First Amended Complaint on file in this action, as Cross-Defendant Sarah Gagan is the only member.

256.   Cross-Complainants are ignorant of the true names and capacities of the Cross-Defendants sued as Roes 1-10, inclusive, and therefore sues such Cross-Defendants by these fictitious names.  All Cross-Defendants are collectively referred to as Cross-Defendants.  Cross-Complainants will amend this Cross-Complaint to allege the true names and capacities when ascertained.  Cross-Complainants are informed and believe and on that basis allege that each Roe Cross-Defendant is responsible for Cross-Defendants' damages as alleged in this Cross-Complaint and should be held liable to Cross-Complainants with respect to the matters alleged in the Cross-Complaint in some or all of the subject matters to be adjudicated in this Cross-Complaint.

257.   Cross-Complainants are informed and believe and thereon allege that at all times relevant hereto, each Cross-Defendant acted as the agent, servant and/or employee or representative of the others, and that each acted within the scope of such agency, representation or employment.

## JURISDICTION AND VENUE

258.   It appears that this Court has diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) because the matters in controversy exceed the sum or value of $75,000.00, exclusive of interests and costs, and the matter appears to be between citizens of the State of Indiana and Canadian citizens residing in California, based upon Plaintiffs' representations.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

259.   Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) because Cross-Defendants both reside in this District and have asserted that venue is appropriate in this District by virtue of their First Amended Complaint and because the events giving rise to the claims asserted herein arose here.

## NATURE OF THE CROSS-COMPLAINT

260.   This amended cross-complaint is being brought for declaratory relief; unjust enrichment; restitution, breach of oral contract; defamation; conversion; unjust enrichment/quantum meruit; accounting; breach of contract, breach of fiduciary duty; constructive trust and intentional infliction of emotional distress  as set forth more specifically below against Claire Gagan, Sarah and Halo's Heart.  By these claims, Cross-Defendants seek recovery of all damages, including consequential, special, presumed and punitive, recovery of all of their costs and attorneys fees as allowed by law, as well as prejudgment interest.

## FACTUAL ALLEGATIONS

261.   Claire and Sarah, mother and daughter respectively, are extremely wealthy individuals who reside for extended periods of time at their homes in the Big Horn community in Palm Desert.  Both of them own multiple properties around the United States, and both of them have claimed in this proceeding that Indiana is their state of residence.

262.   Meggie is a Canadian citizen from the province of Quebec, and at all times herein mentioned, had the legal right to reside in California. Meggie is a multi-disciplinary artist, with an honors degree in Applied Arts, and a bachelor's degree in graphic design, during which time she did a specialization in European Design in Aix-en-Provence in France.  Meggie also received instruction in jewelry design and fabrication, having taken design and fabrication classes in both Montreal, Canada and San Francisco.  Meggie has also taken multiple classes in interior design and architectural design and still takes classes in those areas.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

263.   Following her obtaining her degree in graphic design in 2009, Meggie started her own graphic design business in Quebec which offered services such as web design and publishing, marketing, promotional items, packaging, visual brand identity and photography.  Meggie's native tongue is French, although she speaks English fluently.

264.   Marc is a Canadian citizen from the province of Quebec, and all times mentioned herein, had the legal right to reside in California. Marc's native tongue also is French, but he speaks English fluently as well.  Marc has a bachelor's degree in business administration and multiple certifications in online marketing and web development. Marc worked for years for the Fairmont Hotel and Resort company at the Queen Elizabeth Hotel in Montreal. In 2016, the Queen Elizabeth Hotel was closed for extensive renovations expected to last for more than a year, and Marc was given the opportunity to do an intra-company transfer and work for other hotels owned by the Fairmont Hotel company.  He accepted an offer to be the food and beverage outlets manager at the Claremont Hotel in Berkeley, where he managed the lobby bar, pool club snack bar, in-room dining and food and beverage operations of the casual dining restaurant at the hotel.

265.   In or about 2016, Marc met Sarah at the Claremont Hotel, where she was staying  as she attended a culinary course in Berkeley.  Sarah spent her evenings in the bar of the hotel, and Marc got to know her as he accommodated special requests that Sarah made, such as asking that the hotel carry certain beverages that she liked to drink, and making special food and beverage requests for in-room dining.

266.   Marc and Sarah became acquaintances.  When Sarah learned that Meggie had a degree in graphic design, she asked if she could hire Meggie to prepare a culinary school presentation for her as part of her course work.  Sarah was delighted with Meggie's work, and Sarah, Marc and Meggie developed a friendship. Additionally, Marc and Meggie developed a friendship with two friends of Sarah,

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

1  who were staying at the hotel with Sarah to both keep her company and to keep an

2  eye on her as Sarah abused alcohol and prescription drugs.

3       267.   As the friendship developed, Sarah invited both Marc and Meggie to

4  multiple social outings with her along with the two friends staying with her in

5  Berkeley.

6       268.   Following Sarah's departure from the Claremont Hotel, Marc began

7  looking for other job opportunities in his industry, and both he and Meggie were

8  exploring moving to the San Diego area due to better weather and a cheaper cost of

9  living.  Sarah returned to the Claremont Hotel a few weeks later to pick up some

10  personal items and invited Marc and Meggie to fly on her private jet to the desert

11  and spend time with her at her home at Big Horn.  Meggie and Marc accepted the

12  invitation and flew to the desert with Sarah and two other friends of hers.  Meggie

13  and Marc stayed with Sarah at her home and attended a culinary school graduation

14  party for Sarah at Claire's home at Big Horn.  During the two weeks Marc and

15  Meggie vacationed in the desert, Sarah repeatedly told both of them that they should

16  move to the desert rather than San Diego.

17       269.   In June of 2017, Sarah invited both Marc and Meggie to spend some

18  time with her at her home in Indiana and continued to push the idea that Marc and

19  Meggie should move to the desert.

20       270.   Marc and Meggie liked the desert and moved to the Coachella Valley in

21  October of 2017.  They rented an apartment in Rancho Mirage where they lived for

22  a year. They then rented a condominium for one year, and renewed the lease on that

23  condo for another year.  They saw Sarah at the Gagan family's Thanksgiving and

24  Christmas dinners but spent relatively little time with her.

25       271.   In early 2018, Marc and Meggie opened their own graphic design

26  business, FrogFrenchie LLC, in Palm Springs.

27

28

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

272.   During the year 2019, Sarah, Marc, Meggie and Claire began socializing more together, to the point that they saw each other nearly every day and became very close.  Sarah had been in the process of upgrading her desert home but had gotten into a dispute with her designer, whom she accused of stealing from her, similar to the accusations now being made against Marc and Meggie.  Because Sarah had fired the designer before the project was completed, Meggie assisted Sarah in purchasing furniture and accessories for the house and even created some custom art pieces for the house.

273.   The friendship between the parties continued.  Marc and Meggie flew to Indiana to surprise Sarah on her birthday and she was overjoyed to see them, so much so that she invited them to come back to Indiana to stay with her as a vacation, which Marc and Meggie did.  Additionally, Marc and Meggie flew back to Indiana to support Sarah as her brother was dying of a terminal illness.  During their stay there, her brother passed and Marc was asked to be a pallbearer at his funeral.

274.   In November of 2019, Sarah rented a beach property in Malibu and invited Marc and Meggie to stay there with her.   Meggie and Marc were frequently tasked with small jobs to perform for Sarah while there and willingly did so; Sarah told them that she was happy that for a change people were taking care of her.

275.   Meggie and Marc began to spend more and more time with Sarah and Claire and were in a sense "adopted" by the Gagan family.

276.   On or about December of 2019, the news about the COVID-19 pandemic broke. It was of great concern to the Gagan family due to the declining health of Jim Gagan, Claire's husband and Sarah's father, leaving him at risk for the virus. The Gagan family was very worried and anxious and wanted Meggie and Marc to be close at hand to assist them if needed.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

## The Jaguar and Mercedes

277.   Meggie and Marc continued to spend significant amounts of time with both Sarah, Claire and Claire's husband Jim Gagan, who was in ill health.  In November of 2019, Sarah decided that she wanted to buy a new car for Marc and Meggie as she felt that their current vehicle at that time (a Fiat) was unsafe as it was so small.  Sarah insisted that they get a new vehicle and took them car shopping at a luxury vehicle sales showroom in the desert.   She bought them a Jaguar sports utility vehicle and had it titled in Marc's name.  When Meggie and Marc asked her how she wanted to be repaid, she told them not to worry about it.  Sarah never expressed any desire to be repaid for the vehicle, never asked to be repaid and simply refused to talk about it.

278.   The Jaguar began having mechanical problems shortly after it was purchased.  Claire and Sarah thought the vehicle was unsafe.  Marc hired counsel to represent him with a lemon law claim, which was successful in that a settlement amount of approximately $50,000  for the Jaguar was ultimately remitted to Marc.  Sarah had in the meantime had purchased Marc a replacement Mercedes SUV titled in his name.  When Marc received the settlement check for the Jaguar, he intended that the amount would be offset by the out-of-pocket expenses that he and Meggie had incurred and continued to incur with respect to the work they were performing for Sarah and/or Claire, and such offset would be in lieu of repayment of the $50,000.00.

279.   On information and belief, the Gagans had previously engaged in the practice of gifting cars to employees, friends and family on a regular basis.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

## The Bel Air Property

280.   Meggie and Marc had been talking about buying a house and were looking at houses in Cathedral City.  Sarah felt that Cathedral City was too far away from Big Horn where she and Claire lived, and expressed fears about Meggie and Marc living near "Mexican families" that she considered "dangerous."  Sarah instead on her own volition found a property on 72646 Bel Air in Palm Desert ("Bel Air property"), just a few blocks away from Big Horn, that she thought would be an appropriate house for them.  She told both Meggie and Marc that she would buy them the house and transfer title once the property had closed

281.   In February of 2020, Sarah personally purchased the property on Bel Air. Marc received the keys immediately after the closing, and he and Meggie moved in. Marc and Meggie were assured by Sarah that this was their house and title would be transferred to them.  Sarah made those representations orally and in writing.  There was no discussion between them about Meggie and Marc leasing the house or purchasing the house from Sarah or reimbursing her for the purchase amount.

282.   Marc and Meggie believed that the purchase of the house by Sarah for them was because she wanted both of them to be close by to help her and Claire and Jim Gagan, as the Gagans' need for Meggie and Marc's time and services was rapidly growing.  Sarah expressed to Marc and Meggie that she was concerned about her father's declining health and Claire's age during the COVID-19 pandemic, and that they needed Marc to be the  "man" around the house; that they needed Meggie to assist Claire due to Claire's age and to assist Sarah as well, particularly as Sarah has no children.  Due to the COVID virus, the Gagans had released their staff and sequestered themselves in their home. For a significant amount of time, Marc and Meggie were the only ones allowed at Sarah and Claire's homes at Big Horn, and Marc and Meggie performed at the request of Sarah and Claire, and without recompense, many of the duties formerly performed by Claire and Sarah's staff,

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

such as housekeeping, shopping and food preparation, cooking, cleaning, home organization, seeing after pets, helping with personal tasks such as bill paying, errands and correspondence and generally acting as house managers.

## House Management and Interior Design

283.   In May of 2020, Marc and Meggie visited Sarah and Claire at a property they had newly acquired in Utah, and helped them decorate and furnish the house. Cosmetic changes were personally done by Meggie and Marc themselves as the COVID-19 pandemic was in full swing and no one was allowed at the property by Sarah and Claire other than Marc and Meggie as the Gagans were very fearful of the virus. As a result, Marc became the *de facto* house manager between May and July of 2020.  Sarah said on multiple occasions she loved working with Meggie and she was delighted with the end results. Neither Meggie nor Marc were paid for this work or any other personal tasks that they performed for Sarah.

284.   Upon Meggie and Marc's return to California, Sarah asked them to find her a beach house in California.  Marc and Meggie spent many hours researching properties up and down the entire California coast and selected properties they felt that Sarah would like.   Meggie and Marc were not paid for this work.  Sarah agreed to buy a property in Laguna Beach that Meggie found, and bought it sight unseen, other than photographs and video(s)  in July of 2020.  Marc and Meggie were tasked to help with the transaction and to facilitate various upgrades being requested by both Sarah and Claire for the property.  Meggie was also tasked with furnishing, decorating and accessorizing the property.  Again, Marc became the *de facto* house manager. Sarah and Claire came to the Laguna Beach house after the work had been completed and were delighted with it. Neither Marc nor Meggie were paid for such work.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

285.   In October of 2020, Sarah's personal assistant, Trish, departed from her employ with the Gagans.  Marc was tasked with replacing Trish as house manager for Sarah's property in Palm Desert, and acted in that capacity until September of 2021. Marc was not paid for this work.

## Glitter Guitars

286.   In 2018, Sarah had a small  business called Glitter Guitars, which would either sell classic guitars bedazzled with Swarovski crystals, or would custom decorate a customer's existing guitar or other objects with crystals.  In late 2019, Meggie got involved with the crystallizing projects at Sarah's request due to Meggie's artistic talents and flair for design.  Meggie did so work without being paid.  Sarah asked Meggie to join her in the business as partners, where they would split net profits 50-50, and at one point even discussed Sarah's idea of opening up a store for the business on El Paseo in Palm Desert.  Meggie and Marc designed a logo and brand for Sarah for this business.   Marc was also tasked with creating a website for Glitter Guitars, as well as marketing.  The website, accessible today although Sarah has not paid for its hosting or maintenance for the past two years, states that "Our design team can create computer-generated images for you to approve the design before we start the product. For bespoke designs, please contact us."  The "design team" referenced on the website was Sarah and Meggie.  Meggie designed the artwork that went onto the guitars, in addition to purchasing and organizing inventory, and setting up and furnishing the work studio (the casita behind Sarah's house in Palm Desert).  Additionally, Meggie crystalized champagne bottles, liquor bottles, a motorcycle, a skateboard, a surfboard and various other items, all with her designs and her handiwork.  Meggie was not paid for any of these services.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

287.  Meggie and Sarah worked on Glitter Guitars between November of 2020 until approximately mid-2021, when at Sarah's request, Meggie was tasked with decorating and accessorizing a new property purchased by Sarah in Montecito, California, discussed in more detail below.  Though Sarah promised to split the profits with Meggie 50/50, Meggie was never compensated for any of her work at Glitter Guitars.

### The Utah Property

288.   In the fall of 2020, Sarah and Claire decided to have Meggie work with them in designing a house to be built on a lot in Utah.  Meggie told Sarah that she was taking online classes at the Interior Design Institute and that she had never had such a big project before, but was excited to work on it with Sarah.  Sarah orally offered Meggie $300,000 to assist with the interior design, furnishing and accessorizing of the house as well as designing the architectural layout draft for the architect in Utah.  Meggie worked with the architect and builder until the spring of 2021, when Sarah abandoned the project and decided that she wanted to purchase another house in California instead.  She told Meggie on multiple occasions that her $300,000.00 compensation would not be affected by the change in plans, but that Meggie would be paid the same amount for designing, furnishing and accessorizing the new property Sarah wanted to buy in California.

### The Bel Air Lease and Option Agreement

289.   Despite the fact that Meggie and Marc had been living in the Bel Air property since the purchase closed in early 2020,  Sarah suddenly approached Meggie and Marc and said that she needed them to sign a lease for the Bel Air property, as Sarah's lawyer had advised her it was necessary for legal reasons. Sarah represented to Marc and Meggie that they needed to sign a lease for the property which on information and belief was prepared by Sarah's attorneys, that the

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

start date hadn't been filled in on the lease, and that she was not looking to collect rent from them. She went on to say that she was fine with giving Marc and Meggie a "year to get settled and relax" and that they needed to sign the lease which she represented was just "legally filing the deeds" and that Marc and Meggie needed to sign so because Sarah had to "file these papers."  Being unfamiliar with American real estate practices or California law due to their status as Canadian citizens, Meggie and Marc felt forced to sign a lease in October of 2020, but relied on Sarah's repeated statements that the house was theirs, that she would transfer title to them and the lease was simply a mechanism to provide legal protection in some way for Sarah. They signed the lease at Sarah's house at Big Horn with her house manager Trish present.  The lease was back-dated to March 1, 2020 in handwriting. The lease stated it was between Halo's Heart (a limited liability company formed for Sarah by her attorneys for the purpose of purchasing the Bel Air property) and Meggie and Marc, despite the fact that Halo's Heart was not even in existence as of March 1, 2020, but was formed on or about March 9, 2020.  This lease was the only lease ever signed by Marc and Meggie.

290.   The First Amended Complaint includes, for the very first time, a copy of a lease purportedly signed by Meggie and Marc and this one was back-dated  to February 1, 2020, which was prior to the date the Bel Air property was even purchased, and prior to the formation of Halo's Heart.  Meggie and Marc did not sign this lease and had never seen it prior to its sudden appearance as an exhibit to the First Amended Complaint.  This lease was manipulated and/or forged, on information and belief.

291.   The only persons who have ever had possession of the Bel Air property are Meggie and Marc.  Neither Sarah nor any of her family members have ever lived there or used the property in any way.  Marc and Meggie have paid the property taxes, homeowners insurance premiums as well as spending over $100,000 in

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
Gagan v. Gagnon

improvements to the property.  Marc and Meggie have paid for all maintenance and upkeep since they took possession of the property in February of 2020 when the purchase of the property closed.  Marc received the keys to the property directly from the buyer's agent on February 11, 2020.

292.   After the lease was signed, Sarah and Meggie agreed that the bulk of the $300,000 compensation amount owed to Meggie as part of Sarah's oral contract with her to design the Utah and then the Montecito properties, would be paid directly to a contractor hired by Meggie and Marc to remodel the Bel Air house. Meggie also represented to Sarah, and Sarah agreed, that approximately $50,000 of that compensation would be applied by Sarah to rent purportedly owed under the lease as Marc and Meggie felt that they had no choice but to pay rent.  To that end, Sarah directly paid Meggie and Marc's contractor $100,000 as a deposit to begin the improvements on the Bel Air property.  Sarah was well aware of the planned improvements to the property as Meggie and Marc shared those plans with Sarah, who loved the changes Marc and Meggie were planning on making to the house.

293.   Following the signing of the lease, the first page of which refers to an option to purchase the Bel Air property for $665,100.00, Meggie and Marc realized that they hadn't seen any option agreement and nervous about finalizing their ownership of the property, asked Sarah about it.  This resulted in an unprivileged phone call between the Gagan family's lawyer, Brian Custy, Sarah and Meggie about the issue. Sarah represented during the call that she was not collecting monthly rental payments, that there was no revenue from the property and that the house was Marc and Meggie's.  She asked Custy how an option agreement would work if there were no monthly rent payments.  Custy responded that when the parties were ready, Sarah could simply convey title to Meggie and Marc and Halo's Heart could claim a business loss on its taxes for the transaction.  Meggie and Marc relied upon these statements and signed the option agreement presented to them by

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

Sarah, which on information and belief was drafted by her lawyers, which was also back-dated to a date prior to the date it was actually signed.  The option agreement provides for a 10-year option to Meggie and Marc to purchase the Bel Air property for $665,100.00, and the option period would begin 60 days prior to the end of the lease, which was March 1, 2030.  Marc paid Sarah in cash the $100 option payment called for in the agreement.

### Custom Artwork

294.   Throughout their relationship, Sarah asked Meggie to both design jewelry for her and to repurpose or restore existing jewelry of Sarah's.  Sarah also asked Meggie to create custom artwork for her homes.   Between 2019 and 2021, Meggie undertook over a dozen separate projects at Sarah's request, including crafting a silver necklace, creating a missing setting on a pair of diamond earrings and creating a 24k gold leaf and epoxy guitar painting.  More recently, in January of 2021, at Sarah's request, Meggie crafted a sapphire arrow necklace with matching earrings.  In January of 2021, Meggie was commissioned to create a large custom painting of lyrics to a song by the indie recording artist Youngblud. In March of 2021, Meggie restored an 18k Brother bracelet of Sarah's, including a new clasp, diamond, and engraved anchor.  In or about March of 2021, Meggie was asked to re-size Sarah's David Yurman bracelet. In September of 2021, Meggie created custom heart-shaped emoticon art for Sarah, at Sarah's request. Again, Meggie was never compensated for any of this work.

### The Montecito Property

295.   In April of 2021, Sarah through her trust bought a house in Montecito after looking at a number of different properties with Meggie.  Sarah tasked Meggie to redesign its interior, find contractors to perform the work and supervise the contractors.  This was a full-time job.  Meggie and Marc spent weeks  hours working on the Montecito project without compensation.  Marc became the full-time

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

house manager for the Montecito property, also without compensation.

296.   In July of 2021, Marc and Meggie had a conversation with Sarah and Claire.  They explained that they had taken on too much, were not getting any breaks, could not focus on their own business , and that they were tired.  Sarah and Claire were enraged that Marc and Meggie would dare to complain.  Both women yelled and castigated Marc and Meggie, calling them ungrateful after all they had done for them, how they had both been welcomed into the Gagan family and how dare they claim that they were exhausted.  This meeting devastated Marc and Meggie as they had never been treated by Sarah or Claire like this before.

297.   Shortly thereafter, Marc went on a two-week trip to Canada to see a sick family member and to take care of other business-related matters.  Meggie did not accompany him and stayed at the Montecito house, although the relationship between Meggie and Sarah and Claire was had deteriorated since the yelling incident.

298.   While Marc was in Canada, on or about August 5, 2021 Meggie, Sarah, and Claire were sitting at the kitchen table at the Montecito house.  Seemingly out of nowhere, Sarah told Meggie in a cold, callous manner that Marc had gone to Canada to kill himself, and that his trip was "a goodbye tour."  Horrified, Meggie exclaimed that Marc would never do such a thing.  Claire responded coldly, "Are you sure?"  Meggie was devastated and filled with dread.  Even though Meggie was certain that Marc would do no such thing, Sarah and Claire's comments caused her to doubt her own judgment about Marc.  After reducing Meggie to panic, who was on the verge of tears, Sarah and Claire coolly stood up and walked out of the room, leaving Meggie alone.  Meggie was aghast at their intentional cruelty, particularly as they both knew that Meggie suffered from an anxiety disorder. While Meggie was able to get in touch with Marc and confirm that he was alive and safe, she was afraid to tell him about the comments by Sarah and Claire, as she did not want any

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

confrontation or more ugly scenes with both women, and she remained afraid that something might happen to Marc while he was in Canada.

299.   For two weeks, Marc remained in Canada, unaware of the torment that Meggie was going through.  Meggie's anxiety drastically increased.  She began to experience especially bad migraines – while previous migraines would resolve without medication, Meggie now needed to take multiple medications and was referred to a neurologist for treatment.  She lost sleep, lost weight, and her anxiety levels were very high.

300.   Following Meggie's completion of her design work at the Montecito property in late August, 2021,  Claire and Sarah inexplicably severed their relationship with Meggie and Marc without warning and without Sarah paying Meggie the remaining amount she owed to Meggie for the design work she performed for the Utah and Montecito properties.

## **Defamatory Statements to Friends and Colleagues And Attempts to Interfere with Marc and Meggie's Friendships with Joint Friends**

301.   Following the severance of the relationship, Meggie and Marc are informed and believe and on that basis allege that both Claire and Sarah have defamed them as follows: at a dinner party in the fall of 2021 in which mutual friends of Sarah and Claire and Marc and Meggie were present, Claire told everyone at the table that Meggie and Marc were grifters and con artists.  These statements are false and defamatory on their face and have resulted in smears to Meggie and Marc's good names and reputations.  Marc and Meggie are further informed and believe and on that basis allege that Claire has further orally defamed them by telling persons that they stole money from Sarah's safe, and further orally defamed Marc by telling a joint friend in 2021 that he should change all of the passwords on

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

1   his accounts because Marc was an expert computer hacker who would hack into the

2   friend's accounts.

3       302.   Both Meggie and Marc and Sarah and Claire had close relationships with

4   Jim and Judy Hummer, who stayed with Sarah for months at her hotel in San

5   Francisco to make sure that she didn't overdose.  Following the severance of the

6   relationship between Marc and Meggie and Sarah and Claire, on information and

7   belief, Sarah went to the Hummers' home and told them that they had to either pick

8   being friends with Marc and Meggie, or being friends with her and Claire but could

9   not do both.  On information and belief, the Hummers refused to make such a choice

10  and the relationship between them and Sarah and Claire was abruptly severed by

11  Sarah and Claire.

12      303.   Meggie and Marc are informed and believe and on that basis allege that

13  Sarah also orally defamed both of them when trying to obtain access to a

14  FrogFrenchie account with a vendor in 2021, claiming to the vendor, Burke Decor,

15  that Marc and Meggie were disgruntled employees who had been "fired."  These

16  statements were false and defamatory on multiple levels: Marc and Meggie were

17  never employees of Sarah Gagan, they were not "fired" and they were not

18  disgruntled.  However, such statements denigrated Marc and Meggie with a vendor

19  that they did business with and was intended by Sarah to interrupt that business

20  relationship and to persuade Burke Decor to allow Sarah illegal access to the

21  FrogFrenchie LLC account.

<h3 align="center">First Claim for Relief</h3>

(Declaratory Relief by Meggie Roy and Marc Gagnon against Cross-Defendants
Sarah Gagan and Halo's Heart LLC)

25      304.   Cross-Complainants incorporate herein each and every allegation set

26  forth above as though fully set forth herein.

27      305.   An actual controversy has arisen and now exists relating to the rights

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

1   and duties of the parties herein, in that Marc and Meggie contend that they have not

2   breached the lease they were forced to sign in October of 2020; that the lease

3   attached to the First Amended Complaint is a forgery by Sarah and/or Claire and

4   constitutes a fraud upon this court, that no rent is due and owing under the lease that

5   they signed and that they have already paid the option payment amount and have

6   until 2030 to exercise said option.

7       306.   On the other hand, Sarah and Halo's Heart contend that Marc and

8   Meggie are in breach of the lease they have attached to the First Amended

9   Complaint as the real lease for the Bel Air property (which differs from the lease

10  they attached to their original complaint)  as well as the option agreement, or in the

11  alternative, that both the option agreement and the purported lease be rescinded.

12      307.   Further, an actual controversy exists with respect to Sarah's failure to

13  pay the remainder of the compensation as identified herein to Meggie, as Sarah

14  contends that Meggie and Marc have breached the oral compensation agreement,

15  and that said agreement should be rescinded.  Meggie and Marc contend that Sarah

16  has repeatedly confirmed the terms of the oral compensation agreement, that Marc

17  was not a party to such agreement and that Sarah has breached said agreement.

18      308.   Further, an actual controversy exists with respect the existence of an

19  agreement to repay Sarah for the vehicles she purchased for Marc, and the terms of

20  any such agreement.

21      309.   Meggie and Marc desire a judicial determination of their rights and

22  duties and a declaration as to the existence and terms of a lease for the Bel Air

23  property; whether they are in breach of the lease they signed, whether the lease

24  attached to the First Amended Complaint is a forgery; the validity of the option

25  agreement and whether the option payment has been paid; the existence of an

26  agreement regarding repayment by Marc for the vehicles purchased for him by

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC
GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

Sarah and the terms of any such agreement, and any offsets to be applied by Marc incurring expenses on behalf of Sarah that he paid.

310.   As Halo's Heart is claiming that Marc and Meggie have no ownership or other rights with respect to the Bel Air property, it would be unconscionable and against fundamental principles of justice, equity and good conscience to allow Halo's Heart to retain the benefits of work performed on the Bel Air property by Meggie and Marc, which has added to its desirability and value.  Halo's Heart would be unjustly enriched by the addition of these improvements and Meggie and Marc seek the return of those funds to them.

311.   A judicial declaration is necessary and appropriate at this time so that Marc and Meggie may ascertain their rights and duties under the lease agreement, the option agreement, the agreement to pay compensation to Meggie and any alleged agreement regarding payment for vehicles.  Declaratory relief would shape the parties' future conduct.

## **Second Claim for Relief**

(Unjust Enrichment by Cross-Complainants Meggie Roy and Marc Gagnon against Cross-Defendant Halo's Heart LLC).

312.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

313.   In 2021, $100,000 of the compensation promised to Meggie by Sarah was paid directly as a deposit to the contractor hired by Meggie and Marc to begin work on improvements to the Bel Air property, at Meggie's direction and request. That $100,000 was used directly for improvements to the Bel Air property. Additionally, Meggie and Marc have spent approximately $55,000.00 on additional improvements to the Bel Air property.

314.   As Halo's Heart is claiming that Marc and Meggie have no ownership or other rights with respect to the Bel Air property, it would be unconscionable and

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

against fundamental principles of justice, equity and good conscience to allow Halo's Heart to retain the benefits of work performed on the Bel Air property by Meggie and Marc, which has added to its desirability and value. Halo's Heart would be unjustly enriched by the addition of these improvements and Meggie and Marc seek the return of those funds to them under the theory of unjust enrichment and/or restitution.

### Third Claim for Relief

(Breach of Oral Contract by Cross-Complainant Meggie Roy against Cross-Defendant Sarah Gagan)

315.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

316.   In the fall of 2020, Sarah offered to pay Meggie $300,000 to design and decorate a house to be built on a lot Sarah owned in Utah, which was accepted by Meggie. Meggie immediately began to perform work for Sarah in connection with their oral agreement and worked on the project until the spring of 2021, when Sarah changed her mind and decided to buy another house in California. Sarah told Meggie orally and in writing that the compensation amount would not change, but that her scope of duties would simply change from the Utah project to the Montecito property. Meggie agreed to the change and acted upon it, working at the Montecito property for months with respect to its design and remodel, and even living at the Montecito property on occasion to perform her work for the project.

317.   Meggie performed all of the obligations and conditions with respect to decorating and designing the Montecito property and fulfilled all of her obligations with respect to the project.

318.   Sarah paid a portion of Meggie's compensation by wiring the sum of $100,000 to the contractor chosen by Meggie and Marc to perform a remodel and upgrades on the Bel Air property.

**ROEMER & HARNIK LLP**
*45-025 MANITOU DRIVE*
*INDIAN WELLS, CALIFORNIA 92210*

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

319.   Other than this payment, Sarah has failed to and continues to refuse to pay Meggie the remainder of her compensation.

320.   In good faith, Meggie offered to Sarah that approximately $50,000 of her compensation could be kept by Sarah towards any "rent" due under the purported lease for the Bel Air property.  This left the sum of $150,000.00 due and owing to Meggie upon completion of the Montecito project, which remains unpaid despite demand.

321.   Meggie seeks payment of $150,000 for monies she earned pursuant to an oral agreement, which was later confirmed in writing by Sarah, plus prejudgment interest on said sum.

322.   Meggie has fulfilled all obligations with respect to designing the Utah and Montecito properties for which she was to be paid.

### Fourth Claim for Relief

(For Conversion by Cross-Complainant Meggie Roy and Marc Gagnon against Cross-Defendant Sarah Gagnon)

323.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

324.   While performing services for Sarah with respect to her beach house in Laguna Beach, Marc and Meggie kept their possessions in a room they used regularly there.  Upon severance of the relationship, they were required to remove their property from the house.

325.   Upon arriving at the property to remove their belongings, their hard drive for their computer was sitting on the desk.  When they tried to pick it up to add to the other things they were removing, they were told that they couldn't have it.

326.   The hard drive contained sensitive and confidential information of both Meggie and Marc as well as their business and was not owned by Sarah.  Despite the fact that they have asked that it be turned over to them, Sarah refused and

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

continues to refuse to allow them possession of their property and specifically has done so to be malicious and hateful.

327.    Meggie and Marc did not consent to Sarah taking and retaining their personal property.

328.    As a result of the conversion of this asset, Meggie and Marc have been damaged in an amount to be proven at trial.

329.    The aforementioned conduct was specifically done by Sarah out of maliciousness and with an intent to harm both Meggie and Marc and prevent them from accessing their confidential and proprietary information to cause them harm, and was despicable conduct, particularly considering the fact that Sarah knew the hard drive was not hers, knew that it was Meggie and Marc's, and had no legal right to keep such property and prevent Marc and Meggie from access to their property for no reason other than malice.  This conduct was despicable conduct, and intend to subject Plaintiffs to cruel and unjust hardship in disregard of their rights so as to justify an award of exemplary damages.

### Fifth Claim for Relief

(For Defamation by Cross-Complainants Meggie Roy and Marc Gagnon against Cross-Defendants Sarah Gagan and Claire Gagan)

330.    Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

331.    On information and belief, Marc and Meggie allege as follows:  In the fall of 2021, at a dinner party where friends of Marc and Meggie were present including Jim Hummer and Judy Allen, Claire wrongfully made the following statements about Meggie and Marc which were false and defamatory on their face and not privileged: she said that Marc and Meggie were grifters and con artists.  She also said that they were refugees from Canada, implying that Marc and Meggie had fled Canada to the United States due to criminal or other unsavory matters.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

332.   Also in 2021, Claire verbally told a mutual friend, Jim Hummer, that he should change all of the passwords on his accounts as Marc was an expert computer hacker.

333.   Also in 2021, Claire told third persons that Marc and Meggie had stolen cash from Sarah's safe.

334.   On information and belief, in 2021, Sarah, in an attempt to illegally access the account of FrogFrenchie LLC with a FrogFrenchie vendor, Burke Decor, orally told a representative there that Marc and Meggie were disgruntled employees who had been fired.

335.   All such representations were false.

336   Such false and unprivileged representations by Claire and Sarah were done intentionally to smear the reputations of Marc and Meggie, to interfere with their social and business relationships by stating directly that Marc and Meggie were dishonest and thieves, and by implying that Marc and Meggie had fled Canada due to improprieties there.

337.   The aforementioned conduct was specifically done by Sarah and Claire out of maliciousness and spite, and with an intent to harm both Meggie and Marc by smearing their reputations, subjecting them to ridicule and interfering with their business and social relationships by stating that they were dishonest and had committed crimes.  Such conduct was despicable, as Sarah and Claire knew that their statements were false and unsupported.  They simply intended to smear Marc and Meggie publicly, to shame and humiliate them, to cause them emotional distress, particularly Meggie who they knew had an anxiety disorder, and to subject Meggie and Marc to cruel and unjust hardship, in disregard of their rights, so as to justify an award of exemplary damages.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

## Sixth Claim for Relief

(For Unjust Enrichment/Quantum Meruit by Cross-Complainants Meggie Roy and Marc Gagnon against Cross-Defendants Sarah Gagan and Claire Gagan)

338.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

339.   At Sarah and Claire's explicit and/or implicit direction, Marc and Meggie rendered extensive services to Defendants. Such work included, but is not limited to: (1) managing the Gagan's various houses in Palm Desert, Utah, Laguna Beach, and Montecito; (2) conducting extensive interior design work Interior design work and renovation of the Montecito Property; (4) ten weeks of full time "live-in" help to Sarah, who required extensive supervision due to her substance abuse; (5) graphic design work by Marc and out of pocket expenses for the payment of vendors in creating and maintaining the Glitter Guitars website; (6) custom artwork and jewelry prepared by Meggie at Sarah's request and direction; and (7) event planning and out-of- pocket expenses relating to Sarah's 50th birthday party and the organization of a wedding for a well-known Coachella Valley resident at the Montecito property.

340.   Each and every act made at the request of Sarah and Claire was for their sole benefit, and Meggie and Marc are entitled to compensation for the services they performed in an amount to be adduced at trial but believed to exceed the amount of $50,000.00.

## Seventh Claim for Relief

(For Accounting by Cross-Complainant Meggie Gagnon against Cross-Defendant Sarah Gagan)

341.   Cross-Complainant incorporates herein each and every allegation set forth above as though fully set forth herein.

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

342.   On or about November of 2020, Meggie and Sarah entered into an oral partnership agreement which provided that they would be 50/50 partners in a joint venture called "Glitter Guitars."

343.   By virtue of Meggie's 50% interest in this partnership, a fiduciary relationship was created and existed between Sarah and Meggie.  Accordingly, Sarah owes Meggie a fiduciary duty to disclose all financial information relating to Glitter Guitars to Meggie.

344.   On information and belief, during the course of the operation of Glitter Guitars, Sarah generated revenues and income, a portion of which is due to Meggie by Sarah.  Meggie has not received any income generated by Glitter Guitars and does not know how much income has been received by Glitter Guitars.

345.   The amount of money due from Sarah to Meggie is unknown, and cannot be ascertained without an accounting of the books and records of Glitter Guitars, which are believed to be in the sole custody and control of Sarah.

346.   In the absence of an accounting, Meggie has no adequate remedy at law.

347.   For the foregoing reasons, Meggie is entitled to an accounting.

## **Eighth Claim for Relief**

(For Breach of Contract by Cross-Complainant Meggie Roy against Cross-Defendant Sarah Gagan)

348.   Cross-Complainant incorporates herein each and every allegation set forth above as though fully set forth herein.

349.   Based on Meggie's 50% interest in Glitter Guitars offered by Sarah, Meggie is entitled to 50% of Glitter Guitar's profits and/or net income and/or assets.

350.   In breach of the partnership agreement, since at lease 2020, and continuing to present, Sarah has failed and refused to account for Glitter Guitar's income, assets, and finances, and have failed and refused to distribute to Meggie her

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

share of Glitter Guitar's profits and/or net income and/or assets.

351.   As a legal and proximate result of these breaches, Cross-Complainant has been damaged in an amount to be proven at the time of trial.

## Ninth Claim for Relief

(For Breach of Fiduciary Duty by Cross-Complainant Meggie Roy against Cross-Defendant Sarah Gagan)

352.   Cross-Complainant incorporates herein each and every allegation set forth above as though fully set forth herein.

353.   Based on the foregoing. Meggie alleges that an express partnership agreement was formed between her and Sarah on or about November of 2020 and continued through May of 2021.

354.   Based on this partnership agreement, there existed a fiduciary duty among the partners. Sarah's actions and omissions as alleged herein, including her failure to provide an accounting of the finances, income, expenses, assets and debts of Glitter Guitars; and/or distribute to Meggie her proportionate share of the profits of Glitter Guitars constitutes a breach of Sarah's fiduciary duty owed to Meggie.

## Tenth Claim for Relief

(For Constructive Trust by Cross-Complainant Meggie Roy against Cross-Defendant Sarah Gagan)

355.   Cross-Complainant incorporates herein each and every allegation set forth above as though fully set forth herein.

336.   Based on the foregoing, Meggie alleges that her contractual 50% share of all income and assets of Glitter Guitars collected or earned by Sarah, are held by Sarah as a constructive trustee for the use and benefit of Meggie.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

## Eleventh Claim for Relief

(For Intentional Infliction of Emotional Distress by Cross-Complainant Meggie Roy against Cross-Defendants Sarah Gagan and Claire Gagan)

337.   Cross-Complainants incorporate herein each and every allegation set forth above as though fully set forth herein.

338.   In or about August 5, 2021, Sarah and Claire Gagan coldly and callously, and with an intention to cause pain and suffering, made statements to Meggie that her husband Marc had actually gone to Canada, not for business, but for a "goodbye tour" and that he would kill himself.  Said conduct was intended to cause and did in fact cause severe emotional distress, and/or was done with conscious disregard of the probability of causing such distress. This conduct by Sarah and Claire was extreme and outrageous, and beyond the bounds of what is accepted in a civilized society.  It is not normal or acceptable in society to tell someone who suffers from an anxiety order, who already had been yelled at and criticized, that their beloved husband was planning on killing himself. Such statements imply that Claire and Sarah knew something that Meggie didn't, and given the relationships between the parties and their history together, Meggie was frantic.

339.   As a proximate cause of said conduct, Meggie has suffered and continues to suffer severe emotional distress and mental anguish, and is entitled to monetary damages in an amount according to proof.

340.   Meggie is informed and believes that the wrongful acts and/or conduct alleged herein was done by both Sarah and Claire deliberately and intentionally to be malicious and to hurt Meggie and cause her anguish.  Such vile statements were made by Sarah and Claire to hurt Meggie and cause her harm and in conscious disregard of her emotional or physical well-being. As a result, Meggie is entitled to recover punitive damages against Sarah and Claire.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

# PRAYER FOR RELIEF

## As to the First Claim for Relief for Declaratory Relief:

1. For a declaration as to the existence and terms of any lease between the Halo's Heart, Meggie and Marc in connection with the Bel Air Property;

2. For a declaration as to the legitimacy and validity of the lease Plaintiffs have attached as an exhibit to their First Amended Complaint;

3. For a declaration as to the validity of the option agreement concerning the Bel Air property;

4. For a declaration as to any monies owed as rent by Meggie and Marc to Halo's Heart;

5. For a declaration as to whether the option payment has been made;

6. For a determination as to general and special damages according to proof.

## As to the Second Claim for Relief for Unjust Enrichment/Restitution:

1. For a determination that Halo's Heart would be unjustly enriched if allowed to benefit from the monies expended by Marc and Meggie on the Bel Air property;

2. For restitution of all amounts, according to proof, that Meggie and Marc have expended on the Bel Air property.

## As to the Third Claim for Relief for Breach of Oral Contract:

1. For compensatory damages according to proof; and

2. For general and special damages according to proof.

## As to the Fourth Claim of Relief for Defamation:

1. For compensatory damages according to proof; and

2. For general and special damages according to proof; and

3. For exemplary and punitive damages.

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**
GAGAN V. GAGNON

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**As to the Fifth Claim of Relief for Conversion:**

    1.    For general damages according to proof;

    2.    For exemplary and punitive damages; and

    3.    For treble damages.

**As to the Sixth Claim of Relief for Unjust Enrichment/Quantum Meruit:**

    1.    For a determination that Sarah and Claire Gagan would be unjustly enriched if allowed to benefit from the efforts and monies expended by Marc and Meggie at their request without compensation; and

    2.    For restitution of all services rendered by Meggie and Marc, according to proof.

**As to the Seventh Claim of Relief for Accounting:**

    1.    For an accounting between Sarah and Meggie relating to Glitter Guitars;

    2.    For the amount found to be due from Sarah to Meggie as a result of the accounting and interest on that amount.

**As to the Eighth and Ninth Claims of Relief for Breach of Contract and Breach of Fiduciary Duty:**

    1.    For restitution damages in an amount to be proven at time of trial; and

    2.    For compensatory damages in an amount to be proven at time of trial.

**As to the Tenth Claim of Relief for  Constructive Trust:**

    1.    Imposition of a Constructive Trust on Sarah for all amounts due by Sarah to Meggie.

**As to the Eleventh Claim of Relief for Intentional Infliction of Emotional Distress:**

    1.    For compensatory damages in an amount subject to proof; and

    2.    Punitive damages in an amount to be determined at trial sufficient to punish, penalize, and/or deter Cross-Defendants.

**As to all Claims for Relief:**

      1.     For costs of suit herein;

      2.     For prejudgment interest; and

      3.     For attorneys fees as allowed by law.


Dated: December 9, 2022        ROEMER & HARNIK LLP

                          By: *Mary E. Gilstrap*
                              Mary E. Gilstrap
                              Andrew G. Montez
                              Attorneys for Defendants and Cross-
                              Complainants Meggie Roy and Marc
                              Antoine Gagnon

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

**ANSWER AND AMENDED COUNTER-CLAIM BY DEFENDANTS/CROSS-COMPLAINANTS MARC GAGNON AND MEGGIE ROY**

GAGAN V. GAGNON