Brian S. Harnik, Esq. (SBN 135724)
Mary E. Gilstrap, Esq. (SBN 150941)
Andrew G. Montez, Esq. (SBN 324188)
**Roemer & Harnik LLP**
45-025 Manitou Drive
Indian Wells, California 92210
Telephone (760) 360-2400
Facsimile (760) 360-1211
email: mgilstrap@rhlawfirm.com

Attorneys for:
Defendants and Cross-Complainants
Marc Antoine Gagnon and Meggie Roy

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH GAGAN, an individual, CLAIRE GAGAN, an individual, HALO'S HEART, LLC, a California Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>MARC ANTOINE GAGNON, an individual, MEGGIE ROY, an individual, MARIEVE SIMARD, an individual, ALAIN POIRIER, an individual, and DOES 1-280, inclusive,<br><br>Defendants.<br><br>MARC ANTOINE GAGNON, an individual; MEGGIE ROY, an individual and Roes 1-10, inclusive,<br><br>Cross-Complainants<br><br>v.<br>SARAH GAGAN, an individual; CLAIRE GAGAN, an individual, HALO'S HEART, LLC, a California limited liability company, and Roes 1-10, inclusive,<br><br>Cross-Defendants. | **Case No.:** 5:22-cv-00680-SSS-SP<br>**The Hon. Sunshine S. Sykes**<br><br>**DEFENDANT/CROSS-COMPLAINANT MEGGIE ROY'S OPPOSITION TO PLAINTIFFS' 12(b)(6) MOTION TO DISMISS THE 11th CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN THE FIRST AMENDED CROSS-COMPLAINT**<br><br>Date: March 3, 2023<br>Time: 2:00 p.m.<br>Dept: Courtroom 2 of George E. Brown Jr. Federal Building |

- 1 -

Defendant/Cross-Complainant Meggie Roy hereby submits this opposition to the 12(b)(6) motion by Plaintiffs to dismiss her intentional infliction of emotional distress count claim in the First Amended Cross-Complaint ("FACC").

## STATEMENT OF PERTINENT FACTS

Meggie Roy ("Meggie") has alleged in the 11th count of the FACC that both Plaintiffs Sarah Gagan and Claire Gagan deliberately and falsely told her that her husband – Defendant Marc Gagan ("Marc") – was planning on killing himself and was out of the country on a "goodbye" tour to say his final farewells to friends and family before committing suicide. Such statements were entirely false and invented by Plaintiffs for the sole purpose of hurting Meggie, who of course never even considered the idea her husband was planning to kill himself. Plaintiffs' statements were intended to and did cause Meggie emotional distress, fright and panic. (Dkt 63 at 34-35, Paragraphs 298-299).

Meggie has pled, and the court must accept as true, that Marc and Meggie had a conversation with both Plaintiffs in July of 2021 about the fact that they were tired and were not getting any breaks from their dual roles as every-day unpaid managers for Plaintiffs. (Id., Paragraph 296). Meggie pled that both Plaintiffs yelled at Marc and Meggie, calling them ungrateful and ridiculing them for claiming to be exhausted. It was an unpleasant meeting and Meggie and Marc were very upset as they had never been treated by Plaintiffs like that before. (*Ibid).*

The relationship between Plaintiffs and Meggie and Marc deteriorated after that point. (*Id*. at Paragraph 297). Less than a month later, while Marc was in Canada, Plaintiffs were sitting at the kitchen table with Meggie. Out of nowhere, Sarah told Meggie in a cold and callous manner that Marc was going to kill himself while he was in Canada. (*Id*. at Paragraph 298). When Meggie, horrified, said that Marc would never do such a thing, Claire said equally coldly and callously, "Are

ROEMER & HARNIK LLP
45-025 MANITOU DRIVE
INDIAN WELLS, CALIFORNIA 92210

you sure?" After reducing Meggie to almost the point of tears, Plaintiffs left her alone in the room. (*Ibid*).

Plaintiffs knew that Meggie had an anxiety disorder. *(Id.* at Paragraph 338). Plaintiffs deliberately went out of their way to tell Meggie these lies in order to terrify her and cause her to suffer. They succeeded. Meggie was frantic, thinking that her husband was going to kill himself during the two weeks that he was Canada. Meggie suffered severe emotional distress, including the resumption of serious migraines that required medication and visits to a neurologist. (Id.at 299).[1] Plaintiffs knew that Meggie had an anxiety disorder and they capitalized on that vulnerability to try to inflict as much harm as possible in a twisted act of deliberate cruelty. Nonetheless, they argue that their reprehensible acts outlined in the First Amended Cross-Complaint – which this court must assume are true for the purposes of Plaintiffs' motion -- do not rise to the level of intentional infliction of emotional distress, but were merely akin to an insult, annoyance or petty oppression. They are incorrect.

As consideration of such claims is fact-specific, this court must look to the allegations in the FACC as a whole to determine whether the allegations in the 11th claim for relief past muster. As discussed below, the allegations of intentional infliction of emotional distress – deliberately telling a wife with an anxiety disorder that her husband was going to kill himself while he was away from his wife and in another country– are so repugnant and revolting that no average person would tolerate such behavior.

---

[1] While not pled explicitly, the physical manifestations of Meggie's emotional distress, ie. the resumption of serious migraines, continues. She still is consulting a neurologist. Such facts can be pled if the court grants her leave to amend with respect to the motion to strike.

- 3 -
**DEFENDANT/CROSS-COMPLAINANT MEGGIE ROY'S OPPOSITION TO PLAINTIFFS' 12(b)(6) MOTION TO DISMISS 11th CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN FIRST AMENDED CROSS-COMPLAINT**
GAGAN V. GAGNON

# LEGAL ARGUMENT

## I.

## MEGGIE HAS MET HER BURDEN OF ALLEGING SUFFICIENT FACTS TO SUPPORT HER 11TH CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Under California law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability, of causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the defendant's outrageous conduct was the actual and proximate causation of the emotional distress.  (Cervantez v. J. C. Penney Co. (1979) 24 Cal. 3d 579, 593, superseded by statute on different grounds as stated in Melendez v. City of Los Angeles (1998) 63 Cal.App,4th 1, 7).  "Generally, conduct will be found to be actionable where the recitation of the facts to an average number of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!"  (KOVR-TV, Inc. v. Sup. Ct., (1995) 31 Cal. App. 4th 1023, 1028, citing Restatement (Second) of Torts § 46 (1965)).

A complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief"( Federal Rules of Civil Procedure Rule 8(a)(2)), and such  short and plain statement of the facts "must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " (Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (Id. at 679).  In making this

- 4 -

**DEFENDANT/CROSS-COMPLAINANT MEGGIE ROY'S OPPOSITION TO PLAINTIFFS' 12(b)(6) MOTION TO DISMISS 11th CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN FIRST AMENDED CROSS-COMPLAINT**
GAGAN V. GAGNON

*ROEMER & HARNIK LLP*
*45-025 MANITOU DRIVE*
*INDIAN WELLS, CALIFORNIA 92210*

context-specific evaluation, the court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint (Erickson v. Pardus, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), as well as any reasonable inferences to be drawn from them. (See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005)).

A cause of action for intentional infliction of emotional distress must allege facts showing outrageous conduct which is intentional or reckless and which is outside the bounds of decency. It has been said in summarizing the cases discussing intentional infliction of emotional distress that 'the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' (Christensen v. Superior Court (1991) 54 Cal.3d 868, 904–905)(citations omitted)).  "Manifestly, the standard for judging outrageous conduct does not provide a 'bright line' rigidly separating that which is actionable from that which is not. Indeed, its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical...." (Yurick v. Superior Court (1989) 209 Cal.App.3d 1116, 1128).

The fact that a defendant knew the plaintiff had a special susceptibility to emotional distress is a factor which may be considered in determining whether the alleged conduct was outrageous. (Angie M. v. Superior Court (1995) 37 Cal.App.4th 1217, 1226).  Furthermore, the extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.  (McDaniel v. Gile (1991) 230 Cal.App.3d 363, 372).

Despite the generality of the test for outrageous conduct, case law has established some general guidelines. To be actionable, the conduct must be egregiously outside the realm of civilized conduct. (Yurick v. Superior Court, *supra*, 209 Cal.App.3d at 1129). Even conduct not objectively "extreme and outrageous" may become so where a defendant acts in the face of knowledge that a plaintiff is peculiarly susceptible to emotional distress, by virtue of age, or some physical or mental condition or idiosyncrasy. (Crouch v. Trinity Christian Center of Santa Ana, Inc. (2019) 39 Cal.App.5th 995, 1008).

Here, the acts complained of go far beyond insults, indignities, petty oppressions or other trivialities. What normal person would falsely tell a supposed friend and business partner that their husband was going to kill himself? Such a statement was not made to alert Meggie to a potential problem, or to offer help or a solution, but rather to inflict pain on Meggie out of malice.

Examples of decisions where a defendant's conduct was deemed sufficiently outrageous include: Sanchez–Corea v. Bank of America (1985) 38 Cal.3d 892, 909 (bank failed to advise plaintiffs, who were small business operators, that the bank would give no further loans, bank misrepresented that further loans would be made if plaintiffs assigned all past, present and future accounts receivable to the bank, then refused further loans after plaintiffs did so, bank forced plaintiffs to execute excessive guarantees and security agreements, and bank employees publicly ridiculed plaintiffs, including the use of profanities); Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d 493, 496–497 (plaintiff employee, who was black, alleged he was fired in a despicable manner when his supervisor did so while shouting various racial epithets); Newby v. Alto Riviera Apartments,(1976) 60 C.A.3d 288, 297–298)(When tenant got involved in rent protest, landlord shouted at her, ordered her out of her apartment within three days, threatened to throw her out personally, and said "We are going to handle this the way we do down South."); (Golden v.

- 6 -
**DEFENDANT/CROSS-COMPLAINANT MEGGIE ROY'S OPPOSITION TO PLAINTIFFS' 12(b)(6) MOTION TO DISMISS 11th CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN FIRST AMENDED CROSS-COMPLAINT**
GAGAN V. GAGNON

Dungan (1971) 20 Cal.App.3d 295, 309-310)(process server banging on plaintiff's door in the middle of the night)).

California's definition of extreme and outrageous conduct has been evaluated based on comment d to section 46 of the Restatement Second of Torts. (Crouch v. Trinity Christian Center of Santa Ana, *supra*, 39 C.A.5th at 1007). There are examples of outrageous conduct given in comment d to section 46 of the Restatement Second of Torts. Example 1 is: "As a practical joke, A falsely tells B that her husband has been badly injured in an accident, and is in the hospital with both legs broken. B suffers severe emotional distress. A is subject to liability to B for her emotional distress. If it causes nervous shock and resulting illness, A is subject to liability to B for her illness." (Crouch v. Trinity Christian Center of Santa Ana, Inc. , *supra*, at 1007–1008).

Here, the facts are closely aligned to Example 1 of the Restatement.[2]  Rather than just broken legs, however, Meggie was falsely told that her husband was going to die soon because he was going to kill himself.  The totality of Plaintiffs' conduct was both socially unacceptable and would cause a reasonable person non-trivial distress and mental anguish, which should not be endured.  Moreover, a recent trend in California jurisprudence has been to " require less severe distress in pleadings and  proof than is required in the Restatement." (Newby v. Alto Riviera Apartments, *supra*, 60 C.A.3d at 298).

Assuming the accuracy of the allegations in the 11th claim for relief, reasonable minds could certainly differ whether it is beyond the bounds of conduct to be tolerated in civilized society for an adult, like Sarah Gagan, to tell Meggie, a close friend, tenant and business partner, to whom Sarah owes fiduciary duties, that

---

[2] Multiple Westlaw searches were conducted in California, all other states and the 9th Circuit for a fact pattern similar to the one at bar here.  Nothing could be found.

- 7 -

**DEFENDANT/CROSS-COMPLAINANT MEGGIE ROY'S OPPOSITION TO PLAINTIFFS' 12(b)(6) MOTION TO DISMISS 11th CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN FIRST AMENDED CROSS-COMPLAINT**
GAGAN V. GAGNON

Meggie's husband went out of the country in order to kill himself.[3] Whether such alleged behavior is sufficiently extreme as to constitute "outrageous" behavior is properly determined by the fact finder after trial or possibly after discovery in a motion for summary judgment. (See Angie M. v. Superior Court, *supra*, 37 Cal.App.4th at 1226).

## CONCLUSION

California courts agree that emotional distress "may consist of any highly unpleasant mental reaction, such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." (Hailey v. California Physicians' Service, 154 Cal.App.4th at 476.) Meggie has adequately pled facts surrounding both the actions of Plaintiffs in falsely telling her that Marc was going to kill himself as well as the physical manifestations of Meggie's extreme emotional distress – migraine headaches which necessitate continuing

---

[3] Meggie has pled in the FACC that she developed a close friend relationship with both of the Gagans, and also was asked to join Sarah Gagan 50-50 as partners in a new business enterprise called Glitter Guitars, which Meggie did in good faith. Meggie has not received a single bit of compensation for her work with Glitter Guitars. (Dkt 51 at 29-30, Paragraphs 286-287). Due to the special relationship between Sarah Gagan and Meggie, however, Sarah owes Meggie fiduciary duties which have been breached. Meggie seeks damages for such breaches in her 9th claim for relief for breach of fiduciary duty. (Dkt 51 at 45, Paragraphs 352-354).

treatment by a neurologist. For these reasons, Plaintiffs' motion to dismiss the 11th claim for relief in the FACC should be denied.

Dated: February 10, 2023          ROEMER & HARNIK LLP

By: *Mary E. Gilstrap*
Mary E. Gilstrap
Attorneys for Defendant and
Cross-Complainant Meggie Roy